1  Mark A. Hutchison (4639)
   L. Kristopher Rath (5749)
2  Hutchison & Steffen, LLC
   Peccole Professional Park
3  10080 Alta Drive, Suite 200
   Las Vegas, Nevada 89145
4  Telephone: (702) 385-2500
   Facsimile:  (702) 385-2086
5
   Attorneys for Plaintiff
6  1st TECHNOLOGY LLC

7           UNITED STATES DISTRICT COURT

8                 DISTRICT OF NEVADA

9  1ST TECHNOLOGY LLC,                 )    2:06-cv-01110-RLH-GWF
                                        )
10              Plaintiff,              )
                                        )
11       v.                             )    **PLAINTIFF 1ST TECHNOLOGY
                                        )    LLC'S APPLICATION FOR
12                                      )    DEFAULT JUDGMENT**
    RATIONAL ENTERPRISES LTDA.,         )
13  RATIONAL POKER SCHOOL LIMITED,      )
    BODOG ENTERTAINMENT GROUP           )
14  S.A., BODOG.NET, BODOG.COM, and     )
    FUTUREBET SYSTEMS LTD.,             )
15                                      )
               Defendants.              )
16  _____)

17       Plaintiff, 1ST TECHNOLOGY LLC (hereinafter "1st Technology"), by and through its

18  counsel of record, HUTCHISON & STEFFEN, LLC, hereby files its Application for Default

19  Judgment against Defendants, BODOG ENTERTAINMENT GROUP S.A.; BODOG.NET; and

20  BODOG.COM (hereinafter referred to as the "Bodog Entities"). This Application is made and

21  based upon the papers and pleadings on file herein, the attached Memorandum of Points and

22  Authorities, with its affidavit and exhibits attached thereto, and any arguments of counsel that the

23  Court may entertain at a hearing on this matter.

24       DATED this 21st day of March, 2007.

25                                           HUTCHISON & STEFFEN, LLC

26                                           /s/ L. Kristopher Rath
27                                           _____
                                             Mark A. Hutchison (4639)
28                                           L. Kristopher Rath (5749)
                                             Hutchison & Steffen, LLC
                                             Peccole Professional Park
                                             10080 Alta Drive, Suite 200
                                             Las Vegas, Nevada 89145

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

The instant lawsuit is a case of patent infringement. Plaintiff, 1st Technology, is the assignee of and owns all rights, title, and interest in, and has standing to sue for infringement of United States Patent 5,564,001, entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth" (hereinafter the "'001 Patent"). The Bodog Entities are foreign companies headquartered in Costa Rica who have infringed on the '001 Patent in violation of 35 U.S.C. § 271 by, among other activities, implementing, and continuing to implement, the '001 Patent techniques by using software on their online gaming websites which is downloaded before use and periodically thereafter (usually at least once a year to incorporate software optimization updates). *See* affidavit of Scott Lewis, attached hereto as Exhibit A.

Each of the Bodog Entities were duly and properly served and have failed to make any appearance in this action. Accordingly, the Court entered their Default on February 26, 2007. *See* Entry of Default for Bodog Entities, attached hereto as Exhibit B. Therefore, it is appropriate at this time for the Court to also enter a default judgment against the Bodog Entities. Plaintiff has included a detailed calculation of damages, with supporting evidence, to this Application.

## 2. LEGAL ARGUMENT

According to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment on application by the party entitled to a judgment by default. FRCP 55(b)(2). If a party against whom the default is sought has appeared in the action, the party must be notified; however, in this case, none of the Bodog Entities have made an appearance.

If necessary, the Court may conduct a hearing to assess the proper amount of damages. FRCP 55(b)(2). Federal Rule of Civil Procedure 55(b)(2) gives the Court discretion to determine whether an evidentiary hearing is necessary or whether the Court may simply rely on detailed affidavits or documentary evidence to enter the default judgment. *Time Warner Cable of New York City v. Foote*, 2002 WL 1267993 (E.D.N.Y. 2002) (citing *Auction S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2nd Cir. 1991), cert. denied, 503 U.S. 1006 (1992); *Fustok v. Conticommodity*

1  *Services Inc.*, 873 F.2d 38, 40 (2nd Cir. 1989)). Furthermore, "the moving party is entitled to all
2  reasonable inferences from the evidence it offers. *Id.* (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653
3  F.2d 61, 65 (2nd Cir. 1981)).
4  "[W]hen 'arriving at the judgment amount involves nothing more than arithmetic - the
5  making of computations which may be figured from the record - a default judgment can be entered
6  without a hearing of any kind'." *DirecTV, Inc. v. Griffin*, 290 F.2d 1340, 1343 (N.D. Fla. 2003)
7  (quoting *HMG Property Investors, Inc. v. Parque Industries Rio CaZas, Inc.*, 847 F.2d 908, 919
8  (1st Cir. 1988) (citing *Polk v. United States*, 323 U.S. 1 (1944)). It is not necessary for the District
9  Court to hold a hearing on default judgment, as long as it has ensured that there was a basis for the
10 damages specified in the default judgment. *Id.* (citing *James v. Flame*, 6 F.3d 307, 309-311 (5th
11 Cir. 1993)).
12 In the instant case, the amount of these default judgments is reasonably calculable, as set
13 forth in detail in Mr. Lewis' affidavit and the attached documentary evidence. Accordingly,
14 Plaintiff requests that the Court enter default judgment based on the evidence presented herein in
15 the amount $46,597,849 against the Bodog Entities. In the alternative, Plaintiff is certainly willing
16 to present testimony and evidence on the amount of damages at a hearing on this matter, should the
17 Court so request.
18 **3.     CALCULATION OF DAMAGES**
19 The calculation of damages in this case is straightforward. The Bodog Entities have
20 implemented, and continue to implement, the '001 Patent techniques by using software on their
21 websites which is downloaded before a user uses the interactive online gaming website.
22 Furthermore, the software is also downloaded periodically thereafter, usually at least once a year
23 to incorporate software optimization updates. *See* Exhibit A. Accordingly, each time a software
24 is downloaded for use on the online gaming website, the Bodog Entities infringe upon the '001
25 Patent.
26 Therefore, the best way to determine the amount of damages is by assigning a particular
27 price to each user download. *See* Exhibit A. Rather than choosing a random price assignment,
28 Plaintiff proposes a conservative per download price based on a prior agreement with International

1  Gaming Technologies, Inc. ("IGT") and MGM Mirage, Inc. ("MGM"). *See* Exhibit C. These
2  companies utilize the '001 Patent techniques and are required to pay a royalty payment as set forth
3  in the Agreement. *See* Exhibit A at ¶ 6 and Exhibit C. The IGT/MGM Agreement requires
4  payment of $1.00 per "new user" from users 1 through 100,000, $0.75 from users 100,001 through
5  200,000, and $0.50 for each new user beyond 200,000 users. This, in general, is a very
6  conservative agreement, as, for each new user, there will typically be multiple infringing software
7  downloads per year. *See* Exhibit A at ¶ 6. Furthermore, the IGT/MGM Agreement uses a
8  definition for new users that spans all geographies. In this Application for Default Judgment, 1st
9  Technology is only requesting damages from the Bodog Entities for downloads to the United States
10 based users, which would be 66% of their total downloads. *See* Exhibit A at ¶ 6 and article from
11 Alexa.com, attached hereto as Exhibit D.

12 Once a royalty amount has been determined, the next step is to simply multiply that amount
13 by the number of infringing downloads. According to reliable media sources, the Bodog Entities
14 had a reported 16 million customers worldwide in 2005 and 18 million customers worldwide in
15 2006. *See* article obtained from Forbes.com, a true and correct copy of which is attached hereto
16 as Exhibit E. Alexa.com, a leading internet traffic recordation site, in early 2007 indicated that
17 66% of Bodog.Com's worldwide traffic were from United States users. *See* Exhibit A at ¶ 8. If
18 one further incorporates an extremely conservative projection for Bodog's infringing business to
19 remain at 11.88 million United States users (zero future growth, 66% x 18M, and downloads at
20 only one download per user) for the remaining life of the '001 Patent (through October 4, 2013),
21 this is a conservative estimate, given that the online gaming industry is experiencing rapid growth
22 projections. *See* Exhibit A at ¶ 8.

23 Based on the assumption of a constant number of users per year for the life of the patent,
24 and using the royalty formula from the MGM/IGT licensing agreement, Dr. Lewis has calculated
25 the amount of past damages at $10,412,780. *See* Table 1, attached to Exhibit A. This would
26 include damages starting from the July 22, 2005 infringement notice date, up through March 14,
27 2007. Dr. Lewis then calculated future damages, from March 14, 2007 through the remaining life
28 of the '001 Patent through October 4, 2013. *See* Exhibit A at ¶ 9 and Table 1B. After calculating

this amount, Dr. Lewis has taken a further step of determining its net present value by using a conservative 5% discount rate.[1] See Exhibit A at ¶ 9 and Table 1B. This results in an extremely conservative future of damage of $37,044,517. This then results in an extremely conservative total damage figure in the amount of $46,597,849. See Exhibit A at ¶ 9.

While this appears to be a very large amount of damages, it must be emphasized that the total damages are very small compared with the level of monetary infringement gained by the Defendant Bodog Entities. See Exhibit A at ¶ 10 and Table 2. The cumulative transaction inflows for the Bodog Entities, assuming no growth and projected very conservatively, totals $65 billion dollars, with an after tax cumulative profit of $486 million dollars. See Exhibit A at ¶ 10. Furthermore, the approximately $47 million dollars in total damages that 1st Technology claims represents a mere 4.7 % of Calvin Ayre's current $1 billion dollar net worth, as calculated by Forbes. See Exhibit A at ¶ 10. Mr. Ayre is the Founder of the Bodog Entities and his wealth was derived in large part through infringement of the 1st Technology LLC's '001 Patent. Id.

4. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a Default Judgment as to the Bodog Entities, jointly and severally, in the amount of $46,597,849. Should the Court deem it necessary, Plaintiff is willing to appear for a hearing on any of the issues set forth herein.

DATED this 21st day of March, 2007.

HUTCHISON & STEFFEN, LLC

Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

Attorneys for Plaintiff
1st TECHNOLOGY LLC

---

[1] When, in fact, the average current inflation rate is in the 2.5 to 3.5% range.

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 21st day of March, 2007, I caused the above and foregoing document entitled: **PLAINTIFF 1ST TECHNOLOGY LLC'S APPLICATION FOR DEFAULT JUDGMENT** to be served via electronically through ECF/PACER to the attorneys listed below:

Andrew P Gordon
McDonald Carano Wilson
2300 W Sahara Avenue
Suite 1000-10
Las Vegas, NV 89102
agordon@mcdonaldcarano.com

_____
An employee of Hutchison & Steffen, LLC

2645-001

G:\L\Lewis, Scott\Rational Enterprises\Pleadings\Application4Default.wpd