Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Attorneys for Plaintiff
1st TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 1ST TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RATIONAL ENTERPRISES LTDA.,<br>RATIONAL POKER SCHOOL LIMITED,<br>BODOG ENTERTAINMENT GROUP<br>S.A., BODOG.NET, BODOG.COM, and<br>FUTUREBET SYSTEMS LTD.,<br><br>　　　　Defendants. | 2:06-cv-01110-RLH-GWF<br><br>**PLAINTIFF 1ST TECHNOLOGY LLC'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM**<br><br>**ON AN ORDER SHORTENING TIME, PURSUANT TO LR 6-1(a)**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff, 1ST TECHNOLOGY LLC (hereinafter "1st Technology"), by and through its counsel of record, HUTCHISON & STEFFEN, LLC, moves to enjoin Defendants, BODOG ENTERTAINMENT GROUP S.A.; BODOG.NET; and BODOG.COM (hereinafter referred to as the "Bodog Entities") from United States commercial activities until they satisfy their judgment and stop violating 1st Technology's patent. Specifically, 1st Technology respectfully requests an order prohibiting the Bodog Entities from engaging in advertising in the United States, from using United States servers and websites, and from participating in sponsorship activities in the United States, and other items requested below. The order should also prohibit other individuals and entities from aiding and cooperating with the Bodog Entities' in the various enjoined activities. Only the entry of such relief will slow the tide of the Bodog Entities' illegal activities.

This Application is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, with its affidavit and exhibits attached thereto,

1  and any arguments of counsel that the Court may entertain at a hearing on this matter.

2      An Order Shortening Time is necessary because of the nature of the Bodog Entities' continuing wrongdoing and 1st Technologies continuing harm. Every day that the Bodog Entities continue to operate in violation of 1st Technologies' patent, it causes more irreparable harm. A prompt hearing and resolution of this motion will allow 1st Technology to stop the Bodog Entities' illegal behavior more quickly.

    DATED this 22nd day of June, 2007.

HUTCHISON & STEFFEN, LLC

/s/ L. Kristopher Rath

Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

## ORDER SHORTENING TIME

GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED, that the time for the hearing on **PLAINTIFF 1ST TECHNOLOGY LLC'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS BODOG, ENTERTAINMENT GROUP, S.A. BODOG.NET, AND BODOG.COM ON AN ORDER SHORTENING TIME** be shortened to the _____ day of _____, 2007, at _____ __.m., before this Court.

DATED this _____ day of June, 2007.

_____
UNITED STATES DISTRICT COURT JUDGE

# AFFIDAVIT OF L. KRISTOPHER RATH
# IN SUPPORT OF SHORTENED HEARING TIME

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

I, L. Kristopher Rath, being first duly sworn, depose and say:

1. I am an attorney with the law firm of Hutchison & Steffen, LLC, counsel of record for the plaintiff, 1st Technology LLC, in this case.

2. I am fully knowledgeable about all matters except for those facts made on information and belief, and as to those facts, I believe them to be true.

3. I make this affidavit in support of 1st Technology's request for a shortened hearing of its motion for permanent injunction

4. An order shortening the hearing in this case is necessary to protect 1st Technology's interests. The Bodog Entities continue to engage in illegal activities that undermine 1st Technology's patent. They continue to act within impunity in the United States, generating billions of dollars in revenues by using 1st Technology's patent.

5. 1st Technology's ability to develop its intellectual property and grow its business are limited so long as Bodog continues to operate in the United States and hoard market share based on its illicit conduct.

6. Only if Bodog is required to cease its violating activities will justice be effectuated and will 1st Technology have a chance to grow into its own market.

///

- 4 -

7. This matter should be heard on shortened time because time of is the essence. 1st Technology is suffering irreparable harm daily, and this harm will only stop if the Court stops Bodog from acting in violation of 1st Technology's intellectual property right.

Further your affiant sayeth naught.

DATED this 22nd day of June, 2007.

L. KRISTOPHER RATH

SUBSCRIBED AND SWORN to before me this 22nd day of June, 2007.

Notary Public

**DANETTE YOUNG**
Notary Public, State of Nevada
Appointment No. 06-102395-1
My Appt. Expires Jan. 9, 2010

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION AND FACTUAL BACKGROUND

The instant lawsuit is a patent infringement case. 1st Technology is the assignee of and owns all rights, title, and interest in, and has standing to sue for infringement of United States Patent 5,564,001, entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth" (hereinafter the "'001 Patent"). The Bodog Entities are foreign companies headquartered in Costa Rica who have infringed and continue to infringe on the '001 Patent in violation of 35 U.S.C. § 271 by, among other activities, implementing the '001 Patent techniques with software on their online gaming websites that is downloaded before use and periodically thereafter (usually at least once a year to incorporate software optimization updates). *See* Affidavit of Scott Lewis, a true copy of which is attached to the motion as exhibit A.

Each of the Bodog Entities were duly and properly served and have failed to make any appearance in this action. Accordingly, the Court entered their Default on February 26, 2007. *See* Entry of Default for Bodog Entities, on file. On June 14, 2007, the Court entered a default judgment in 1st Technology's favor against the Bodog Entities in the amount of $46,597,849.00 plus interest. *See* Affidavit of Scott Lewis in Support of Application for Default, a true copy of which is attachd to the motion as exhibit B, and Order Granting Application for Default Judgment, a true copy of which is attached to the motion as exhibit H. To date, the Bodog Entities have not paid any of the judgment.

The Bodog Entities continue to operate in the United States and elsewhere. The Bodog Entities infringing activities are responsible for over $65 billion dollars in cumulative transactions to date, with approximately two-thirds of this revenue currently being derived from infringing United States activities. *See* article from Alexa.Com, a true copy of which is attached to the motion as exhibit C. According to a Forbes interview with Bodog's CEO, Calvin Ayre, in 2005 alone, Bodog handled $7.3 billion dollars of revenue which translates to over $4.8 billion dollars in revenue in the United States (pursuant to the evidence that two-thirds of Bodog's revenue comes from the United States, as noted above), with revenue growing 300% per year since 2004. *See* the

1  referenced Forbes interview article, a true copy of which is attached to the motion as exhibit D.
2  To obtain this United States revenue, Bodog utilizes, in addition to its own internet web servers,
3  an elaborate network of United States based servers, marketing and sales affiliates, internet service
4  providers (ISPs), domain registrars, marketing and sales programs, and sponsorships - all of which
5  are based in the United States. *See* exhibit A.

6  The Bodog Entities operate and obtain revenue from the United States by providing the
7  Bodog Entities infringing software to United States customers via internet downloads. *Id*. The
8  Bodog Entities also have established a series of United States relationships to deliver these software
9  downloads (in addition to downloads via their own sites, Bodog.Com and Bodog.Net), and engage
10 in widespread United States--based advertising, marketing and promotion programs to keep current
11 customers and to obtain new ones. *Id.*[1]

12 Most of the companies and sites that form the bulk of the Bodog Entities United States
13 download delivery network obtain their revenues via marketing and affiliate agreements with the
14 Bodog Entities. *Id*. These agreements generate payments from the Bodog Entities to the United
15 States operating entities typically as payment per download, customer sign-up, or a percentage of
16 future infringing customer revenue. *Id*.

17 The Bodog Entities advertise in the United States to perpetuate their illegal empire by
18 selling products and services to American citizens. *Id*. The advertisements take many forms, and
19 all of the activities are intended to lure customers to the Bodog Entities' websites. *Id*. From there,
20 the customers– again, mostly United States citizens– download programs that use 1st Technology's
21 patents. *Id*. The internet advertising program consists of banner ads appearing on United States
22 web sites or United States server operations whose entities are paid primarily either directly by the

---

[1] An internet search for Bodog.Com elicits 3,290,000 site references, hundreds of which are sites similar to PokerSavy.com, which is United States based, or Pokerlisting.com, which hides its location using an Arizona proxy service of Go Daddy, Inc., though operates through the United States server network to offer the same services for Bodog: delivering infringing Bodog download software to United States customers, either directly, or via links to Bodog's downloads site. See internet search results, a true and correct copy of which is attached to the motion as exhibit E; PokerSavy.com homepage, a true and correct copy of which is attached to the motion as exhibit F; and Whois record for Pokerlisting.com, a true and correct copy of which is attached to the motion as exhibit G.

Bodog Entities, indirectly via other Bodog controlled entities or agents, and United States advertising agencies. *Id.* The bulk of all Bodog banners appearing on United States-based computers (via their customer's browser) have automatic click links to the partner's download site or Bodog's download and customer registration sites. *Id.*

The Bodog Entities also generate customers in the United States through a sponsorship and promotion program. One such program involves paying and subsidizing United States Bodog customers to participate in and "pay-in" the fee to join prestigious gaming competitions with associated publicity. *Id.* One example is the current World Series of Poker. *Id.* The tournament normally requires a $10,000.00 entry fee. *Id.* The Bodog Entities pay for or subsidize Bodog customers who utilize Bodog's infringing software to participate in this event. *See* exhibit G to the motion, which shows an offer currently running on the homepage of Pokerlisting.com's website. The Bodog Entities also generate infringing revenue via their brand (the Bodog trademark) program and sponsorship program, in which Bodog sponsors major United States television events and leading poker celebrities, who the Bodog Entities pay millions of dollars. *See* exhibit A.

The aforementioned issues are a small part of the elaborate United States network which the Bodog Entities have created. The network also includes financial institutions for transferring infringing United States revenue and paying for United States entities to generate infringing Bodog downloads and further increase the Bodog Entities' infringing revenue. *Id.* As noted in the Forbes article, the Bodog Entities' CEO, Calvin Ayre, has amassed a current wealth of $1 billion dollars, which was derived in large part through infringement of 1st Technology LLC's '001 Patent. *See* exhibit D. However, despite reaping the rewards of U.S. commerce, the Bodog Entities evade United States law and courts, and Mr. Ayre gloats about his companies' ability to operate above American law. *Id.*

1st Technology continues to suffer massive and irreparable harm because of the Bodog Entities' wrongful conduct. As the Bodog Entities enlist more customers, 1st Technology's patent becomes more watered down and it is more damaged. *Id.* The only way to stop this harm is to enjoin Bodog's United States activities. 1st Technology LLC has developed software and applications which utilize 1st Technology's intellectual property embodied in the its Patent. *See*

- 8 -

exhibit A. The injunction is necessary to enable any possible commercialization of 1st Technology's intellectual property for applications that compete with Bodog. The injunction will also enforce the Court's Default Judgment and will end Bodog's escalating multi-billion dollar infringement of Plaintiff 1st Technology's intellectual property.

## 2. LEGAL ARGUMENT

35 U.S.C. §283 permits the Court to enjoin the Bodog Entities' illegal conduct. Pursuant to that section "the several courts have jurisdiction under this title may grant injunction in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. §283.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

All four factors of the Supreme Court's test for permanent injunctions are present. <u>First</u>, 1st Technology has suffered and continues to suffer irreparable harm. 1st Technology cannot commercialize and develop its patent because of the Bodog Entities' wrongful conduct. *See* exhibit A. The Bodog Entities' have cornered a major piece of the market using 1st Technology's technology. *Id.* Unless the Bodog Entities are forced to stop using the patent, 1st Technology has little chance of breaking into the market. So, in addition to losing money from customers flocking to Bodog – the subject of the Court's award of damages – Bodog's illegal activities stymy 1st Technology's ability to grow into its own business.

<u>Second</u>, legal remedies are inadequate to compensate for 1st Technology's injuries. This Court has entered a monetary judgment against the Bodog Entities for $46.6 million for lost past and future royalties. *See* Application for Default Judgment and Default Judgment, on file. The

1  award addresses some of 1st Technology's damages, but cannot redress others. For example, the
2  judgment does not (and cannot) account for the dilution of 1st Technology's patent and losses 1st
3  Technology will suffer in the future. It does not resolve 1st Technology's inability to commercialize
4  its patent and break into the market its patent helped to create. The money damages award does
5  not stop the flow of customers into the Bodog Entities' websites, where those customers
6  unknowingly violate 1st Technology's patent again and again.

<u>Third</u>, the issuance of equitable relief to 1st Technology is warranted. Bodog operates cozily from its Costa Rican retreat, profiting mainly from United States citizens and exploiting 1st Technology' patent for its own gain. Meanwhile, the patent's creator is rendered incapable of harnessing the invention. The Bodog Entities operate throughout the United States, marketing themselves on American television and sponsoring American poker players in American tournaments, all the while insulating themselves from American laws. The Bodog Entities' stream of American money occurs flows in while they roguely defy American law. Absent equitable relief, there is little chance the Bodog Entities will ever be stopped from engaging in their illegal tactics and destroying 1st Technology.

<u>Fourth</u>, the public will be harmed if patents are blatantly violated as the Bodog Entities have done. American law favors the protection of innovation. It favor accountability. Neither interests are served if the Bodog Entities are allowed to operate with impunity in the United States while they continue to maliciously break United States law and exploiting others' patents.

## 3. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the following:

(1) An Order enjoining the Bodog Entities, their agents, or agencies, persons or entities from conducting any further advertising accessible in the United States, whether through websites, Internet transmissions, magazines, print, television, or other forms of advertising, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights. The Order should enjoin any and all companies, entities, and individuals from accepting advertising from the Bodog Entities and/or continuing to advertise for the Bodog Entities or to incorporate

and/or placing advertising featuring the Bodog Entities, Bodog trademarks, or Bodog products and services, and/or ads or graphics that link to the Bodog Entities, Bodog trademarks, or Bodog products and services.

(2) An Order enjoining the Bodog Entities, their agents, persons or entities from downloading their infringing software into the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights. This Order should enjoin any and all companies from enabling the downloading of said software into the U.S.

(3) An Order enjoining the use of any infringing Bodog Entities products or services, including the infringing software, by any person or entity in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(4) An Order enjoining the marketing and promotion of any infringing Bodog Entities products or services, including the infringing software, by any person or entity in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights. This should include the participation of any entity or person in the U.S. in any Bodog Entity marketing or affiliate program.

(5) An Order enjoining the importation, manufacture, development of any infringing Bodog Entities products or services, including the infringing software, by any person or entity in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(6) An Order enjoining any and all transactions which are a part of infringing Bodog Entities products or services, including the infringing software, by any person or entity in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(7) An Order enjoining U.S. websites, internet service providers (ISPs), domain registrars from facilitating any infringing Bodog Entities products or services, and the associated U.S. traffic, or otherwise to redirect such traffic to a site specified by

1st Technology LLC, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(8) An Order enjoining any U.S. entity or person from operating a website, web server, ISP, domain registrar from participating in web hosting, internet processing, transaction processing, or functioning as a domain registrar or anonymity proxy service for any infringing Bodog Entities products or services, including the infringing software, and the domains Bodog.com, and Bodog.net, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(9) An Order enjoining any payment processor, financial institution, or credit card company, from processing or participating in transactions involving any infringing Bodog Entities products or services, including specifically Bodog.com and Bodog.net, with any person or entity in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights. This should include but not be limited to payments to and accounts for U.S. players of infringing Bodog Entities games, and payments to Bodog advertisers, sponsors, and affiliates.

(10) An Order enjoining any Bodog Entities officer, director, employee, contractor, or agent from continuing to develop infringing Bodog Entities products or services, including the infringing software, operating any website offering said infringing products and services to the U.S., or taking any money from any person or entity in the U.S. using said infringing products and services, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(11) An Order enjoining any entity or person in the U.S. from contributing to the development of Bodog Entities advertising campaign, or marketing campaign, or associated branded Bodog Entities material, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

///

(12) An Order enjoining any entity of person in the U.S. from providing customer service and associated communications services for any infringing Bodog Entities products or services, including the infringing software, Bodog.com and Bodog.net, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(13) An Order enjoining any Bodog Entities customer loyalty, promotional, new customer sign-up or registration, programs involving any persons or entities in the U.S., unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(14) An Order enjoining any use in the U.S. of Bodog Entities trademarks in connection with advertising, promotion, marketing, or use, of any infringing Bodog Entities products or services, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights.

(15) An Order enjoining the Bodog Entities from participating in any further sponsorship or subsidies to any individuals or entities for any events, whether live or recorded for later playback, in person or via Internet, broadcast television, or other media, including but not limited to the World Series of Poker, unless and until the Bodog Entities take a license on 1st Technology LLC's intellectual property rights. Any and all entities and individuals who are presently accepting such subsidies and sponsorships should immediately be enjoined from obtaining any further monies from the Bodog Entities, their agents, or agencies, and from broadcasting past events incorporating said sponsorship or subsidies and must disgorge all funds held on account and unspent until from the Bodog Entities to begin to satisfy the default

- 13 -

judgment on file herein.

A proposed order is attached hereto as exhibit I.

DATED this 22nd day of June, 2007.

                    HUTCHISON & STEFFEN, LLC

*/s/ L. Kristopher Rath*
Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

Attorneys for Plaintiff
1st TECHNOLOGY LLC

- 14 -

**CERTIFICATE OF SERVICE**

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 22nd day of June, 2007, I caused the above and foregoing document entitled: **PLAINTIFF 1ST TECHNOLOGY LLC'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM ON AN ORDER SHORTENING TIME, PURSUANT TO LR 6-1(a), ORAL ARGUMENT REQUESTED** to be served via electronically through ECF/PACER to the attorneys listed below:

**Andrew P Gordon**
McDonald Carano Wilson
2300 W Sahara Avenue
Suite 1000-10
Las Vegas, NV 89102
agordon@mcdonaldcarano.com

_____
An employee of Hutchison & Steffen, LLC

- 15 -