# EXHIBIT B

Dockets.Justia.com

**AFFIDAVIT OF DR. SCOTT LEWIS IN SUPPORT OF PLAINTIFF
1ST TECHNOLOGY, LLC'S APPLICATION FOR DEFAULT JUDGMENT**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF SANTA CLARA        )

I, SCOTT W. LEWIS, Ph.D., being first duly sworn, deposes and states as follows:

1.    I am the Chief Executive Officer of Plaintiff, 1ST TECHNOLOGY LLC, and am over the age of legal majority in the State of Nevada. I am competent and qualified to testify to the issues set forth in this affidavit.

2.    I am the sole inventor of U.S. Patent 5,564,001 (the '001 Patent) entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth", which was issued on October 8, 1996. The Court has entered a Default in the case of *1st Technology LLC v. Rational Enterprises, et. al* in favor of 1st Technology LLC and against the following Defendants: Bodog Entertainment Group, S.A.; Bodog.Net; and Bodog.Com (hereinafter referred to as the "Bodog Entities"). 1st Technology LLC has been damaged in the amount of $46,597,849, at the very least, due to the actions of the Bodog Entities. This affidavit will set forth all bases for this calculation of damages.

3.    As an initial matter, I am well qualified to perform this calculation of damages. My background includes a Bachelor's Degree and a Master's Degree in Engineering from the Massachusetts Institute of Technology, a Doctorate in Digital Signal Processing from Oxford University as a Marshall Scholar, and an MBA from Harvard Business School. Additionally, I have founded and acted as Chief Executive Officer of multiple companies in Silicon Valley and as a Merger and Acquisition and Strategy Consultant for both the Boston Consulting Group and the L.E.K. Consulting Group.

4.    I would like to point out that the factors used in this calculation of damages are each extremely conservative at each level of the calculation and each factor has been substantiated with evidence.

///

1

5.    The '001 Patent enables providers of online games to operate at a higher level of interactivity and higher quality than would ordinarily be possible without the '001 Patent techniques. The Bodog Entities have implemented, and continue to implement, the '001 Patent techniques by using software on their websites which is downloaded before use and periodically thereafter (typically at least once a year to incorporate software optimization updates).    Therefore, 1st Technology LLC's damages from Bodog's unauthorized use of the '001 Patent are best determined through a royalty formula applied to each and every download of the infringing software which incorporates the '001 Patent techniques.    This model can be used for royalty computations to be applied to the Bodog Entities in calculating damages due.

6.    The calculation must start with an existing licensing agreement at its base.    There is already a licensing agreement in effect with Wagerworks, Inc. (now a subsidiary of International Gaming Technologies, Inc. - IGT) and MGM Mirage, Inc. (hereinafter referred to as the "IGT/MGM Agreement").    A true and correct copy of the IGT/MGM Agreement is attached to the Application for Default Judgment as Exhibit C.    This Agreement requires payment of $1.00 per "New User" from users 1 through 100,000, $0.75 from users 100,001 through 200,000, and $0.50 for each New User beyond 200,000 users.    In general, this is a very conservative agreement (and covered by a "Most Favored Nation" provision), since, for each New User, there will likely be multiple infringing software downloads per year.    Additionally, the IGT/MGM Agreement uses a definition for New Users that spans all geographies (for simplicity in calculating the royalty), whereas 1st Technology LLC only demands damages from Defendant Bodog Entities for downloads to the United States based users. 66% of the Bodog Entities users are in the United States. *See* article from Alexa.com, a true and correct copy of which is attached hereto as Exhibit D.    Thus, the royalty rates indicated in the IGT/MGM Agreement should be raised by one-third to fairly compare with the Bodog Entities United States user download data utilized in this damage calculations.    However, for simplicity, 1st Technology LLC is only requesting the same royalty rates as those used in the IGT/MGM Agreement (on a New User basis).

/ / /

7.      To calculate damages in this case to 1st Technology from the Bodog Entities infringements, one simply needs to multiply the royalty rates as set forth in the IGT/MGM Agreement by the number of user downloads.

8.      According to Forbes interview with the Founder of the Bodog Entities, Calvin Ayre, and Forbes research as part of their World's Billionaire Report, the Bodog Entities had a reported 16 million customers worldwide in 2005 and 18 million customers worldwide in 2006 (an average of 1.5 million per month). *See* article obtained from http://www.forbes.com/free_forbes/2006/0327/112.htnl, a true and correct copy of which is attached hereto as Exhibit E. Alexa.com, a leading internet traffic recordation site, in early 2007 indicated that 66% of Bodog.Com's worldwide traffic was from United States users. *See* Exhibit D. If one further incorporates an extremely conservative projection for Bodog's infringing business to remain at 11.88 million United States users (zero future growth, 66% x 18M, and downloads at only one download per user) for the remaining life of the '001 Patent (through October 4, 2013), this is a conservative estimate, given that the online gaming industry is experiencing rapid growth projections.

9.      Given these parameters, I have set forth the calculations for past damages, totaling $10,412,780 in Table 1, attached to my affidavit. This includes damages starting from the July 22, 2005 infringement notice date, up through March 14, 2007. Table 1B, attached to this affidavit, is a spreadsheet calculating future damages using the conservative new user royalty rates of the IGT/MGM Agreement. The present values of royalties for future damages use a conservative 5% discount rate when, in fact, the average current inflation rate is in the 2.5 to 3.5% range. This results in an extremely conservative future damage total of $37,044,517. Thus, this results in an extremely conservative total damage figure of $46,597,849.

10.     I must emphasize that these totals of damages are very small compared with the enormous level of monetary infringement and gain by the Defendant Bodog Entities, as calculated in Table 2, attached to this affidavit. For the period of past and future infringement damages (July 22, 2005 through October 4, 2013), the cumulative transaction inflows for the Bodog Entities,

3

1   assuming no growth and projected very conservatively, totals $65 billion dollars, with an after tax

2   cumulative profit of $486 million dollars. The calculated total damages represents only 9.6% of

3   those monetary gains. Lastly, the approximately $47 million dollars in total damages that 1st

4   Technology LLC requests represents a mere 4.7% of Calvin Ayre's current $1 billion dollar net

5   worth, as calculated by Forbes. This wealth was derived in large part through infringement of 1st

6   Technology LLC's '001 Patent and my own innovation as its sole inventor.

7       Further your affiant sayeth naught.

8       DATED this _20th_ day of March, 2007.

9

10

11                                   SCOTT W. LEWIS, Ph.D.

12

13   Sworn to and subscribed before

  me this _20th_ day of March, 2007.

14

15

16 

17   Notary Public

18

19     BLANCHE S. BERGER
    COMM. #1426711
    NOTARY PUBLIC – CALIFORNIA
    SAN FRANCISCO COUNTY
    My Comm. Expires July 21, 2007

20

21

22

23

24

25

26

27

28