Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Venkat Balasubramani, Esq.
Balasubramani Law
8426 40th Avenue SW
Seattle, Washington 98136
Telephone: (206) 529-4827
Facsimile: (206) 260-3996

Attorneys for Plaintiff
1st TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 1ST TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>RATIONAL ENTERPRISES LTDA.,<br>RATIONAL POKER SCHOOL LIMITED,<br>BODOG ENTERTAINMENT GROUP<br>S.A., BODOG.NET, BODOG.COM, and<br>FUTUREBET SYSTEMS LTD.,<br><br>Defendants. | 2:06-cv-01110-RLH-GWF<br><br>**PLAINTIFF 1ST TECHNOLOGY LLC'S OPPOSITION TO DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM'S MOTION TO SET ASIDE DEFAULT JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff 1ST TECHNOLOGY LLC (hereinafter "1st Technology") by and through its counsel of record, HUTCHISON & STEFFEN, LLC, hereby files its Opposition to the Motion and Amended Motion to Set Aside Default Judgment of Defendants BODOG ENTERTAINMENT GROUP S.A., BODOG.NET, and BODOG.COM (hereinafter collectively referred to as the "Bodog Entities"). This Opposition is made and based on the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument of counsel which the

///

///

1 Court may entertain

2 DATED this 18th day of September, 2007.

HUTCHISON & STEFFEN, LLC

[signature]

Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

Venkat Balasubramani, Esq.
Balasubramani Law
8426 40th Avenue SW
Seattle, Washington 98136

Attorneys for Plaintiff
1st TECHNOLOGY LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a patent infringement matter in which Plaintiff filed suit against the Bodog Entities for infringement of Plaintiff's patent, Patent No. 5,564,001, entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth". Plaintiff filed its Complaint against the Bodog Entities on September 7, 2006. As detailed below, the Complaint was properly served on the Bodog Entities through an officer of Bodog. The individual who now claims to be Bodog's counsel, Mr. James Nguyen, was aware that the Complaint had been filed and served, though Mr. Nguyen informed co-counsel for Plaintiff that he was not representing Bodog. Bodog ignored the Complaint and never entered an appearance, or advised through counsel or otherwise that Bodog had retained counsel in this matter. Accordingly, Plaintiff appropriately applied for a Default Judgment, which the Court granted.

Bodog finally responded to the lawsuit after Plaintiff began collections efforts, and – after giving Bodog notice – sought and obtained writs of execution on domain names registered to Bodog through a United States registrar.

28 ///

1    In support of its Motion to Set Aside the Default, Bodog offers vague declarations that the person who was handed the Summons and Complaint lacked legal authority to accept service. The first declaration is made by someone claiming to be a "Legal Representative" of Bodog. The second declaration is made by Ms. Victoria Mora, the person to whom the Summons and Complaint were delivered. Ms. Mora claims to be nothing more than an "administrative assistant" at Bodog. In contrast to the vague Declarations relied on by Bodog, the Default Judgment, and Plaintiff's Opposition to Bodog's Motion are supported by properly notarized and authenticated Declarations of a Costa Rican-based lawyer (Mauricio Bonilla) as well as the process server (Allan Hernandez Vargas). Bodog's charter documents - which are attached to Mr. Bonilla's declaration – show that Ms. Mora is in fact not an "administrative assistant" as Bodog claims. Rather, she is Bodog's 'Fiscal' (or Controller) and is an officer of Bodog for purposes of Costa Rican law. The Declaration from Mr. Bonilla further demonstrates that under Costa Rican law, service upon Bodog was properly effected through personal delivery of the Summons and Complaint to a Bodog officer (Ms. Mora), with the law having much broader applicability.

The attempt by Bodog to extricate itself from a proper Default Judgment demonstrates an established pattern by the Bodog Entities and their principal, Calvin Ayre, to profit extensively by taking vast sums of money from Nevada and United States residents via their illegal internet gaming websites while, at the same time, evading United States Criminal and Civil Courts and acting as if they are above the law. The Court should not permit such continued flaunting of United States law and should hold the Bodog Entities to the Default Judgment which was properly entered.

## II.    FACTUAL BACKGROUND

### A.    Bodog and Calvin Ayre – Background

The Bodog Entities, through their owner and CEO, Calvin Ayre, operate a vast internet gaming empire from "offshore" locations, including their headquarters in Costa Rica. *See* Affidavit of Scott Lewis in Support of Plaintiff's Motion for Default Judgment, attached hereto as Exhibit 1 and Forbes.com article of March 27, 2006, a true and correct copy of which is attached hereto as Exhibit 2. According to the aforementioned Forbes article, in 2005, the Bodog Entities handled $7.3 billion dollars in online wagers, with sales increasing every year. *Id.* Purportedly, 95% of

1  Bodog's sales come from the United States, with Mr. Ayre paying no federal income tax. *Id.*

2  Bodog and its CEO also participate in numerous business and promotional events, including
3  the World Series of Poker in Las Vegas, Nevada. The Bodog Entities and Mr. Ayre pride
4  themselves on evading United States law. *Id.* Mr. Ayre and his lawyers have told previous
5  intellectual property plaintiffs that Bodog and Ayre purposefully try to arrange their assets in such
6  a way that there is nothing for anyone to collect, should they receive judgment against them. *See*
7  "Update: Bodog uses offshore status to evade U.S. lawsuit" from FindArticles.Com, a true and
8  correct copy of which is attached hereto as Exhibit 3. Indeed, the previously cited Forbes article
9  is titled "Catch Me If You Can."

**B.   1st Technology and the Instant Lawsuit**

In 2006, the principal of 1st Technology, Mr. Scott Lewis, discovered that the Bodog Entities were infringing on his patent. The '001 Patent enables providers of online games to operate at a higher level of interactivity and higher quality than would ordinarily be possible without the '001 Patent techniques. The Bodog Entities have implemented, and continue to implement, the '001 Patent techniques by using software on their websites which is downloaded by the user and updated periodically thereafter (typically at least once a year to incorporate software optimization updates) by Bodog. *See* Exhibit 1.

The Bodog Entities operate and obtain revenue from the United States by providing the Bodog Entities' infringing software to United States customers via internet downloads (both for new customers needing initial infringing software and current customers needing infringing Bodog software updates). The Bodog Entities also operate by establishing a series of United States relationships to deliver these software downloads (in addition to downloads via their own sites, bodog.com and bodog.net), and applying a massive United States based advertising, marketing and promotion programs to keep their current customers and increase revenue by obtaining new customers. *See* Exhibit 1.

As a result of this infringing activity, 1st Technology filed suit in United States District Court for the District of Nevada on September 7, 2006. *See* Plaintiff's Complaint on file herein.

///

### C. Service on the Bodog Entities and Attempts to Contact Bodog's Counsel

On November 23, 2006, the Summons and Complaint were properly served on the Bodog Entities to Bodog's controller (Ms. Mora) at Bodog's Costa Rica offices, pursuant to FRCP 4(h)(2) and FRCP 4(f). Service was effected by Plaintiff on Bodog at its principal place of business which (1) is publicly displayed on numerous Bodog's websites; (2) the address which was listed under the publicly available WHOIS database for numerous Bodog domain names; and (3) the address listed by Bodog itself when it applied for and obtained a United States servicemark for "BODOG".[1] *See* Declaration of Venkat Balasubramani attached hereto as Exhibit 4. The process server received the Summons and Complaint on November 14, 2006 and, as set forth on the process server's affidavits, served the Bodog Entities by hand delivery on November 23, 2006. *See* Exhibit 5 and the process server's subsequent affidavit attached hereto as Exhibit 6.

In addition to personally delivering a copy of the Summons and Complaint to a Bodog officer, attorneys for Plaintiff made multiple attempts to obtain a response to the Complaint from the Bodog Entities, including contacting counsel for the Bodog Entities. *See* affidavit of Matthew McAndrews attached hereto as Exhibit 7 and affidavit of William Flachsbart attached hereto as Exhibit 8. As Mr. Flachsbart testified, he retained the original process server who served the Bodog Entities at their headquarters in San Jose, Costa Rica. *See* Exhibit 8. Even prior to the service of the Complaint, Mr. Flachsbart attempted to notify the Bodog Entities that the Complaint had been filed. Mr. Flachsbart contacted Bodog's offices and was eventually transferred to a Bodog supervisor who took down all of his relevant information, the fact that he represented 1st Technology LLC, and that 1st Technology had filed suit against Bodog. He was informed that someone would contact him later; however, this never occurred. *See* Exhibit 8. Further, after conducting some research, Mr. Flachsbart determined that Mr. James Nguyen had previously represented Bodog in another patent litigation. Accordingly, Mr. Flachsbart attempted to contact Mr. Nguyen to determine whether he would be representing Bodog. Mr. Nguyen never called him back. *See* Exhibit 8.

---

[1] The fact that this information was accessed in the last month demonstrates that Bodog's contention it is no longer operating in Costa Rica is false.

- 5 -

Mr. Matthew McAndrews, of the same firm as Mr. Flachsbart, made further attempts to contact Mr. Nguyen. *See* Exhibit 7. In January of 2007, Mr. McAndrews first left a voice mail message for Mr. Nguyen in which he informed Mr. Nguyen that he was representing 1st Technology LLC in a patent infringement lawsuit against the Bodog Entities and that the Bodog Entities had been served. *See* Exhibit 7. Mr. McAndrews was ultimately able to speak with Mr. Nguyen shortly thereafter. *See* Exhibit 7. When Mr. McAndrews spoke with him, Mr. Nguyen specifically informed Mr. McAndrews that he was not representing Bodog in the 1st Technology lawsuit and could not help him any further. *See* Exhibit 7. Mr. Nguyen told Mr. McAndrews he would contact him in the future, if he was retained to represent the Bodog Entities in this case, though he never did so. *See* Exhibit 7.

From that time forward, no attorney ever contacted Mr. Flachsbart or Mr. McAndrews to indicate that they were representing any of the Bodog Entities in this litigation.

Las Vegas counsel for Plaintiff, Hutchison & Steffen, never received any word from any attorney that any of the Bodog Entities were being represented in this lawsuit. *See* affidavit of L. Kristopher Rath attached hereto as Exhibit 9. In an attempt to grasp at straws, Mr. Nguyen, who claims he is now representing the Bodog Entities despite his previous denial, alleges that Ms. Diane Tucker represents the Bodog Entities and had informed 1st Technology's counsel that she did. The sole evidence cited for this is a letter which never identifies or mentions the Bodog Entities. (1st Technology filed a lawsuit against Riptown.Com Media and received a response letter from a Diane Tucker stating that she was general counsel for Riptown.Com Media and claiming that Riptown.Com Media did not exist. *See* letter from Diane Tucker attached hereto as Exhibit 10, and Exhibit 9.) As the Court can easily see from a review of this letter, Ms. Tucker never claims to represent any of the Bodog Entities and the name Bodog does not appear anywhere in the letterhead or anywhere else in the correspondence. Ms. Tucker gave no indication that there was any connection between any of the Bodog Entities and Riptown.Com Media, an entity which she claims does not exist. *See* Exhibit 9.

///
///

- 6 -

### D. Plaintiff Properly Obtains Default Judgment

In sum, service of the Complaint and Summons was proper (as fully detailed below). Despite attempts to contact Bodog's attorney, even notifying Mr. Nguyen of the suit and service, Bodog never retained counsel, never made an appearance, never made any attempt to ask for any extension to answer the Complaint, but simply ignored the Complaint in its entirety. Therefore, on February 23, 2007, Plaintiff appropriately obtained default against the Bodog Entities. Subsequently, on March 21, 2007, Plaintiff filed an Application for Default Judgment which set forth detailed damages calculations. *See* Application for Default Judgment on file herein. Pursuant to FRCP 55(b), no notice of the Application for Default Judgment was provided to Bodog because none of the Bodog Entities had appeared in this action, and, despite multiple attempts, Plaintiff's attorneys were unable to find any attorneys to acknowledge that they represented Bodog in this action. The Court examined the materials and the Application for Default Judgment, including the Proofs of Service, and appropriately granted Plaintiff Entry of Default Judgment Against the Bodog Entities. There is no reason for the Court to set aside the properly entered Default Judgment against the Bodog Entities.

## III. LEGAL ARGUMENT

### A. Standards for setting aside default judgment

FRCP 55(c) permits the setting aside of a default judgment only for "good cause shown." FRCP 55(c). However, in this case, not only has a Default been entered, but also a Default Judgment. In addition to meeting the good cause requirement for setting aside a default, Defendants must also meet the requirements for vacating a judgment in accordance with NRCP 60(b). FRCP 55(c).

In general, setting aside an entry of a default under Rule 55(c) is a case specific determination that requires an assessment of a variety of factors including: whether the default was wilful, whether setting it aside would the prejudice be adversary, whether a meritorious defense is presented, the nature of the defendant's explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion. *Brand Scaffold Builders, Inc. v. Puerto Rico Electric Power*, 364 F.Supp.2d 50, 54 (D. Puerto Rico 2005) (citing *McKinnon v. Kwong*, 83

1  F.3rd 498, 503 (1st Cir. 1996)).

2  However, while the factors for vacating a default judgment are largely the same as those for setting aside a default, the Courts generally apply the factors more rigorously in cases of default judgement. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Rule 60(b) requires a more stringent standard. *See Brand Scaffold Builders*, 364 F.Supp at 54. In order to prevail under Rule 60(b), the party seeking to have judgment vacated bears a heavy burden to show both (1) a good reason for the default and (2) existence of a meritorious defense. *Id.* (citing *American Metal Services Co. v. Ahrens Aircraft*, 666 F.2d 718 (1st Cir. 1981)).

The Bodog Entities' arguments for setting aside the default are: (1) its service was improper and (2) their attorney was not notified of the default. However, as set forth below, service was properly effected in this case. Also, as outlined above, attempts were made to contact Bodog's attorney; however, no one acknowledged being the attorney for Bodog for this litigation. The letter from Diane Tucker, an attorney for a different defendant in a different case, never specifically mentions Bodog, which is insufficient to put anyone on notice that she was representing Bodog in this matter, or any other matter.

**B.    Service on the Bodog Entities was proper**

Bodog's initially filed Motion (Dkt. # 36) cited to Rule 4(h)*(1)* (directing service of process to managing officer or agent) as the applicable rule. However, in its Amended Motion (Dkt. # 44), Bodog correctly recognizes that service on a foreign corporation is also governed by FRCP 4(h)*(2)* (which references FRCP 4(f) (service upon individuals in a foreign locale)). Rule 4(f) offers a variety of options for service abroad, including service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction." FRCP 4(f)(2)(A). Plaintiff's service on the Bodog Entities satisfies this rule. While Bodog's Amended Motion recites a portion of Rule 4(h)(2), it does not address the critical question of service on Bodog through Ms. Mora was appropriate under Costa Rican Law. Bodog's Amended Motion contains no citations to any United States or Costa Rican authorities that service to a person such as Ms. Mora is insufficient under Rule 4(h)(2).

///

- 8 -

    **1.**    <u>Costa Rican law allows for service on any corporate officer and many others.</u>

Costa Rica is not a party to the Hague Convention. *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015, fn. 4 (9th Cir. 2002). Similarly, the Inter-American Convention on Letters Rogatory is not applicable to service in Costa Rica. *SCRA Corp. v. Trajes Internacionales de Costa Rica, S.A.*, 1999 U.S. Dist. LEXIS 13708 (D. Pa. 1999). Therefore, service upon a corporation in Costa Rica need only comply with Costa Rican law. *United States v. Betonsports PLC*, 2006 U.S. Dist. LEXIS 55553 (Aug. 9, 2006, D. Mo.) ("the permissible methods of service on defendant are less restrictive in Costa Rica than in London, England").

Under Costa Rican law, service on a corporation is appropriate where the Summons and Complaint is delivered to the corporation's office to a person who is or who claims to be above fifteen years of age. *See* Declaration of Mauricio Bonilla attached hereto as Exhibit 11, at Exhibit B. Article 7 of the Service Law of Costa Rica ("Ley de Notificaciones, Citaciones y otras Comunicaciones Judiciales"), which is attached to the Bonilla Declaration, shows that service to a corporation's offices to a person of suitable age (over 15) is sufficient. This is the means of service found appropriate by courts in several cases involving Costa Rican entities, including the *Betonsports* and *Trajes Internacionales de Costa Rica* cases cited above.

    **2.**    <u>Service on the Bodog Entities was proper under Costa Rica law.</u>

Bodog claims that Victoria Mora, is a purported "administrative assistant," and as such, is not authorized to accept service (because she is not an "officer, a managing or general agent, or any other agent authorized by appointment . . . to receive service of process . . ."). This is a blatantly false assertion. Ms. Mora is not merely an "administrative assistant," as Bodog would lead the Court to believe. Bodog's charter documents, which are attached to Mr. Bonilla's Declaration (as Exhibit A), show that Ms. Mora is an Officer of Bodog; Ms. Mora is also the comptroller of Bodog (the "fiscal," in local terms). *See* Bodog Charter documents, attached hereto as Exhibit 11, at Exhibit A. Under Costa Rican law, service on someone such as Ms. Mora is clearly proper even if she was an administrative assistant rather than an officer of Bodog.

Ms. Mora's contention that she did not receive the Summons and Complaint should be taken with a grain of salt, or disregarded entirely. As the Court can see, Ms. Mora is blatantly

misrepresenting her role in Bodog. Given this, the Court should not accord much credibility to her contentions regarding service. The process server has testified under oath that he delivered a copy of the Summons and Complaint to someone who identified herself as Ms. Mora at the Bodog corporate offices.[2] See Declaration of Allan Hernandez Vargas attached hereto as Exhibit 6. This process server has no interest in the outcome of this case. The Court should consider this in evaluating the credibility of the process server versus Ms. Mora.[3]

A Federal Court has specifically found that, "service by actual delivery to a defendant's place of business in Costa Rica to its registered agent in Costa Rica is not prohibited by international law" and is appropriate. *SCRA Corp. v. Trajes Internacionales De Costa*, 1999 WL 718650 (E.D.Pa. 1999). In the *SCRA Corp.* case, the plaintiff initially served a corporation in Costa Rica and then effected service on an entity in New York City. The defendant then filed a motion to dismiss for ineffective service of process. *Id.* The Court denied the motion to dismiss, quashed service on the New York entity, and directed the plaintiff to make service "by appropriate alternate means." The plaintiff then served the summons and complaint on an individual in the Costa Rica office of the Costa Rican corporation. The Court then retroactively approved that manner of service and held that it was appropriate. *Id.* As service was accomplished in the same way in this matter,

---

[2] The fact that the process server served Ms. Mora at the Bodog offices in Costa Rica, where she was working at the time, again demonstrates that Bodog's contention that it was not operating in Costa Rica on November 23, 2006, is false.

[3] Ms. Mora has now claimed that she does not recall receiving service, which is not surprising given that Bodog now has a $50 million dollar default judgment against it. Bodog attempts to call the process server's credibility into question by claiming that Ms. Mora is 28 years old, instead of 38 years old, and is 5'4" instead of 5'2" as indicated in the process server's affidavit. A difference of two inches in height is negligible and we do not have a photograph of Ms. Mora to evaluate how old she looks. Defendants also claim that there is an error in the process server's report that Ms. Mora was 80 pounds when she is in fact 150 pounds. However, the process server's affidavit merely lists "80" as the weight. As Costa Rica follows the metric system, this weight is stated in kilograms, rather than pounds (*See* Exhibit 6), which would equate to approximately 175 pounds which would not be that inaccurate of an estimate for a 150 pound woman. Overall, the process server's affidavit is much more credible than that of Ms. Mora If the Court has any issue with regard to the relative credibility between Ms. Mora and the process server, Plaintiff would request that the Court hold an evidentiary hearing or at least allow for the depositions of both of these individuals before deciding to lift the Default in this matter.

the Court should also hold that it was appropriate. The Court already directed service under NRCP 4(f). If the Court for some reason feels that this is insufficient, as in the *SCRA Corp.* case, Plaintiff moves for retroactive approval of such service herein.

      3.     <u>Ms. Mora's status for US law purposes is a red herring.</u>

Bodog cites to federal cases deciding propriety of service under Rule 4(h)(1) in arguing that service on Ms. Mora was not sufficient. As set forth above, this is a red herring. The relevant inquiry is <u>whether Costa Rican law</u> authorizes service through Ms. Mora, not whether Ms. Mora is an authorized agent or otherwise authorized to accept service. In any event, the cases cited by Bodog are inapposite. Plaintiff puts forth conclusive evidence that Ms. Mora is the comptroller of Bodog.[4] In these circumstances, Ms. Mora is in a sufficient position of authority within the corporation such that service upon her is proper under Rule 4(h)(1). *See, e.g., Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law .... The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice."); *Kuhlic v. Atlantic Corp.*, 112 F.R.D. 146 (D.C.N.Y. 1986) (finding that a receptionist at the corporate offices who states she can accept a summons was an implied agent authorized by appointment and capable of accepting service); *Sellens v. Telephone Credit Union*, 189 F.R.D. 461 (D.C.Kan. 1999) (finding that service was appropriate when process server left a copy of the summons and complaint with a secretary at the resident agent's place of business and the secretary told the server she can accept the summons); *Union Asbestos & Rubber Co. v. Evans Products Co.*, 328 F.2d 949 (7th Cir. 1964) (finding that service of process on a secretary of a local sales manager of a nonresident corporation was sufficient when the sales manager was out of the office 75 to 80% of the time); *Battie v. Freeman Decorating*, 2001 WL 1345927 (E.D.La 2001) (finding that, "delivery of a copy of the summons and complaint to a corporation's receptionist has been held to be sufficient service under Rule 4 and citing *Wright & Miller*, § 1101, *supra*).

---

[4] The Costa Rican corporate filings directly contradict Ms. Mora's sworn testimony in which she claims she was merely an "administrative assistant."

- 11 -

In general, the relevant inquiry in evaluating whether service is proper in such situation is whether the individual who was served has some position of authority in the organization and/or knows what to do with the service papers. *Wright & Miller* § 1101. In this case, according to the affidavit of the process server, Ms. Mora indicated to him that she was in charge of the office. Bodog's charter documents indicate Ms. Mora is the comptroller and an officer of Bodog. There is no dispute that the location of which Ms. Mora was served was, in fact, the Bodog Entities' principal corporate office. Ms. Mora was an apparent and/or implied agent of Bodog clearly capable of accepting service. Although Defendants claim she was an administrative assistant, she represented to the process server that she was in charge and there is no dispute that she was an employee of Bodog. In addition, the Costa Rican corporate filings show she had significant authority within the company. Indeed, under Costa Rican law, service on a corporation is appropriate where the Summons and Complaint is delivered to the corporation's office to a person who is or who claims to be above fifteen years of age, clearly this would include Ms. Mora. As such, Defendants' arguments that service was insufficient because Ms. Mora was "not authorized to accept service of process" are unavailing.

### C. Notice of the default was not required because Bodog had not appeared through counsel or otherwise

Defendants make the absurd proposition that counsel for Plaintiff violated Nevada Rule of Professional Conduct 3.5A which requires an attorney to contact the lawyer of an opposing party about a default if that lawyer knows or reasonably should know the identity of the lawyer representing the opposing party. As a basis for this proposition, Defendants provide only a letter from Diane Tucker regarding a different defendant in a different lawsuit.

That letter clearly demonstrates that Ms. Tucker made no mention of Bodog or any of the Bodog Entities named in this litigation. There is no way that counsel knew, or should have reasonably known, that Ms. Tucker represented any of the Bodog Entities. Nothing in the letter or letterhead states otherwise and neither even states the word "Bodog." Using Defendants' logic, prior to moving for default, plaintiff's counsel in a case would be required to canvass his or her rolodex and check to see if any counsel were representing the defendants. This is obviously untenable, and Defendants do not cite to any cases which provide for this rule.

- 12 -

In any event, plaintiff's counsel made reasonable efforts to contact an attorney who they thought might be representing Bodog in this action, and who had, in fact, represented Bodog in the past (Mr. Nguyen). After being informed of the lawsuit and service of the Complaint, however, Mr. Nguyen denied that he was Bodog's attorney for this case and stated that he could not respond further on behalf of Bodog. Thus, Plaintiff's counsel was left with no idea as to who Bodog's attorney might or might not be, no reasonable way of finding out who might represent Bodog, and had no word from Bodog as to whether, in fact, it was represented by counsel. Bodog had simply ignored the Complaint. In these circumstances, no rule (whether rules of professional conduct or otherwise) precludes the Entry of Default and Default Judgment.

### D.   Bodog has unclean Hands

The defaulting party's good faith is a factor the Court should take into consideration in determining whether to set aside a default. For a variety of reasons, Defendants here have exhibited bad faith and unclean hands.

First, Defendants have made false representations to the Court regarding Ms. Mora's status. In the face of Bodog's charter documents which show that Ms. Mora is an officer and the controller of Bodog, Defendants submit a declaration that she is an "administrative assistant." This itself warrants denial of Bodog's Motion.

Second, Defendants have made false representations to their business' true nature. The Defendants claim in their motions that they do not provide online entertainment services. This is false and itself also warrants denial of Bodog's Motion. In fact, on Friday (September 7) Bodog filed an Amended Motion Dkt. #44) in which it claimed that "Bodog Entertainment Group SA does not itself provide online entertainment services." Bodog makes this contention without citation to any factual authority whatsoever. Moreover, this contention is belied by the evidence. "Bodog Entertainment SA" filed and obtained a United States trademark registration for, among other things, "providing sports wagering, event wagering, casino tournaments, in the nature of online gaming competitions, and games of chance via the internet and television." (Similarly, the address for Bodog which is provided on Bodog's own website references "Bodog Entertainment Group SA.") Indeed, Bodog's own website, (*See* Exhibit A), BodogConference.com, identifies Bodog

- 13 -

Entertainment Group S.A. as:

> Bodog Entertainment Group S.A. located at Oficentro Ejecutive Sabana Sur Edificio 7 5 Piso, San Jose, Costa Rica, takes pride in being federally licensed by the Costa Rican government, and confidently holds 100% of all deposits plus winnings for all players in a segregated reserve account with Europe's largest Private Bank in Zurich, Switzerland.

Additional obvious facts that makes Bodog's position untenable are that Bodog Entertainment Group S.A. is itself, the registrant of the Bodog online gaming domain names, before the Plaintiff took control per court order, including Bodog.com, Bodog.net, (*See* Balasubramani Declaration, Exhibit B, original Whois record for Bodog.com, Bodog.Net) and hundreds more - all registered by the Defendant through Washington based eNom Inc.

Third, Defendants operate online gambling operations which violate United States and state laws. Nevada state law prohibits Internet gambling without a state license - Bodog does not have a state license, and they serve Nevada customers (and promote events in Nevada, such as The World Series of Poker). NRS 463.0129, 463.016425, and 463.765. Nevada was the first state not only to outlaw, but also legalize, Internet gambling. Making or accepting a wager over the Internet is now, by statute, a crime committed in Nevada, unless the operator is one of the state's licensees. *See* NRS 463.0129 (Public policy of state concerning gaming; license or approval revocable privilege); NRS 463.016425 ("Interactive gaming" defined to include Internet gaming); and NRS 463.765 (license required for Interactive gaming).

In 2006, the Washington legislature passed Washington's internet gambling law, which "chang[ed] the penalty for Internet gambling from a gross misdemeanor to a class C felony." Although this law clarified the status of internet gambling, materials promulgated (for example) by the Washington State Gambling Commission iterate that "Internet gambling has always been illegal in Washington State and in the United States." (*See* Declaration of Venkat Balasubramani submitted herewith at Exhibit 4.) Defendants had registered numerous domain names in Washington State and operated these domain names from Washington State, all in violation of Washington law.

United States law similarly prohibits online (internet) gambling. In 2006, Congress passed the "Unlawful Internet Gambling Enforcement Act of 2006" (31 USC § 5361, et seq.). This law criminalizes the acceptance of funds from bettors by operators of "virtually all" online gambling Websites. Under both of these laws, there may be some dispute as to whether persons or entities peripheral to the online gambling operation - such as advertisers or service providers - are covered. However, an operator of an online gambling website (such as Bodog) is clearly covered under these laws.

The *Betonsports* case is illustrative in this regard. In this case a federal court in the Eastern District of Missouri found the activities of a UK company – which offered access to online gambling sites to United States residents and encouraged their use – violated United States law. The *Betonsports* court entered an injunction against the company. *See United States v. Betonsports PLC*, Case No. 4:06CV1064 (E.D. Mo.) (Injunction Order entered November 9, 2006). There, based on a showing of illegality, the court entered an injunction prohibiting Betonsports and its affiliates from operating on US soil. Among other things, the injunction prohibited Betonsports from "soliciting and accepting wagers . . . from persons in the jurisdiction of the United States." Defendants are engaged in virtually the same activity in contravention of United States and state laws. This is an alternative reason to deny Defendants' Motion to Vacate.

E. **If the Court finds Service Improper, the Court should retroactively approve service via alternate means to the Bodog Entities**

In the event the Court finds that Plaintiff failed to properly effect service, Plaintiff requests that the Court authorize service via (1) delivery to Bodog's counsel and/or (2) by certified U.S. mail to the address listed on Bodog's original U.S. trademark application and Bodog.com domain name WHOIS record, and that such alternate be approved retroactively by the Court thereby re-affirming Plaintiff's judgment against the Defendants. The Court may authorize service via alternative means pursuant to Rule 4(f)(3), and service on a Costa Rican entity has been authorized by the Ninth Circuit in a factually similar context. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), and the *SCRA Corp.* Case (approving service via email and to defendant's counsel).

///

- 15 -

### F. Bodog Constitutes a Flight Risk: The Court should require the Bodog Entities to post bond

In the event the Court sets aside the Default Judgment, the Court shoulder Order Defendants to post bond. The Bodog Entities have a pattern and practice of hiding assets and avoiding service, as well as disdain for the United States Courts. Bodog has made statements to this effect, and has been profiled in a Forbes magazine article titled "Catch Me If You Can." That article details the efforts taken by Bodog to stay outside of United States jurisdiction, including due to reasons of taxation and/or legality. Bodog's conduct in this case evinces a similar inclination to flout United States jurisdiction.

Bodog only sprung to action in this matter after Plaintiff found a way to collect on its Judgment by executing on Defendants' domain names. After those domain names were transferred to Plaintiff (pursuant to an Order of the Washington State Court), Defendants registered a second set of domain names through which Defendants continued their operations. However, these domain names were registered through a Malta based entity called "Lyon Finance." In contravention of the Washington Court's Order, Bodog attempted to transition its users to a new domain name virtually identical to the domain names ordered to be transferred to Plaintiff. Bodog has demonstrated that it is a flight risk and, should Plaintiff ultimately prevail in this case with this action of Default lifted, Plaintiff will likely be left with no assets to collect. In fact, Mr. Nguyen has already informed Plaintiff's counsel that Defendants intend to relocate and hide their assets with the Mohawk Indian Tribe in Canada. *See* affidavit of Troy Wallin attached hereto as Exhibit 12. Bodog operates in this way because it knows that internet gambling is illegal under United States law.

The Bodog Entities state in their Amended Motion to Set Aside Default that, "should this Court issue an Order lifting Default, Defendants are prepared to file a response to the Complaint within 20 days of the entry of such Order." As such, should the Court set aside the default, it should require Defendants to answer within 20 days **and** post a bond for the amount of the Default Judgment ($46,597,849) and provide that the Plaintiff be allowed to hold the domain names as currently set forth in the Order from the Washington State Court. *See* Order from Washington State Court attached hereto as Exhibit 13. Otherwise, the Bodog Entities will certainly take significant action to hide their assets from any collection efforts to thwart any judgment of this Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Court deny the Bodog Entities' Motion to Set Aside Default, allow the Default Judgment to stand, and allow Plaintiff to collect on the same judgment. In the alternative, should the Court lift the Default and the Default Judgment, the Court should issue an Order requiring the Bodog Entities' to file an answer to the Complaint within 20 days, post a bond to cover the amount of the Default Judgment, and allow Plaintiff to continue to hold the assets pursuant to the Washington State Order.

DATED this 18th day of September, 2007.

HUTCHISON & STEFFEN, LLC

_____
Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

Venkat Balasubramani, Esq.
Balasubramani Law
8426 40th Avenue SW
Seattle, Washington 98136

Attorneys for Plaintiff
1st TECHNOLOGY LLC

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 18th day of September, 2007, I caused the above and foregoing document entitled: **PLAINTIFF 1ST TECHNOLOGY LLC'S OPPOSITION TO DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM'S MOTION TO SET ASIDE DEFAULT JUDGMENT** to be served via electronically through ECF/PACER to the attorneys listed below:

**Charles McCrea, Esq.**
Lionel, Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
*Counsel for Defendant Bodog Entertainment Group, S.A.*

**James D. Nguyen, Esq.**
Foley & Lardner, LLP
2029 Century Park East, 35th Floor
Los Angeles, California 90067-3021
*Co-Counsel for Defendant Bodog Entertainment Group, S.A.*

**Andrew P. Gordon, Esq.**
McDonald Carano Wilson
2300 W Sahara Avenue
Suite 1000-10
Las Vegas, Nevada 89102
*Counsel for Defendant Rational Poker School Limited*

_____
An employee of Hutchison & Steffen, LLC