Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Attorneys for Plaintiff
1st TECHNOLOGY LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 1ST TECHNOLOGY LLC, | 2:06-cv-01110-RLH-GWF |
| Plaintiff, | **PLAINTIFF 1ST TECHNOLOGY LLC'S EMERGENCY MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM** |
| v. | |
| RATIONAL ENTERPRISES LTDA., RATIONAL POKER SCHOOL LIMITED, BODOG ENTERTAINMENT GROUP S.A., BODOG.NET, BODOG.COM, and FUTUREBET SYSTEMS LTD., | |
| | **ON AN ORDER SHORTENING TIME, PURSUANT TO LR 6-1(a)** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Plaintiff, 1ST TECHNOLOGY LLC (hereinafter "1st Technology"), by and through its counsel of record, HUTCHISON & STEFFEN, LLC, moves to enjoin Defendants, BODOG ENTERTAINMENT GROUP S.A.; BODOG.NET; and BODOG.COM (hereinafter referred to as the "Bodog Entities") from directing their customers and traffic to "BodogLife.com" or any other website besides "NewBodog.com", to require the Bodog Entities to email their customers to return to the NewBodog.com domain name, and to force the Bodog Entities to cease using the BodogLife.com site for their Bodog operations pending the outcome of their Motion to Set Aside Default Judgment. The Court should also force the Bodog Entities to post security to prevent them from further transferring and secreting their assets outside the United States.

Since this Court entered its default judgment, the Bodog Entities have sought to evade the judgment through legal and illegal means. Most recently the Bodog Entities have fraudulently transferred their web traffic from their United States domain name to a foreign domain name,

"BodogLife.com." Meantime, the Bodog Entities continue to illegally use 1st Technology's patent, earn monies from United States citizens, fail to pay taxes in the United States, and publicly flaunt this Court's Orders entered on Execution of Judgment. To date, the Bodog Entities have failed to pay a dime of 1st Technology's Judgment while they persist in illegal activities.

This Application is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, with its affidavit and exhibits attached thereto, and any arguments of counsel that the Court may entertain at a hearing on this matter.

An Order Shortening Time is necessary because of the nature of the Bodog Entities' continuing wrongdoing and 1st Technology continuing harm. The Bodog Entities are in the process of evading this Court's judgment by transferring their assets and business overseas. A prompt hearing and resolution of this motion will allow 1st Technology to stop the Bodog Entities' illegal behavior and to ensure that adequate assets remain in the United States to satisfy 1st Technology's judgment.

DATED this 20th day of September, 2007.

HUTCHISON & STEFFEN, LLC

Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    INTRODUCTION AND FACTUAL BACKGROUND**

As the Court is aware, the instant lawsuit is a patent infringement case. 1st Technology is the assignee of and owns all rights, title, and interest in, and has standing to sue for infringement of United States Patent 5,564,001, entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth" (hereinafter the "'001 Patent"). The Bodog Entities are foreign companies headquartered in Costa Rica who have

infringed and continue to infringe on the '001 Patent in violation of 35 U.S.C. § 271 by, among other activities, implementing the '001 Patent techniques with software on their online gaming websites that is downloaded before use and periodically thereafter (usually at least once a year to incorporate software optimization updates). *See* Affidavit of Scott Lewis in Support of Application for Default, a true copy of which is attached to the motion as Exhibit A to Exhibit 1 (Exhibit 1 to this Motion is a true and correct copy of the Declaration of Scott Lewis. All lettered exhibits are attached to Exhibit 1).

Each of the Bodog Entities were duly and properly served and have failed to make any appearance in this action. Accordingly, the Court entered their Default on February 26, 2007. *See* Entry of Default for Bodog Entities, on file. On June 14, 2007, the Court entered a Default Judgment in 1st Technology's favor against the Bodog Entities in the amount of $46,597,849.00 plus interest. *See* Exhibit A to Exhibit 1, and Order Granting Application for Default Judgment, a true copy of which is attached to the motion as Exhibit H to Exhibit 1. To date, the Bodog Entities have not paid any of the judgment. The Bodog Entities' motion to set aside default judgment is pending before this Court.

On August 21, 2007, 1st Technology secured a Washington State Court Order giving it control of the domain name and traffic of Bodog.com. *See* Declaration of Scott Lewis, a true copy of which is attached to this motion as Exhibit 1. The Bodog.com domain name traffic was the primary saleable asset to 1st Technology as a creditor. *Id.*

To evade the intent of the Court's Order, on August 27, 2007, Bodog linked a new domain name created on August 27th to Bodog's website. *Id.* This new domain name was registered to a third-party, Lyon Finance Ltd. of Malta, via a second Washington State registrar, dotRegistrar, with the name NewBodog.com. *Id.* The redirecting of Bodog's website via this new domain name in combination with Bodog's directions to its customers to use the new site transferred all of the Bodog traffic to "NewBodog.com" domain name. *Id.*; *see also* Alexa report of "NewBodog.com" traffic, a true and correct copy of which is attached hereto as Exhibit B to Exhibit 1). When 1st Technology discovered Bodog's action in moving its traffic to the new site, 1st Technology moved

- 3 -

for and was granted a Washington State Court Order on September 5, 2007, barring Bodog or any third-party from transferring and/or disposing of the NewBodog.com domain name. *See* Exhibit 1. Bodog and their registrar subsequently received the Court Order of September 12th to lock the domain name. *Id*.; *see also* Order from Washington Court, a true and correct copy of which is attached hereto as Exhibit C to Exhibit 1 and letter to dotRegistrar, a true and correct copy of which is attached hereto as Exhibit D to Exhibit 1.

On September 15th, Bodog's CEO bragged on his website (*see* website text, a true and correct copy of which is attached hereto as Exhibit E to Exhibit 1) that 1st Technology's creditor actions to secure judgment using the Court Ordered Bodog.com and other related domain names left 1st Technology ". . . with nothing to show for all their efforts but a group of domains that is rapidly losing value . . . The domain is just the doorway. And if you move that doorway, customers will easily find and readily come to the new one. Shit, we can even change the name entirely and the customers will still come." This plan to move assets off-shore as soon as possible was also confirmed by Bodog's legal counsel. *See* affidavit of Troy Wallin, a true and correct copy of which is attached hereto as Exhibit F to Exhibit 1.

On September 18, 2007, according to Bodog and web reports (true and correct copies of which are attached hereto as Exhibit G to Exhibit 1), Bodog began redirecting their customers from the locked NewBodog.com domain in Washington State to a new domain name, BodogLife.com, registered to a registrar outside of the U.S., Gandi SAS of France. One his website, the CEO and owner of Bodog, Mr. Calvin Ayre, bragged that he had taken away any chance of 1st Technology gaining access to the assets of Bodog stating, ". . . BodogLife.com is our new permanent domain. BodogLife.com is not registered in the U.S. and is not subject to being claimed by a U.S. (court case) . . . In this move . . . 1st Technology have been defeated." *See* website, a true and correct copy of which is attached hereto as Exhibit H to Exhibit 1.

The report set forth in Exhibit B demonstrates that the bulk of the traffic into NewBodog.com is being quickly siphoned away to the new domain name registered outside of the Untied States, BodogLife.com. This is clearly a blatant attempt on Bodog's part to drain the

- 4 -

1  attached assets of any value and to transfer assets outside of the United States to prevent collection
2  of the Default Judgment or any other judgment rendered in this case. If Bodog is not enjoined from
3  this activity immediately, 1st Technology will suffer irreparable harm because it will become
4  impossible for it to collect on the Default Judgment or, should the Default Judgment be set aside,
5  to collect on any other judgment ultimately awarded in favor of 1st Technology against Bodog. *See*
6  Exhibit 1.

2.  **LEGAL ARGUMENT**

This Court possesses authority to enjoin the Bodog Entities from directing their customers and traffic to "BodogLife.com" or any other website besides "NewBodog.com", to require the Bodog Entities to email their customers to return to the NewBodog.com domain name, and to force the Bodog Entities to cease using the BodogLife.com site for their Bodog operations pending the outcome of their motion to set aside. The Court should also require the Bodog Entities to post $9.3 Million security to prevent them from further transferring and secreting their assets outside the United States.

Pursuant to NRS 33.010, "an injunction may be granted in the following cases:...(3) when it shall appear, during litigation, that the defendant is doing or threatens, or is about to do, or is

\\\

\\\

\\\

- 5 -

procuring or suffering to be done, **some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual**." NRS 33.010 (emphasis added).[1] The Bodog Entities' actions, specifically their transfer of their largest asset, web traffic, to a new foreign domain name, were intended to make 1st Technology's judgment ineffectual. The Court should enjoin the Bodog Entities' continuing use of this tactic and bar similar actions in the future.

In addition to its general power to enjoin the Bodog Entities, this Court is specifically empowered to reverse their past and future fraudulent transfers. Nevada law prohibits transfers intended to defraud creditors and permits defrauded creditors to secure injunctions against the debtor. Pursuant to NRS 112.180:

> 1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>     (a) With actual intent to hinder, delay or defraud any creditor of the debtor;
> . . .

\\\

\\\

---

[1] FRCP 69(a) ("Execution; In General"), provides in relevant part:

> [T]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Accordingly, Nevada's substantive law governs post-judgment proceedings against 1st Technology's judgment debtor, the Bodog Entities.

- 6 -

NRS 112.180(1)(a).[2] Here, the Bodog Entities transferred their most valuable asset – their web traffic – to hinder 1st Technology's ability to recover on its default judgment and to continue to defraud 1st Technology of its rightful profits as the owner of United States Patent 5,564,001.

Pursuant to NRS 112.210 ("Rights of creditor in action for relief against transfer or obligation"), the Court is empowered to enjoin the Bodog Entities' past and future fraudulent transfers. That statute holds as follows:

> 1. In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in NRS 112.220, may obtain:
>
> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (b) An attachment or garnishment against the asset transferred or other property of the transferee pursuant to NRS 31.010 to 31.460, inclusive; and
>
> (c) Subject to applicable principles of equity and in accordance with

---

[2] The fraudulent transfers statute defines what may be considered to determine whether the debtor's conduct was fraudulent. NRS 112.180(2) lists the following factors:
(a) The transfer or obligation was to an insider;
(b) The debtor retained possession or control of the property transferred after the transfer;
(c) The transfer or obligation was disclosed or concealed;
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(e) The transfer was of substantially all the debtor's assets;
(f) The debtor absconded;
(g) The debtor removed or concealed assets;
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

All of the foregoing factors are present. The Bodog Entities transferred their own web traffic to a new site after the Court entered its judgment against them. The Bodog Entities' only purpose doing so was to escape their obligations to 1st Technology. In fact, Bodog's owner has published statements to this effect, saying that" BodogLife.com is our new permanent domain. BodogLife.com is not registered in the U.S. and is not subject to being claimed by a U.S. (court case)." *See* Exhibit H.

applicable rules of civil procedure:

    (1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

    (2) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

    (3) Any other relief the circumstances may require.

  2. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

NRS 112.210 (emphasis added).[3] Accordingly, the Court should reverse the Bodog Entities' fraudulent transfer of its web traffic to BodogLife.com, force the Bodog Entities to stop directing their customers and traffic to "BodogLife.com" or any other website, require the Bodog Entities to email their customers to return to the NewBodog.com domain name, and force the Bodog Entitires to cease using the BodogLife.com site for their Bodog operations pending the outcome of their motion to set aside.

The Court should also require the Bodog Entities to post a bond. Pursuant to NRS 112.210(1)(c)(3), the Court may impose "any other relief the circumstances may require." The circumstances require that the Bodog Entities post a bond to prevent the Bodog Entities from further transferring and secreting their assets outside of the United States. *See* Exhibit 1. 1st Technology requests that the Court order the Bodog Entities to deposit 20% of the Default Judgment, or $9.3 million, with the Court Clerk or into a trust account the Court supervises. *Id*. These funds can be used as a source of sanctions if the Bodog Entities violate the Courts' order or alternatively to partially satisfy the Default Judgment. *Id*. The Bodog Entities have $7.3 million revenue per year, so depositing $9.3 million will have little financial impact on them. *Id*.

---

[3] 35 U.S.C. §283 provides the Court another ground to enjoin the Bodog Entities' conduct. Pursuant to that section "the several courts have jurisdiction under this title may grant injunction in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. §283.

- 8 -

## 3. CONCLUSION

For the foregoing reasons, 1st Technology respectfully requests that the Court enter the following:

(1) An Order enjoining the Bodog Entities, their agents, or agencies, persons or entities from directing their customers and traffic to "BodogLife.com" or any other website besides "NewBodog.com";

(2) An Order requiring the Bodog Entities to email their customers to return to the NewBodog.com domain name;

(3) An Order requiring the Bodog Entities to cease using the BodogLife.com site for their Bodog operations pending the outcome of their motion to set aside;

(4) An Order requiring the Bodog Entities to post a $9.3 million bond.

DATED this 20th day of September, 2007.

HUTCHISON & STEFFEN, LLC

_____
Mark A. Hutchison (4639)
L. Kristopher Rath (5749)
Hutchison & Steffen, LLC
Peccole Professional Park
10080 Alta Drive, Suite 200
Las Vegas, Nevada 89145

Attorneys for Plaintiff
1st TECHNOLOGY LLC

- 9 -

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 20th day of September, 2007, I caused the above and foregoing document entitled: **PLAINTIFF 1ST TECHNOLOGY LLC'S EMERGENCY MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS BODOG ENTERTAINMENT GROUP, S.A., BODOG.NET, AND BODOG.COM ON AN ORDER SHORTENING TIME, PURSUANT TO LR 6-1(a), ORAL ARGUMENT REQUESTED** to be served via electronically through ECF/PACER to the attorneys listed below:

**Charles McCrea, Esq.**
Lionel, Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
*Counsel for Defendant Bodog Entertainment Group, S.A.*

**James D. Nguyen, Esq.**
Foley & Lardner, LLP
2029 Century Park East, 35th Floor
Los Angeles, California 90067-3021
*Co-Counsel for Defendant Bodog Entertainment Group, S.A.*

**Andrew P. Gordon, Esq.**
McDonald Carano Wilson
2300 W Sahara Avenue
Suite 1000-10
Las Vegas, Nevada 89102
*Counsel for Defendant Rational Poker School Limited*

/s/ Denette Young
An employee of Hutchison & Steffen, LLC

- 10 -