**<u>DECLARATION OF SCOTT W. LEWIS, PH.D.</u>**

I, SCOTT W. LEWIS, Ph.D., do hereby declare:

1.      I am the CEO of 1ST Technology LLC, and sole inventor of U.S. Patent 5,564,001 (the '001 Patent), entitled "Method and system for interactively transmitting multimedia information over a network which requires a reduced bandwidth." This patent was issued on October 8, 1996. This is the patent involved in Case No. 2:06-cv-01110-RLH-GWF which was filed in the United States District Court for the District of Nevada by 1st Technology LLC against Bodog Entertainment Group, S.A., Bodog.com, and Bodog.net (hereinafter referred to as "Bodog"). Earlier this year the Court entered a Default Judgment against Bodog in the amount of $46.6 million dollars.

2.      My declaration explains why the Court should issue an Order for Injunctive Relief at this time to prevent Bodog from shifting its key assets outside of the United States to avoid collection on the Default Judgment against them. The injunction is also needed to prevent Bodog from transferring assets outside of the United States, in case its Motion to Set Aside Default is denied and 1st Technology ultimately prevails in this matter.

3.      I have the requisite background to present this analysis of Bodog's operations and domain name traffic alteration. This background includes Bachelors and Masters Degrees in Engineering from the Massachusetts Institute of Technology, a Doctorate in Digital Signal Processing from Oxford University as a Marshall Scholar, and an MBA from Harvard Business School. Additionally, I have founded and acted as CEO of multiple companies in Silicon Valley and as a Merger and Acquisition and Strategy Consultant for both the Boston Consulting Group and the L.E.K. Consulting Group.

4.      As indicated in my Affidavit in Support of 1st Technology's Application for Default Judgment (a true and correct copy of which is attached hereto as Exhibit A) with regard to damage analysis, Bodog's infringing activities are responsible for over $65 billion of cumulative transactions to date. These revenues were the basis for 1st Technology's $46.6 million dollar Judgment against Bodog. Bodog's infringing activities are generated from operation of their Bodog website that operates outside the United States via their U.S. registered domain name. The domain name

1

1  Bodog.com was linked to Bodog's website as of August 27, 2007 and was held and registered with
2  eNom Inc. of Bellevue, Washington.
3      5.      On August 21, 2007, 1ˢᵗ Technology received a Washington State Court Order turning
4  over the control of the domain name and traffic of Bodog.com - the domain name traffic being the
5  primary saleable asset to 1ˢᵗ Technology as creditor.
6      6.      To evade the intent of the Court's Order, on August 27, 2007, Bodog linked a new
7  domain name created on August 27ᵗʰ to Bodog's website. This new domain name was registered to
8  a third-party, Lyon Finance Ltd. of Malta, via a second Washington State registrar, dotRegistrar, with
9  the name NewBodog.com. The redirecting of Bodog's website via this new domain name in
10 combination with Bodog's directions to its customers to use the new site transferred all of the Bodog
11 traffic to "NewBodog.com" domain name (*See* Alexa report of "NewBodog.com" traffic, a true and
12 correct copy of which is attached hereto as Exhibit B). When 1ˢᵗ Technology discovered Bodog's
13 action in moving its traffic to the new site, 1ˢᵗ Technology moved for and was granted a Washington
14 State Court Order on September 5, 2007, barring Bodog or any third-party from transferring and/or
15 disposing of the NewBodog.com domain name. Bodog and their registrar subsequently received the
16 Court Order of September 12ᵗʰ to lock the domain name (*See* Order from Washington Court, a true
17 and correct copy of which is attached hereto as Exhibit C and letter to dotRegistrar, a true and correct
18 copy of which is attached hereto as Exhibit D).
19     7.      On September 15ᵗʰ, Bodog's CEO bragged on his website (*See* website text, a true and
20 correct copy of which is attached hereto as Exhibit E) that 1ˢᵗ Technology's creditor actions to secure
21 judgment using the Court Ordered Bodog.com and other related domain names left 1ˢᵗ Technology
22 ". . . with nothing to show for all their efforts but a group of domains that is rapidly losing value
23 . . . The domain is just the doorway. And if you move that doorway, customers will easily find and
24 readily come to the new one. Shit, we can even change the name entirely and the customers will still
25 come." This plan to move assets off-shore as soon as possible was also confirmed by Bodog's legal
26 counsel (*See* affidavit of Troy Wallin, a true and correct copy of which is attached hereto as Exhibit
27 F).
28

8.      On September 18, 2007, according to Bodog and web reports (true and correct copies of which are attached hereto as Exhibit G), Bodog began redirecting their customers from the locked NewBodog.com domain in Washington State to a new domain name, BodogLife.com, registered to a registrar outside of the U.S., Gandi SAS of France.  One his website, the CEO and owner of Bodog, Mr. Calvin Ayre, bragged that he had taken away any chance of 1st Technology gaining access to the assets of Bodog stating, ". . . BodogLife.com is our new permanent domain. BodogLife.com is not registered in the U.S. and is not subject to being claimed by a U.S. (court case) . . . In this move . . . 1st Technology have been defeated." (*See* website, a true and correct copy of which is attached hereto as Exhibit H).

9.      The report set forth in Exhibit B demonstrates that the bulk of the traffic into NewBodg.com is being quickly siphoned away to the new domain name registered outside of the Untied States, BodogLife.com. This is clearly a blatant attempt on Bodog's part to drain the attached assets of any value and to transfer assets outside of the United States to prevent collection of the Default Judgment or any other judgment rendered in this case.  If Bodog is not enjoined from this activity immediately, 1st Technology will suffer irreparable harm because it will become impossible for it to collect on the Default Judgment or, should the Default Judgment be set aside, to collect on any other judgment ultimately awarded in favor of 1st Technology against Bodog.  As a result, an Order is needed to enjoin Bodog from redirecting traffic to the new illegal gaming website.

10.     Such an Order can be accomplished in two steps which would not result in any harm to Bodog and would also prevent irreparable harm to 1st Technology.

11.     First, Bodog can be ordered to stop redirecting customers and traffic to BodogLife.com, including directing any U.S. third-party carrying such traffic to stop redirecting and return all direction setting to those that existed before the redirection.  This would include the Newdog.com DNS and redirect settings per dotRegistrar of Washington, and the DNS and redirect settings per NeuStar Inc. of Virginia (who operate the U.S. Bodog redirect and ultra DNS servers). Bodog would also have to be ordered to email customers of the return to the NewBodog.com domain name and to cease using the BodogLife.com site for their Bodog operations pending the outcome of

1    their Motion to Set Aside 1ˢᵗ Technology's Judgment, which is opposed by 1ˢᵗ Technology. This

2    would not harm Bodog and would preserve the U.S. traffic based asset value of NewBodog.com.

3        12.    Second, it is imperative that the Court issue an order to force Bodog to post security

4    to prevent them from further transferring and secreting their assets outside of the United States. To

5    further this, 1ˢᵗ Technology requests that the Court order Bodog to deposit 20% of the Default

6    Judgment, or $9.3 million dollars, with the Court Clerk or into a trust account supervised by the

7    Court. These funds can be used to satisfy the Default Judgment, or ultimate judgment in this lawsuit,

8    if necessary. These funds can also be used as a source of sanctions, in the event Bodog violates any

9    of this Court's Orders and continues to transfer assets outside of the United States to avoid payment

10   of any judgment in this action, including the Default Judgment. Bodog has $7.3 billion dollars of

11   revenue per year and depositing the $9.3 million dollars or 20% of the Judgment would have little

12   financial impact on Bodog.

13       13.    As already set forth in the papers before this Court, Bodog has a vast internet gaming

14   empire reaping millions and millions of dollars illegally from United States and Nevada residents

15   and through infringing 1ˢᵗ Technology LLC's '001 Patent. Furthermore, Bodog and its counsel have

16   already evinced a disdain for United States law and an intent to operate above and beyond the law

17   going into the foreseeable future.

18       14.    I declare under penalty of perjury under the law of the State of Nevada that the

19   foregoing is true and correct.

20       DATED this _20ᵗʰ_ day of September, 2007.

21

22

23                                   SCOTT W. LEWIS, Ph.D.

24

25

26

27

28

                                          4

# EXHIBIT A

**AFFIDAVIT OF DR. SCOTT LEWIS IN SUPPORT OF PLAINTIFF
1ST TECHNOLOGY, LLC'S APPLICATION FOR DEFAULT JUDGMENT**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF SANTA CLARA        )

I, SCOTT W. LEWIS, Ph.D., being first duly sworn, deposes and states as follows:

1.    I am the Chief Executive Officer of Plaintiff, 1ST TECHNOLOGY LLC, and am over the age of legal majority in the State of Nevada. I am competent and qualified to testify to the issues set forth in this affidavit.

2.    I am the sole inventor of U.S. Patent 5,564,001 (the '001 Patent) entitled, "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth", which was issued on October 8, 1996. The Court has entered a Default in the case of *1st Technology LLC v. Rational Enterprises, et. al* in favor of 1st Technology LLC and against the following Defendants: Bodog Entertainment Group, S.A.; Bodog.Net; and Bodog.Com (hereinafter referred to as the "Bodog Entities"). 1st Technology LLC has been damaged in the amount of $46,597,849, at the very least, due to the actions of the Bodog Entities. This affidavit will set forth all bases for this calculation of damages.

3.    As an initial matter, I am well qualified to perform this calculation of damages. My background includes a Bachelor's Degree and a Master's Degree in Engineering from the Massachusetts Institute of Technology, a Doctorate in Digital Signal Processing from Oxford University as a Marshall Scholar, and an MBA from Harvard Business School. Additionally, I have founded and acted as Chief Executive Officer of multiple companies in Silicon Valley and as a Merger and Acquisition and Strategy Consultant for both the Boston Consulting Group and the L.E.K. Consulting Group.

4.    I would like to point out that the factors used in this calculation of damages are each extremely conservative at each level of the calculation and each factor has been substantiated with evidence.

///

1

5.      The '001 Patent enables providers of online games to operate at a higher level of interactivity and higher quality than would ordinarily be possible without the '001 Patent techniques. The Bodog Entities have implemented, and continue to implement, the '001 Patent techniques by using software on their websites which is downloaded before use and periodically thereafter (typically at least once a year to incorporate software optimization updates). Therefore, 1st Technology LLC's damages from Bodog's unauthorized use of the '001 Patent are best determined through a royalty formula applied to each and every download of the infringing software which incorporates the '001 Patent techniques. This model can be used for royalty computations to be applied to the Bodog Entities in calculating damages due.

6.      The calculation must start with an existing licensing agreement at its base. There is already a licensing agreement in effect with Wagerworks, Inc. (now a subsidiary of International Gaming Technologies, Inc. - IGT) and MGM Mirage, Inc. (hereinafter referred to as the "IGT/MGM Agreement"). A true and correct copy of the IGT/MGM Agreement is attached to the Application for Default Judgment as Exhibit C. This Agreement requires payment of $1.00 per "New User" from users 1 through 100,000, $0.75 from users 100,001 through 200,000, and $0.50 for each New User beyond 200,000 users. In general, this is a very conservative agreement (and covered by a "Most Favored Nation" provision), since, for each New User, there will likely be multiple infringing software downloads per year. Additionally, the IGT/MGM Agreement uses a definition for New Users that spans all geographies (for simplicity in calculating the royalty), whereas 1st Technology LLC only demands damages from Defendant Bodog Entities for downloads to the United States based users. 66% of the Bodog Entities users are in the United States. *See* article from Alexa.com, a true and correct copy of which is attached hereto as Exhibit D. Thus, the royalty rates indicated in the IGT/MGM Agreement should be raised by one-third to fairly compare with the Bodog Entities United States user download data utilized in this damage calculations. However, for simplicity, 1st Technology LLC is only requesting the same royalty rates as those used in the IGT/MGM Agreement (on a New User basis).

///

2

7.     To calculate damages in this case to 1st Technology from the Bodog Entities infringements, one simply needs to multiply the royalty rates as set forth in the IGT/MGM Agreement by the number of user downloads.

8.     According to Forbes interview with the Founder of the Bodog Entities, Calvin Ayre, and Forbes research as part of their World's Billionaire Report, the Bodog Entities had a reported 16 million customers worldwide in 2005 and 18 million customers worldwide in 2006 (an average of 1.5 million per month). *See* article obtained from http://www.forbes.com/free_forbes/2006/0327/112.htnl, a true and correct copy of which is attached hereto as Exhibit E. Alexa.com, a leading internet traffic recordation site, in early 2007 indicated that 66% of Bodog.Com's worldwide traffic was from United States users. *See* Exhibit D. If one further incorporates an extremely conservative projection for Bodog's infringing business to remain at 11.88 million United States users (zero future growth, 66% x 18M, and downloads at only one download per user) for the remaining life of the '001 Patent (through October 4, 2013), this is a conservative estimate, given that the online gaming industry is experiencing rapid growth projections.

9.     Given these parameters, I have set forth the calculations for past damages, totaling $10,412,780 in Table 1, attached to my affidavit. This includes damages starting from the July 22, 2005 infringement notice date, up through March 14, 2007. Table 1B, attached to this affidavit, is a spreadsheet calculating future damages using the conservative new user royalty rates of the IGT/MGM Agreement. The present values of royalties for future damages use a conservative 5% discount rate when, in fact, the average current inflation rate is in the 2.5 to 3.5% range. This results in an extremely conservative future damage total of $37,044,517. Thus, this results in an extremely conservative total damage figure of $46,597,849.

10.     I must emphasize that these totals of damages are very small compared with the enormous level of monetary infringement and gain by the Defendant Bodog Entities, as calculated in Table 2, attached to this affidavit. For the period of past and future infringement damages (July 22, 2005 through October 4, 2013), the cumulative transaction inflows for the Bodog Entities,

3

1   assuming no growth and projected very conservatively, totals $65 billion dollars, with an after tax

2   cumulative profit of $486 million dollars. The calculated total damages represents only 9.6% of

3   those monetary gains. Lastly, the approximately $47 million dollars in total damages that 1st

4   Technology LLC requests represents a mere 4.7% of Calvin Ayre's current $1 billion dollar net

5   worth, as calculated by Forbes. This wealth was derived in large part through infringement of 1st

6   Technology LLC's '001 Patent and my own innovation as its sole inventor.

7        Further your affiant sayeth naught.

8        DATED this 20th day of March, 2007.

9

10

11                        SCOTT W. LEWIS, Ph.D.

12

13   Sworn to and subscribed before

14   me this 20th day of March, 2007.

15

16 

17   Notary Public

18

19     BLANCHE S. BERGER
    COMM. #1426711
    NOTARY PUBLIC – CALIFORNIA
20     SAN FRANCISCO COUNTY
    My Comm. Expires July 21, 2007

21

22

23

24

25

26

27

28

# TABLES 1 TO 2

TABLE 1
Bodog Damages

**TABLE 1A**
Past: 7/22/05 to 3/14/07 (1.6 yrs) (19.6 months)

| Unique Customers/Downloads | | Millions World | % U.S. (Alexa.com) | Total U.S. Infringing Millions | Royalty Due $M ($1.00/download 1-100,000) | Total Royalty Due $M ($0.50/download, 100,001-200,000) | ($0.75/download, 100,001-200,000) | ($0.50/download, 200,001+) | |
|---|---|---|---|---|---|---|---|---|---|
| 2005 (Forbes) | | 16.00 | 66% | 4.63 | $0.1 | | | $2.2 | $2.4 |
| 2006 (Forbes) | | 18.00 | 66% | 11.88 | | | | $5.9 | $5.9 |
| 2007 (assume no growth) (Alexa.com internetworldstats) | | 18.00 | 66% | 2.44 | | | | $1.2 | $1.2 |
| | TOTAL | | | 18.96 | | | Total $M | | $9.6 |
| | | | | | | | Total $ | | $9,553,332 |

**TABLE 1B**
Future: 3/15/07 to 10/04/13 – Term of Patent 5,564,001

| Unique Customers/Downloads | Millions World | % U.S. (Alexa.com) | Total U.S. | % of Yr infringing (from 7/22/05 Notice Date) | Total U.S. | % of Yr infringing (from 7/22/05 NoNse Date) | Total U.S. Infringing Millions | Total Royalty Due $M ($0.50/download) | Present Value $M (@5% Discount Rate/Yr) |
|---|---|---|---|---|---|---|---|---|---|
| 2007 (Alexa, internetworld) | 18.00 | 66% | 10.56 | 43.9% | 11.88 | 79.4% | 9.43 | $4.7 | $8.00 |
| 2008 | 18.00 | 66% | 11.88 | 100.0% | 11.88 | 100.0% | 11.88 | $5.9 | $5.66 |
| 2009 | 18.00 | 66% | 11.88 | 100.0% | 11.88 | 100.0% | 11.88 | $5.9 | $5.39 |
| 2010 | 18.00 | 66% | 11.88 | 100.0% | 11.88 | 100.0% | 11.88 | $5.9 | $5.13 |
| 2011 | 18.00 | 66% | 11.88 | 100.0% | 11.88 | 100.0% | 11.88 | $5.9 | $4.89 |
| 2012 | 18.00 | 66% | 11.88 | 100.0% | 11.88 | 100.0% | 11.88 | $5.9 | $4.65 |
| 2013 (1/1/13-10/4/13) | 18.00 | 66% | 11.88 | 75.07% | 11.88 | 75.07% | 8.92 | $4.5 | $3.33 |
| | | | | | | TOTAL | 77.75 | Total $M | $37.04 |
| | | | | | | | | Total $ | $37,044,517 |

| | | | | | Past & Future Total $M | |
|---|---|---|---|---|---|---|
| | | | | | $46.60 | |
| | | | | | Total $ | $46,597,849 |

TABLE 2
Percent of Bodog Value Comparisons

| | | As a % |
|---|---|---|
| Past & Future Damages ($M): | $47 | 100.0% |
| Bodog Cum. Transaction Revenue (2005 $7.2B rev. Forbes x 8.9yrs) | $54,970 | 0.1% |
| Bodog Cum. After Tax Profit (2005 $54.6M Forbes x 8.9yrs) | $486 | 9.6% |
| Bodog Est. 2006 Valuation (Forbes Richest Billionaires) | $1,000 | 4.7% |

# EXHIBIT B

# EXHIBIT C

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| 1st Technology LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>BODOG ENTERTAINMENT GROUP S.A.,<br>BODOG.NET, AND BODOG.COM,<br><br>        Defendants. | Case No.  07-2-25305-0 SEA<br><br>~~[PROPOSED]~~ ORDER<br>REGARDING CROSS MOTIONS<br>REGARDING WRIT OF<br>EXECUTION |

WHEREAS, the Court has considered the cross-motions of the parties

regarding Writs of Execution (and declarations and supporting documents

thereto).   Based on the arguments of counsel and the submissions the

Court rules as follows:

1.      1st Technology LLC shall not transfer or dispose of the domain names

(transferred to it pursuant to the Court's August 21, 2007 Order) pending

resolution of Bodog's Motion to Set Aside Default (currently pending in the

United States District Court for the District in Nevada).  These names shall

remain in 1st Technology's name, but shall be locked at the registrar

~~[PROPOSED]~~ ORDER RE CROSS-MOTIONS
REGARDING WRITS OF EXECUTION / PAGE - 1

BALASUBRAMANI LAW
8426 40ᵀᴴ AVE SW
SEATTLE, WASHINGTON 98136
telephone (206) 529-4827
fax (206) 260-3966

1    ENOM, INCORPORATED until further order of this Court or an order from the

2    United States District Court for the District of Nevada.

3

4    2.    Any domain name registered to the defendant via a domain name

5    registrar subject to the personal jurisdiction of this Court, including DSTR

6    Acquisition PA I, LLC, DOTREGISTRAR, LLC, and ENOM, INCORORATED, shall

7    not be transferred or disposed of pending resolution of Bodog's Motion to

8    Set Aside Default (currently pending in the United States District Court for

9

10   the District in Nevada).  These domain names (including newbodog.com,

11   newbodog.net, newbodogentertainment.com, newbodogmusic.com,

12   newbodogtv.com, newbodogbattle.com, newbodogfight.com,

13

14   bodogfantasysports.net, and newcalvinayrefoundation.com) shall remain

15   in the current registrant's name, but shall be locked at the applicable

16   registrar until further order of this Court or an order from the United States

17

18   District Court for the District of Nevada.

19

20   3.    Both parties shall submit briefs (on September 19, 2007, with

21   responses on September 21, 2007) about whether it this Court has

22   jurisdiction, and whether it is in violation of the First Amendment to the

23   United States Constitution, to order that:

24

25         Bodog shall not (and shall not cause any third party to) redirect
26         traffic from web sites propagated via the domain names referenced

27

BALASUBRAMANI LAW
8426 40TH AVE SW
SEATTLE, WASHINGTON 98136
telephone (206) 529-4827
fax (206) 260-3966

1   in this order to new or other domain names pending resolution of the
2   Nevada Motion.

3   4.      ENOM, INCORPORATED, DSTR Acquisition PA I, LLC, AND

4   DOTREGISTRAR, LLC are Ordered to comply with any applicable terms

5   *5. Plaintiff does not have the right to use*

6   herein. *any of the defendants' trademarks without* ⟨one⟩

    *Further Order of this Court.*

7   DATED THIS 12th DAY OF SEPTEMBER, 2007.

8

9                                   _____
                                    HON J. ERLICK
10

11

12

13  _____
    Venkat Balasubramani, counsel for Plaintiff
14

15

16  _____
    Derek A. Newman, counsel for Defendant
17

18

19

20

21

22

23

24

25

26

27

[PROPOSED] ORDER RE CROSS-MOTIONS
REGARDING WRITS OF EXECUTION / PAGE - 3

# EXHIBIT D

*Sarah Akhtar / eNom, Incorporated*

<u>**SENT VIA EMAIL AND U.S. MAIL**</u>

Dstr Acquisition PA 1, LLC (Clinton Page)
Dotregistrar, LLC (Brian Unruh)
8100 NE Parkway Dr_#300
Vancouver, Wa 98622

<u>**Re: 1ˢᵗ Technology, LLC v. Bodog Entertainment Group S.A., Bodog.net, and Bodog.com / King County Sup. Ct. No. 07-2-25305-0 SEA**</u>

Messrs. Page and Unruh,

Please find attached an Order signed by Judge Erlick of the King County Superior Court regarding (1) any domain names registered to Bodog Entertainment Group S.A. and (2) the following domain names: newbodog.com, net newbodogentertainment.com, newbodogmusic.com, newbodogtv.com, newbodogbattle.com, newbodogfight.com, bodogfantasysports.net, and newcalvinayrefoundation.com (together, the "Domain Names").

The Order requires the Domain Names to be locked pending further order of the Court

Please confirm that Dstr Acquisition PA 1, LLC and Dotregistrar, LLC will be complying with the terms of the Order, as set forth herein. Please call or email if you have any questions about the foregoing. Thanks for your assistance in this matter.

Sincerely,

**BALASUBRAMANI LAW**

Venkat Balasubramani

# EXHIBIT E

posted on 15 Sep 2007 by Calvin Ayre.

http://www.newcalvinayre.com/

They now find themselves dead in the water in the U.S. court system with nothing to show for all their efforts but a group of domains that is rapidly losing value. The thing is...these guys got control of the sites and shut them off (d'oh! earth to Homer!), but you need to have those babies lite up for them to have any value.

...

the bumbling bozo thieves at 1st Tech ("led" by Scott Lewis) got it in their clown-headed skulls that somehow a company's domain and brand are the same thing. (Dorky thieving dudes invariably find real-world concepts confusing.)

Bodog is me and everyone else that works on this project. The domain is just the doorway. And if you move that doorway, customers will easily find and readily come to the new one.

Shit, we can even change the name entirely and it will still carry the same values...and so the customers will still come.

# EXHIBIT F

## AFFIDAVIT OF TROY A. WALLIN

STATE OF ARIZONA    )
                     ) ss.
COUNTY OF MARICOPA  )

I, TROY A. WALLIN, being first duly sworn, depose and state as follows:

1.      I am an attorney licensed to practice law in the States of Nevada and Arizona. I am Partner with the firm of Hutchison Steffen Wallin, and am over the age of legal majority.

2.      On September 11, 2007, I spoke with Mr. James Nguyen, an attorney representing the Bodog Entities. At that time, Mr. Nguyen informed me that Bodog Entities had recently entered into a strategic alliance and/or joint venture with the Mohawk Indians in Canada, that an announcement had already been made publicly to that effect and that Bodog Entities intended to use their sovereign immunity as a shield to prevent Plaintiff 1st Technology LLC from pursuing their claims in the instant litigation.

3.      Mr. Nguyen also informed me that Bodog had already shifted its business to the new Bodog domain names, was happy with the results, and had already been working with the top search engines to "optimize" their listings with the new domain names to again be at the top of all related search results.

4.      In the same discussion, I informed Mr. Nguyen of 1st Technology LLC's intention to fully pursue Bodog's assets to satisfy its claims in the event that the Nevada Judgment was upheld. To this, Mr. Nguyen replied that this would be impossible since in such an event Bodog believed it had already left U.S. jurisdiction by strategically aligning itself and/or joint venturing with the Mohawk Indians in Canada, thereby avoiding any possibility of collection.

5      As such, it appears the Bodog Entities are again attempting to hide assets and put them beyond the reach of United States Courts so that they can equate impunity and evade United States laws and litigation.

/ / /

/ / /

/ / /

1

Case 2:06-cv-01110-RLH-GWF    Document 50-7    Filed 09/18/2007    Page 3 of 7

1   Further your affiant sayeth naught.

2   DATED this 12th day of September, 2007.

3

4                                        _____

5                                        TROY A. WALLIN

6

7   Sworn to and subscribed before

    me this 12th day of September, 2007.

8

9

10  Notary Public

11

12

13  
    OFFICIAL SEAL
    STEPHANIE SAWYER
    NOTARY PUBLIC - State of Arizona
    MARICOPA COUNTY
    My Comm. Expires May 12, 2011

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

# EXHIBIT G

**bodoglife.com**
Whois Server Version 2.0

Domain names in the .com and .net domains can now be registered
with many different competing registrars. Go to http://www.internic.net
for detailed information.

    Domain Name: BODOGLIFE.COM
    Registrar: GANDI SAS
    Whois Server: whois.gandi.net
    Referral URL: http://www.gandi.net
    Name Server: PDNS1.ULTRADNS.NET
    Name Server: PDNS2.ULTRADNS.NET
    Name Server: PDNS3.ULTRADNS.ORG
    Name Server: PDNS4.ULTRADNS.ORG
    Name Server: PDNS5.ULTRADNS.INFO
    Name Server: PDNS6.ULTRADNS.CO.UK
    Status: clientTransferProhibited
    Updated Date: 06-sep-2007
    Creation Date: 06-sep-2007
    Expiration Date: 06-sep-2008

    >>> Last update of whois database: Wed, 19 Sep 2007 22:43:20 UTC <<<

# EXHIBIT H

posted on 18 Sep 2007 by Calvin Ayre.

http://www.bodoglife.com/about/why-bodoglife-com.jsp

It's all part of the **bodoglife.com**. bodoglife.com is our new permanent domain. bodoglife.com is not registered in the U.S. and is not subject to being claimed by a U.S.-based method patent dispute (that we don't think even applies to a system that is outside the U.S. even if the patent is applicable to our proprietary multimedia distribution). In this move the Patent Trolls over at 1st Technology have been defeated.

**What does that mean to you?**

bodoglife.com is still the most trusted place on the planet to get your fun fix, whether it's poker, music, mixed martial arts, casino or sports betting.

**What about the Patent Trolls?**

The Patent Trolls are playing a game that has already been won. By us. This is just a domain dispute case wrapped in a patent dispute. Plain and simple. We plan to continue to finance the company [they have taken to court] even though it's not part of our group as we do want to maintain control of as many domains as we can. Also…with bodoglife.com we'll be able to do more SEO work (and other improvements!) that we could not do under the previous structure…our rankings are only going to get better in the long run.

In the meantime, please know that there is going to be no further significance of this dispute to you—our loyal customers—other than if you enjoy reading the funny posts on the subject then I will continue to publish in my blog as the story unfolds over the coming years. (**First up is the Scott Lewis Patent Troll Dance contest videos! Stay tuned to my blog to see who wins the coveted trophy and the US $1,000!!)

The domain war with 1st Tech and the Patent Trolls is over and Bodog won. You had to know we would. Bodog does not negotiate with terrorists of any kind…including Patent Trolls.

Visit Bodog's permanent new home at bodoglife.com!