Charles McCrea (NV State Bar No. 104)
**LIONEL SAWYER & COLLINS**
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Tel 702.383.8981
Fax 702.383.8845
cmccrea@lionelsawyer.com

James D. Nguyen (CA State Bar No. 179370)
Victor de Gyarfas (CA State Bar No. 171950)
Uleses C. Henderson, Jr. (CA State Bar No. 225246)
*Pro Hac Vice Applications To Be Submitted*
**FOLEY & LARDNER LLP**
2029 Century Park East, 35th Floor
Los Angeles, California 90067-3021
Tel:  310-277-2223; Fax: 310-557-8475
jnguyen@foley.com
uhenderson@foley.com

Attorneys for Specially Appearing
Defendants
**BODOG ENTERTAINMENT GROUP
S.A.,** and erroneously named Specially
Appearing Defendants **BODOG.NET** and
**BODOG.COM**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 1ST  TECHNOLOGY LLC**,**<br><br>               Plaintiff,<br><br>        vs.<br><br>RATIONAL ENTERPRISES LTDA.,<br>RATIONAL POKER SCHOOL LIMITED,<br>BODOG ENTERTAINMENT GROUP S.A.,<br>BODOG.NET, BODOG.COM, AND<br>FUTUREBET SYSTEMS LTD.**,**<br><br>               Defendants. | Case No:  2:06-cv-1110-RLH-GWF<br><br>**SPECIALLY APPEARING DEFENDANTS<br>BODOG ENTERTAINMENT GROUP S.A.<br>AND ERRONEOUSLY NAMED<br>SPECIALLY APPEARING DEFENDANTS<br>BODOG.NET AND BODOG.COM<br>OPPOSITION TO PLAINTIFF 1ST<br>TECHNOLOGY LLC'S "EMERGENCY<br>MOTION FOR PERMANENT<br>INJUNCTION"**<br><br><br>**Date:**  October 11, 2007<br>**Time:**  9:00 a.m.<br>**Courtroom:** 6C |

LACA_876051.3

Dockets.Justia.com

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................2

    A.   The Parties ......................................................................................................2

        1.   Plaintiff Is Simply A Licensing Entity And Has Repeatedly Licensed Its Patent ........................................................................2

        2.   Bodog Entertainment Does Not Operate The Relevant Websites .........................................................................................3

    B.   Proceedings In This Case ...............................................................................3

    C.   Plaintiff's Attempt To Enforce Its Default Judgment In Washington State Precludes This Court Ordering the Relief Requested Here as the Relief Requested is Identical to that Requested in Washington ..............................................................................4

        1.   Plaintiff's Motion for Writ of Execution......................................4

        2.   Defendants' Motion for Relief from Enforcement and Plaintiff's Motion for Writ of Execution re Replacement (Additional) Domain Names ...........................................................5

        3.   The Washington State Court's Order & the Parties' Additional Briefing.........................................................................6

        4.   Plaintiff's Request In This Emergency Motion For Permanent Injunction Is Identical To The Request Currently Pending Before The Superior Court In The State Of Washington ....................................................................................8

        5.   The Nature Of Domain Names Doomed Plaintiff's Attempt To Satisfy A Judgment By Seizing Bodog Domain Names..........8

    D.   Plaintiff's Patent Contains Claims That Cannot Be Infringed By Defendants ....................................................................................................10

III. PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION SHOULD BE DENIED...................................................................................11

    A.   As A Threshold Issue, The Court Should Not Hear Plaintiff's Motion Until After Deciding Defendants' Motion To Set Aside The Default Judgment .................................................................................11

    B.   The Court Should Deny Plaintiff's Motion Pending A Decision By The Washington State Court ................................................................11

    C.   This Court Has Neither In Personam Jurisdiction Over Defendant, Nor In Rem Jurisdiction Over The Domain Names Targeted In Plaintiff's Motion .........................................................................................13

LACA_876051.3

**TABLE OF CONTENTS (cont'd)**

Page

1.   Personal Jurisdiction Is Lacking Because Defendants Were Not Properly Served And Defendants Have No Contacts With The State Of Nevada ........................................................ 13

    a.   Defendant Was Never Served With Process In This Action Sufficient To Confer Personal Jurisdiction ........... 14

    b.   This Court Lacks General In Personam Jurisdiction over Defendant .................................................. 14

    c.   This Court Lacks Specific In Personam Jurisdiction Over Defendant  And Defendants Have Not Purposefully Availed Themselves Of The Benefits And Protections Of Nevada Law .......................... 15

2.   This Court Has No In Rem Jurisdiction Over The Domain Names Targeted In Plaintiff's Motion ........................ 18

D.   The Motion Should Be Denied As Futile Because No Defendant Can Provide The Relief Requested .......................................... 19

E.   The Proposed Order Would Violate the First Amendment to the United States Constitution and Article I, § 5 of the Washington Constitution. ...................................................... 20

1.   This Court Does not Have a Substantial Interest in Regulating the Online *Location* of Legal Internet Activities of Non-Washington Residents. ..................................... 21

2.   The Proposed Redirection Ban Does not Advance the Narrow Interests That this Court Has. ........................... 22

3.   The Proposed Order Burdens Far More Speech Than is Necessary to Accomplish its Narrow Goal. ...................... 23

F.   Plaintiff Fails To Make The Required Showing Warranting Entry Of A Permanent Injunction ................................................ 23

1.   Plaintiff Fails To Inform The Court Of The Relevant Law Concerning Injunctions In Patent Cases .......................... 24

2.   Plaintiff's Requested Injunction Bears No Relation To Any Right Secured By Patent And Should Be Denied .................. 24

3.   Plaintiff's Attempt To Enforce Its Judgment Through An Injunction Rather Than A Writ Of Execution Is Improper .......... 25

**TABLE OF CONTENTS (cont'd)**

4.   Plaintiff Failed To Make Any Competent Showing
     Concerning The Relevant Factors To Be Analyzed In
     Connection With An Injunction ......................................................25

     a.   Plaintiff's Repeated Licensing Of Its Patent
          Establishes That It Is Not Suffering Any Irreparable
          Injury Warranting A Permanent Injunction And
          Money Damages Are Adequate .........................................25

     b.   Remedies At Law Are Sufficient To Compensate For
          Any Alleged Injury And Money Damages Are All
          Plaintiff Sought In Its Default Judgment ..........................26

     c.   Plaintiff Is Not Suffering Any Hardship, But
          Defendants Would Suffer A Hardship In That It
          Could Not Comply With The Proposed Injunction ..........26

     d.   The Public Interest Would Not Be Served By An
          Injunction...........................................................................27

G.   Plaintiff Provides No Pertinent Authority For Its Demand For
     Posting Of Security ..........................................................................27

IV.  CONCLUSION ...............................................................................28

LACA_876051.3

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*44 Liquormart, Inc. v. Rhode Island,*
   517 U.S. 484 (1996)...................................................................20

*Amba Mktg. Sys. Inc. v. Jobar Int'l Inc.,*
   551 F.2d 784 (9th Cir. 1977) ....................................................15

*America Online, Inc. v. Aol.org,*
   259 F. Supp. 2d 449 (E.D. Va. 2003) ......................................16

*American Future Sys., Inc. v. Pennsylvania State Univ.,*
   688 F.2d 907 (3d Cir.)................................................................20

*Amoco Prod. Co. v. Village of Gambell,*
   480 U.S. 531 (1987)...................................................................11

*BMC Resources v. Paymentech, L.P.,*
   Case No. 2006-1503 (Fed. Cir. Sep. 20, 2007) Slip Op. (Ex. 24) ...........................10

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ...........................................................14, 16

*Calder v. Jones,*
   465 U.S. 783 (1984)...................................................................18

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.,*
   447 U.S. 557 (1980)............................................................ 20-23

*Confederated Salish v. Simonich,*
   29 F.3d 1398 (9th Cir. 1994) ....................................................12

*Digital Control, Inc. v. Boretronics, Inc.,*
   161 F. Supp. 2d 1183 (W.D. Wash. 2001) ..............................17

*Dole Food Co., Inc. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) ..................................................15

*Dorer v. Arel,*
   60 F. Supp. 2d 558 (E.D. Va. 1999) .....................................9, 19

*eBay v. MercExchange,*
   126 S. Ct. 1837 (2006)......................................................... 24-25

*Flory v. U.S.,*
   79 F.3d 24 (5th Cir. 1996) ........................................................14

iv

### TABLE OF AUTHORITIES

**Page**

*Globalsantafe Corp. v. Globalsantafe.com*,
 250 F. Supp. 2d 610 (E.D. Va. 2003) ....................................................16

*Hanson v. Denckla*,
 357 U.S. 235 (1958)...............................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984)...............................................................................15

*Hilao v. Marcos*,
 95 F.3d 848 (9th Cir. 1996) ...................................................................25

*Jones v. Watts*,
 142 F.2d 575 (5th Cir. 1944) ..................................................................14

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
 2007 U.S. Dist. LEXIS 60708 (D. Nev. 2007) .....................................11

*Lewis v. Lewis*,
 695 F. Supp. 1089 (D. Nev. 1988) .........................................................13

*Mason v. Genisco Tech. Corp.*,
 960 F.2d 849 (9th Cir. 1992) ..................................................................11

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)...............................................................................14

*Nature's First, Inc. v. Nature's First Law, Inc.*,
 436 F. Supp. 2d 368 (D. Conn. 2006) ...................................................14

*Nintendo of Am. Inc. v. Lewis Galoob Toys, Inc.*,
 16 F.3d 1032 (9th Cir. 1994) ..................................................................27

*Organization for a Better Austin v. Keefe*,
 402 U.S. 415 (1971)...............................................................................20

*Panavision Int'l, L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ................................................................18

*Pena v. Seguros La Comercial, S.A.*,
 770 F.2d 811 (9th Cir. 1985) ..................................................................11

*Pennzoil Co. v. Texaco, Inc.*,
 481 U.S. 1 (1987)...................................................................................12

*Pittsburgh Press v. Pittsburgh Comm'n on Human Relations*,
 413 U.S. 376 (1973)...............................................................................20

# TABLE OF AUTHORITIES

**Page**

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ................................................................18

*Shuffler v. Heritage Bank*,
  720 F.2d 1141 (9th Cir. 1983) ...............................................27

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001).............................................10

*Travelers Health Assn. v. Virginia*,
  339 U.S. 643 (1950).................................................................16

*Veeck v. Commodity Enters., Inc.*,
  487 F.2d 423 (9th Cir. 1973) .................................................11

*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976).................................................................21

*Voda v. Cordis Corp.*,
  2006 WL 2570614 (W.D. Okla.) ............................................26

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).................................................................16

*Younger v. Harris*,
  401 U.S. 37 (1971)...................................................................12

*z4 Techs., Inc. v. Microsoft Corp.*,
  434 F. Supp. 2d 437 (E.D. Tex. 2006) ............................. 25-27

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997) .......................................17

*Zuffa, LLC v. Showtime Networks, Inc.*,
  2007 U.S. Dist. LEXIS 60711 (D. Nev. 2007) ..................15, 17


**STATE CASES**

*Freeman v. District Court*,
  1 P.3d 963 (Nev. 2000)...........................................................15

*Lloyd v. Alaska Worldwide, Inc.*,
  550 S.W. 2d 343 (Tex. Civ. App. 1977) ................................20

# TABLE OF AUTHORITIES

**Page**

*Network Solutions, Inc. v. Umbro Int'l, Inc.*,
 529 S.E.2d 80 (Va. 2000) ................................................................22

*Paice LLC v. Toyota Motor Corp.*,
 2006 WL 2385139 ................................................................26

*Price and Sons v. District Court*,
 831 P.2d 600 (Nev. 1992)................................................................15

*Trump v. District Court*,
 857 P.2d 740 (Nev. 1993) ................................................................ 14-15

*Vaile v. District Court*,
 44 P.3d 506 (Nev. 2002) ................................................................13


**FEDERAL STATUTES**

15 U.S.C. § 1051, <u>et seq</u>.................................................................23

15 U.S.C. § 1125................................................................23

35 U.S.C. § 283................................................................24

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2)(C)(i)-(ii)........................18


**STATE STATUTES**

NRS § 14.065................................................................15


**RULES**

Fed. R. Civ. P. 69(a) ................................................................25

Federal Rule of Civil Procedure 55(c) and 60(b)................................................................11

Rule 69................................................................25

# TABLE OF AUTHORITIES

**Page**

CONSTITUTIONAL PROVISIONS

Article I, § 5 of the Washington Constitution ................................................................20

clause of the United States Constitution.  (Ex. 21) ..........................................................7

First Amendment ..................................................................................................... Passim

TREATISES

13 Moore's Federal Practice ............................................................................................24

NON-PERIODICAL PUBLICATIONS

William Blackstone, Commentaries on the Laws of England, bk. IV, ch. XI, 151-52
    (London, 1765-69) .....................................................................................................20

OTHER AUTHORITIES

U.S. Patent No. 5,564,001 ...........................................................................................2, 10

LACA_876051.3

I.    **INTRODUCTION**

Specially appearing Defendants Bodog Entertainment Group S.A.,[1] Bodog.net, and Bodog.com, (collectively "Defendants")[2] challenge jurisdiction and oppose Plaintiff's "emergency" motion for a permanent injunction.  Plaintiff's conduct in this litigation establishes it is attempting to turn a patent that has valueless claims that are virtually impossible to infringe into a gold mine by ambushing defendants with an improperly served lawsuit, misleading the Court about numerous issues, and seeking an improper form of relief.

Plaintiff's motion should be denied because: (1) Plaintiff has misled this Court about prior proceedings in the Washington court; (2) its motion is futile; and (3) Plaintiff has not even attempted to meet the standard for issuance of a permanent injunction in a patent case.

• Plaintiff attempts to mislead the Court in several ways.

- Plaintiff misconstrues the order it obtained in the Washington state case.  The Washington Order never gave Plaintiff "control of the … traffic of Bodog.com."

- Further, Plaintiff failed to inform the Court that the Washington Court is already considering the same issues that Plaintiff raises with this Court, and Plaintiff raised those issues with the Washington court before filing its motion with this Court.  This Court should defer consideration of Plaintiff's motion until the Washington Court decides the issues.

• Plaintiff's motion is futile.

- Defendants have already moved to set aside the default judgment and there is no point to considering this motion until the pending motion to set aside the default judgment is decided.  If the default judgment is set aside, there will be no judgment upon which a permanent injunction could issue.

- Plaintiff's motion is also futile because Bodog Entertainment Group, S.A. does not operate the relevant websites and could not comply with Plaintiff's proposed order.

- Further, the Court does not have jurisdiction over Defendants and any order would be

---

[1] Referred to herein as Bodog Entertainment or Bodog Entertainment Group, S.A.

[2] Improperly named Bodog.com and Bodog.net are not entities.  They are merely domain names and the Court has no in rem jurisdiction over them because they are not registered in Nevada.

ineffectual and a violation of First Amendment rights.

- Additionally, Plaintiff's proposed order would not provide it any value because even if traffic were not redirected from NewBodog.com to another Internet address, there would be no reason for customers to go to the NewBodog.com Internet address and NewBodog.com would have virtually no value.

• Plaintiff has not attempted to make the showing required for issuance of an injunction and did not even cite the appropriate standard.

- Under some circumstances an injunction may sometimes issue in patent cases to prevent patent infringement. Plaintiff, however, does not seek to prevent patent infringement.  Instead, Plaintiff wants the activities it alleges constitute patent infringement to continue.

- Additionally, Plaintiff failed to make any showing on any of the factors a court considers when deciding whether to issue an injunction, i.e., irreparable injury, inadequacy of remedies available at law, the balance of hardships, and the public interest.  Because all of these factors weigh against issuing an injunction, the motion for an injunction should be denied.

## II.   **FACTUAL BACKGROUND**

### A.    **The Parties**

#### 1.    **Plaintiff Is Simply A Licensing Entity And Has Repeatedly Licensed Its Patent**

1st Technology sued the defendants in this case for infringement of U.S. Patent No. 5,564,001 ("'001 patent") (Complaint, Ex. 1).  1st Technology is a frequent litigant in the District of Nevada, and has sued various companies on the '001 patent in at least five other litigations since 2004.  (Exs. 3 - 7).[3]

As the principal of 1st Technology, Scott Lewis admits in his declaration to licensing the '001 patent (¶ 6 of Ex. A to  Ex. 1 to Plaintiff's moving papers).  An Internet search reveals that 1st Technology appears to have licensed other companies as well. Exs. 8-10.  Plaintiff has not provided any evidence that it engages

---

[3] The Niro, Scavone, Haller & Niro firm represented 1st Technology in at least two D. Nev. lawsuits since 2004 (exs. 3, 4, 6), and it appears that the Niro Scavone firm attempted to represent 1st Technology in yet another D. Nev. lawsuit, but the petition for permission to practice pro hac vice was denied. (Ex. 5). The first named partner in the Niro Scavone firm is the self proclaimed first "patent troll," i.e., an entity that provides no products to consumers and whose only "service" is suing on and licensing patents.  (Ex. 8).

2

in any business other than suing on and licensing its patents.  Plaintiff does not appear to provide any online games or entertainment services.

### 2.    Bodog Entertainment Does Not Operate The Relevant Websites

Bodog Entertainment does not itself provide online entertainment services.  It merely provided technical services, including domain name management, for various entities, including but not limited to entities that use the BODOG name and variations thereof to provide various online entertainment services.  Further, Bodog Entertainment does not itself operate any websites.

### B.    Proceedings In This Case

As explained in more detail in Defendants' motion to set aside the default judgment, on September 7, 2006, Plaintiff filed the instant action against the Defendants in the United States District Court for the District of Nevada, alleging infringement of an internet-related patent.  Plaintiff, however, failed to serve the Defendants properly.  Instead, Plaintiff allegedly served Bodog Entertainment by purportedly leaving the Summons and Complaint with an administrative assistant not authorized to accept service of process.[4]

Plaintiff moved for and obtained an Entry of Clerks Default and later moved this Court for Default Judgment.  (Docket No. 27).

On June 13, 2007, this Court issued a Default Judgment in favor of Plaintiff and against the Defendants.  (Id. at No. 33).  The Default Judgment was entered without an evidentiary hearing and was based upon a questionable affidavit provided by Plaintiff.  (Id.).  The Court entered a monetary judgment against the Defendants in the amount of $46,597,849.  (Id.).  The Court, however, did **not** enter an order regarding the Bodog domain names.  (Id.).

Defendants did not learn of the instant action or the Default Judgment until August 21, 2007, when Plaintiff moved to enforce the default judgment against Bodog Entertainment in King County Superior Court in Washington.  (Ex. 11).  On August 21, 2007, without prior notice to Bodog Entertainment, Plaintiff

---

[4]  Moreover, the only entity named as a defendant is Bodog Entertainment Group, S.A. "Bodog.com" and "Bodog.net" are not entities, are improperly named, and this Court has no personal jurisdiction over such domain names.  While courts may have *in rem* jurisdiction over domain names, this Court has no *in rem* jurisdiction over Bodog.com and Bodog.net, which even Plaintiff admit are not registered in Nevada.  Thus, there is no basis for the Court to have jurisdiction over the Bodog.com and Bodog.net domain names, or to issue any orders affecting Internet traffic to or from such domain names.

3

obtained a Writ of Execution in King County Superior Court, ordering eNom, a domain registrar, to transfer nearly 3,000 domain names (the "Original Domain Names") to Plaintiff's domain account ("Execution Order"). (Ex. 12). The vast majority of those domain names have **nothing** to do with any BODOG gaming business (which is the only target of Plaintiff's patent infringement claim), but instead relate to entertainment content services (such as the Bodog Music, Bodog TV and Bodog Fight businesses) and domain names run by entities not named as defendants here. Thus, the seizure order entered by the Washington court was grossly overbroad. Immediately after learning of the Default Judgment and the Execution Order, Bodog Entertainment specially appeared in this Court, filing its Motion to Set Aside Default Judgment. (Docket No. 26).

To date, and contrary to Plaintiff's assertions, Bodog Entertainment has not violated any order of this Court. Nor could Bodog Entertainment violate any Order of this Court, as the only Order against Bodog Entertainment, which the Defendants believe is invalid due to Plaintiff's failure to properly serve the summons and complaint, is a money judgment.

**C.      Plaintiff's Attempt To Enforce Its Default Judgment In Washington State Precludes This Court Ordering the Relief Requested Here as the Relief Requested is Identical to that Requested in Washington**

In an attempt to persuade this Court to grant its requested permanent injunction, Plaintiff has failed to fully and accurately inform the Court of the litigation in the State of Washington. Specifically, Plaintiff has failed to inform this Court that the parties are awaiting a ruling by the Superior Court of King County on the very same request that Plaintiff seeks in its request for the instant permanent injunction. Accordingly, this Court should reject Plaintiff's disingenuous request to enter an order that could conflict with an order issued by the Superior Court of the State of Washington. Plaintiff also misrepresents the Washington state court order in that the order nowhere gives Plaintiff "control of the … traffic of Bodog.com" as falsely alleged at Mot 3:17. <u>See</u> Ex. C to Ex. 1 to moving papers.

**1.      Plaintiff's Motion for Writ of Execution**

On August 3, 2007, Plaintiff filed a Motion for Writ of Execution re Domain Names in the Superior Court of the State of Washington for the County of King ("Motion for Writ of Execution"). (Ex. 11).

LACA_876051.3

Plaintiff alleged that it sought execution on the domain names registered to Defendants based on the judgment of $48,937.456. (Id.). The hearing on Plaintiff's Motion for Writ of Execution was calendared for August 21, 2007. (Id. at 1). Plaintiff, however, never provided the Defendants with Notice of its Motion for Writ of Execution.

In its Motion for Writ of Execution, Plaintiff noted that it "conducted searches for assets held by Defendants and came across numerous domain names registered through Washington based registrars, eNom Inc. and its subsidiaries." (Id. at 3). Accordingly, Plaintiff sought execution of those Bodog domain names, including but not limited to Bodog.com and Bodog.net (as well as thousands of other domain names unrelated to its patent infringement claims). (Id. at 1). On August 21, 2007, the Washington state court granted Plaintiff's motion and ordered that the Original Domain Names be transferred to Plaintiff's domain account. (Ex. 12). The Execution Order also (improperly) granted Plaintiff the right to use BODOG trademarks. (Id. at ¶ 6).

In response to the Execution Order, granting Plaintiff's un-noticed motion for writ of execution, and Plaintiff's improper seizure of thousands of domain names, there was a registration of a suite of new domain names under "NewBodog" URL variations such as NewBodog.com (the "NewBodog Domain Names") with a registrar in Luxembourg, so that the various Bodog businesses could operate at new Internet addresses. The NewBodog Domain Names were **not** registered by any named Defendant in this case (meaning this case and this Court have no jurisdiction over them). They were registered because Plaintiff seized not only bodog.com, bodog.net, and the 300 or so domain names listed on Exhibit A to Execution Order, but thousands more (well over 3,000 domain names) which were **not** authorized by the Execution Order. The NewBodog Domain Names were registered with Euro DNS, located in Luxembourg, in an effort to re-establish a location on the internet and to avoid further irreparable harm to the various Bodog businesses. Contrary to Plaintiff's assertion, there was nothing improper about starting new web sites at new domain names; certainly nothing in this Court's or the Washington state court's prior orders prohibited that.

        2.       **Defendants' Motion for Relief from Enforcement and Plaintiff's Motion for Writ of Execution re Replacement (Additional) Domain Names**

On September 7, 2007, Defendants filed an Amended Motion for Relief from Enforcement of

LACA_876051.3

Plaintiff's Writ of Execution and requested an Order shortening time for the hearing on the motion.  (Ex. 15).  Plaintiff filed its opposition to Defendants' motion for relief (ex. 16) and Defendants filed their reply in support of the motion for relief on September 11, 2007.  (Ex. 17).  As of a result of the registration of the NewBodog Domain Names, including NewBodog.com, Plaintiff filed in the Washington court a Motion for Writ of Execution re Replacement (Additional) Domain Names on September 4, 2007.  (Ex. 18).  Specifically, Plaintiff sought an order effecting transfer of the New Bodog Domain Names registered by Bodog Entertainment.  (Id.).  On September 10, 2007, Defendants filed their opposition to Plaintiff's motion regarding the replacement domain names.  (Ex. 19).  On September 11, 2007, Plaintiff filed its reply in support of its motion regarding the replacement domain names.  (Ex. 20).

3.    The Washington State Court's Order & the Parties' Additional Briefing

On September 12, 2007, the Washington State court, the Honorable John Erlick, heard argument on Defendants' motion for relief and Plaintiff's motion to extend its writ of execution to the NewBodog Domain Names.  During the argument, Plaintiff orally requested that the Washington court enter an order preventing the Defendants from redirecting traffic from the Original Domain Names to the NewBodog Domain Names or other domain names pending resolution in this Court of Defendants' motion to set aside the default judgment.  In response, Defendants argued that the Washington court did not have jurisdiction to enter such an order against entities over whom it had no personal jurisdiction and, further, that such an order would violate the First Amendment.

Following the hearing, the Washington court ordered Plaintiff not to dispose of the already-seized Original Domain Names pending resolution of Defendants' motion to set aside the default judgment before this Court.  (¶ 1 to Ex. C to Ex. 1 of Plaintiff's moving papers).  The Washington court further ordered that any NewBodog Domain Names that were within that court's jurisdiction and registered to Defendants remain in Defendants' possession in lock down status, pending the resolution of the motion to set aside default judgment before this Court.  (Id. at ¶ 2).  In response to Plaintiff's oral request that the Washington court issue an order to prevent Defendants or other entities from redirecting traffic from the Original Domain Names to the NewBodog Domain Names or other domain names, the Court ordered that the parties submit additional briefing on whether "this Court ha[d] jurisdiction, and whether it is in violation of the First

6

Amendment to the United States Constitution," to issue such an order.  (Id. at ¶ 3).  Finally, reversing its prior order on this point, the Washington court ordered that Plaintiff did "not have the right to use any of the defendant's trademarks without further Order of this Court."  (Id. at ¶ 5).  This is because, as Bodog Entertainment explained to the Washington court, allowing Plaintiff to use any BODOG trademarks would result in unlawful trademark infringement.

After that hearing, the Bodog businesses then unveiled a new suite of domain names under the name "BodogLife" – including BodogLife.com and BodogLife.net (the "BodogLife Domain Names").  This is part of the continued rebranding of the Bodog businesses – again, something which is a perfectly legitimate business decision and not prohibited by law or any order of any court.  The BodogLife Domain Names are registered with an Internet registrar in Europe (meaning that this Court has no jurisdiction over them).  Moreover, the BodogLife suite of domain names was not registered by any named Defendant in this action and the web sites available there are not operated by any named Defendant in this action.  And as before, the BodogLife suite of domain names also encompass numerous entertainment content businesses (including Bodog Music, Bodog TV, and Bodog Fight) which have nothing to do with the gaming business accused of infringing Plaintiff's patent.  Despite these important distinctions, by this motion, Plaintiff seeks (before both the Washington court and now before this Court) to prevent redirection of any Internet traffic from the NewBodog Domain Names to the BodogLife Domain Names.

On September 19 and September 21, 2007, the parties submitted cross-motions and cross-replies in response to the Washington court's September 12, 2007 order for additional briefing.  In its supplemental briefing, Defendants argued that the Washington court had no in personam jurisdiction over Bodog Entertainment to make such an order preventing redirection of Internet traffic from the Original and/or NewBodog Domain Names to the BodogLife Domain Names, and such an order would, accordingly, violate the due process clause of the United States Constitution.  (Ex. 21).  Defendants also argued that such an order would violate the First Amendment and amount to an unconstitutional prior restraint on lawful and truthful speech.  (Id.).

In its supplemental briefing, Plaintiff asked the Washington court to enter an order enjoining Defendants from "registering alternative domain names and directing users to these replacement domain

names." (Ex. 22). In addition, Plaintiff submitted a proposed order, asking the court to order that "Bodog, and its agents, or agencies, persons or entities [be] ENJOIN[ED] from directing their customers and traffic to 'BodogLife.com' or any other website other than "NewBodog.com"[.]" (Ex. 23). The proposed order further requested that Defendants be ordered to "(a) email its newbodog.com customers within 24 hours of the date of th[e] Order to return to the NewBodog.com domain name and (b) not to make any further statements which are intended or which would reasonably have the effect of migrating users to bodoglife.com[.]" (Id.). Plaintiff's proposed order further requested that Defendants be ordered "to cease using the BodogLife.com site for their Bodog operations pending the outcome of the motion to set aside (in Nevada)[.]" (Id.). As of the date of the filing of this opposition, the Washington state court has not yet ruled on the parties' cross-motions filed in response to the court's request for additional briefing.

**4.    Plaintiff's Request In This Emergency Motion For Permanent Injunction Is Identical To The Request Currently Pending Before The Superior Court In The State Of Washington**

Plaintiff's "emergency" motion request is virtually identical to the request it made to the Superior Court of the State of Washington that is currently under submission. A review of both requests reveals that Plaintiff seeks identical relief from this Court and the court in Washington. Specifically, Plaintiff seeks an order from both courts that defendants be: (a) enjoined from directing users and traffic to BodogLife.com or any other website besides NewBodog.com; (b) required to email users to return to the NewBodog.com domain name; and (c) forced to cease using the BodogLife.com site pending their motion to set aside the default judgment. (It is worth noting that Plaintiff does not appear to be seeking any court order about domain names used for other Bodog businesses, such as Bodog Music, Bodog TV or Bodog Fight).

This Court should reject Plaintiff's request that it issue an order while a state court judge in Washington is considering the identical request.

**5.    The Nature Of Domain Names Doomed Plaintiff's Attempt To Satisfy A Judgment By Seizing Bodog Domain Names**

In addition to numerous other infirmities in Plaintiff's motion, the motion is futile and a waste of the Court's resources. Plaintiff seeks to have Defendants stop "directing their customers and traffic to

LACA_876051.3

'BodogLife.com' … require Bodog Entities to email their customers to return to the NewBodog.com domain name, and to force the Bodog Entities to cease using the BodogLife.com site for their Bodog operations." (Mot. 1:20-25).  As an initial matter, the Defendants in this case have no ability to comply with Plaintiff's proposed injunction because they do not operate the websites in question.  Further, even if the Defendants could comply, Plaintiff's proposed relief would provide it no value.

A domain name is essentially an Internet address at which someone can do business, and is similar to a phone number for a business.  "In most cases, a domain name registration is valueless apart from the way it is used by the entity with rights to it, and if the only value that comes from transfer of the domain name is from the value added by the user, it is inappropriate to consider that an element subject to execution."  Dorer v. Arel, 60 F. Supp. 2d 558, 561 (E.D. Va. 1999).  Thus, once a business using an arbitrary domain name stops providing goods or services at the arbitrary domain name address, the value of the domain name will quickly drop because users will no longer go to a site that does not do anything.  The NewBodog.com domain name is arbitrary and has no significant value if Bodog online entertainment services are not provided there.

At this time, no Bodog entity intends to provide online entertainment services at the NewBodog.com domain.  Therefore, there is virtually no value in the NewBodog.com domain name.  Indeed, if Plaintiff got its wish and Internet users were not redirected from NewBodog.com to another site, the NewBodog.com site would have no content and there would be no point for Internet users to stay at or return to the NewBodog.com URL.  Thus, if Plaintiff's motion were granted the value of the NewBodog.com site would be miniscule – achieving the opposite effect that Plaintiff wants.

Even if the NewBodog.com domain name were eventually turned over to Plaintiff, the value of that domain name would be negligible.  Plaintiff appears to be simply a licensing entity that sues on its patent or threatens to sue on its patent and then provides a license for money.  Plaintiff apparently has no ability to provide online entertainment services and has provided no evidence of such an ability.[5]  By the terms of the

---

[5] Plaintiff also argues quite vehemently that any Bodog online gaming services are illegal under U.S. law, so Plaintiff itself would surely not operate gaming at NewBodog.com (or any other domain name it may acquire in connection with this litigation).  While Defendants dispute the merits of Plaintiff's accusations about the legality of Bodog online entertainment services, the truth of the matter is that the arbitrary NewBodog.com domain name has virtually no value if Plaintiff were to own it, and

Order in the Washington case (¶ 5 of Ex. C, to Ex. 1 of Plaintiff's moving papers) Plaintiff is now prohibited from using the BODOG trademark (and related marks) and cannot trade on any goodwill in the BODOG marks. Therefore, there is no value to Plaintiff in the NewBodog.com domain name, and there would also be no value to the NewBodog.com domain name unless Internet Users were redirected to another web site that did, in fact, provide online entertainment content services. Thus, the Court should see Plaintiff's motion for what it truly is: an improper and misguided attempt to force a lucrative monetary settlement from Defendants. Plaintiff's motion should be denied.

**D.      Plaintiff's Patent Contains Claims That Cannot Be Infringed By Defendants**

To establish patent infringement, the patent owner must show that the accused infringer practices every element of the asserted claim. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001). The only claim from its patent which Plaintiff specifically alleges in the complaint as being infringed is claim 26. See Complaint ¶ 17, Ex. 1. Claim 26, like most of the claims in the '001 patent, requires two devices. The first is an "interactive multimedia mastering system." See '001 Patent, Ex. 2. Claim 26 also requires another device, referred to as an "interactive media device."

Although 1st Technology has never explained in this litigation how anyone could possibly infringe this claim, presumably 1st Technology must believe that an entity provides both devices claimed. "[L]iability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." See BMC Resources v. Paymentech, L.P., Case No. 2006-1503 (Fed. Cir. Sep. 20, 2007) Slip Op. at 11, (finding no possible infringement when the claims required the actions of multiple parties) (emphasis added) (Ex. 24). 1st Technology has never explained how any named Defendant could possibly provide the "interactive media device," which Plaintiff would presumably contend is a consumer's computer or some other unidentified hardware.[6] Indeed, there has never been any allegation (let alone proof) that any named Defendant provides any computers or other hardware to consumers and it appears that Plaintiff would have no chance of proving infringement of claim 26 if the case were litigated on the merits.

---

if Internet traffic could not be directed from it to another site that provides online entertainment content or services.

[6] Neither has Plaintiff explained how any named Defendant provides the "interactive multimedia mastering system."

10

### III.    PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION SHOULD BE DENIED

### A.    As A Threshold Issue, The Court Should Not Hear Plaintiff's Motion Until After Deciding Defendants' Motion To Set Aside The Default Judgment

Plaintiff's Emergency Motion for a Permanent Injunction should be denied pending a decision on Defendants' previously filed motion to set aside the default judgment.  Permanent injunctions may be rendered only after a valid adjudication on the merits of the action.  See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).   If the default judgment is set aside, the underlying judgment on which the permanent injunction motion is premised will not exist, and there would be no basis for the motion for a permanent injunction.[7]  It would serve judicial economy not to even consider Plaintiff's motion now.

### B.    The Court Should Deny Plaintiff's Motion Pending A Decision By The Washington State Court

Plaintiff seeks an order from this Court that is identical to the order it seeks from the Superior Court of the State of Washington.  As of the date of the instant filing, the Washington court has not yet ruled on Plaintiff's request that is identical in all respects to the request Plaintiff seeks in this Court.  The basis for Plaintiff's claim in Washington is that the court in Washington has in rem jurisdiction over the domain names at issue (the Original Domain Names and the NewBodog Domain Names).[8]  Plaintiff does not present evidence, nor could it, that this Court has in rem jurisdiction over either the Original Domain Names or the New Bodog Domain Names (which are not registered with any Internet registrar in Nevada), let alone the BodogLife Domain Names.   Accordingly, this Court reject Plaintiff's request for an order that may potentially conflict with an order that is to be issued in Washington.

---

[7]   In this case, the Court's earlier default judgment is not a final judgment on the merits because Defendants are currently attempting to have the judgment set aside for good cause under Federal Rule of Civil Procedure 55(c) and 60(b).  See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985) (observing that "default judgments are generally disfavored" because cases should be decided on the merits); Veeck v. Commodity Enters., Inc., 487 F.2d 423, 425-26 (9th Cir. 1973) (failure to serve properly constituted a lack of jurisdiction to enter default judgment, thus default judgment was set aside); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (default judgment is void where a plaintiff fails to serve process properly); Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc., 2007 U.S. Dist. LEXIS 60708 (D. Nev. 2007).

[8] There can be no dispute, however, that neither the Washington court nor this Court have any in rem or personal jurisdiction over the BodogLife Domain Names, which are not registered in the U.S.

11

1    Plaintiff filed both its original motion for writ of execution on the Original Domain Names, as well as

2    its later motion for a writ of execution on the replacement (*i.e.,* NewBodog Domain Names) domain names,

3    in the state of Washington because those domain names were "registered through a registrar located in

4    Washington[.]" (Ex. 11 at 2). Plaintiff argued "that domain names are a species of property which can be

5    converted like any other property." (<u>Id.</u> at 4). Thus, Plaintiff argued, "Washington statute allows execution

6    of a judgment against a domain name which is registered to the judgment debtor." (<u>Id.</u>).

7    Under the principles established by the Supreme Court in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and

8    its progeny, this Court should abstain from exercising its jurisdiction while ongoing state civil enforcement

9    proceedings are pending. A federal court must abstain from enjoining pending state proceedings if the state's

10    interest in the proceeding is so important that exercise of the federal judicial power would disregard the

11    comity between the states and the federal government. <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1 (1987).

12    <u>Younger</u> abstention is proper where: (1) there are ongoing state judicial proceedings; (2) that implicate

13    important state interests; and (3) there is an adequate opportunity in the state proceedings to raise federal

14    questions. <u>Confederated Salish v. Simonich</u>, 29 F.3d 1398, 1405 (9th Cir. 1994).

15    In the instant motion, Plaintiff requests that this Court issue an order regarding numerous domain

16    names that are presently subject to litigation in Washington. Specifically, Plaintiff seeks an Order from this

17    Court that is virtually identical to a proposed order that is currently under submission in Washington state

18    court. Unlike the Washington state court, however, this Court has no <u>in rem</u> jurisdiction over the Original

19    Domain Names or the NewBodog Domain Names because, as Plaintiff acknowledges, those domain names

20    are registered in Washington. (Moreover, this Court certainly has no jurisdiction to affect Internet traffic to

21    the BodogLife Domain Names, which are not even registered in the U.S.) Thus, the Washington state courts

22    have an interest in concluding civil proceedings related to domain names that are registered in Washington.

23    Finally, Plaintiff's requests in its emergency motion for permanent injunction before this Court are virtually

24    <u>identical</u> to its requests currently pending in the Washington state court.

25    Plaintiff's actions in filing the instant motion for permanent injunction, while also requesting identical

26    relief in Washington state, support abstention by this Court. The issues have been fully briefed in

27    Washington state court, all briefs were submitted as of September 21, 2007 and the issue is currently under

28

LACA_876051.3

submission with Judge Erlick.  On September 24, 2007, Plaintiff contacted the court clerk for Judge Erlick and explained that "the parties were before the Court a week or two ago . . . and the Court requested supplemental briefing." (Ex. 25).  Based on the fact that all briefing was completed on September 21, 2007, Plaintiff "request[ed an] oral hearing in connection with the briefing."  (Id.).  In response, the court clerk informed Plaintiff that the "judge will decide whether to grant oral argument after reviewing the supplemental briefing.  (Id.).

In making its request for oral argument, Plaintiff did <u>not</u> disclose to Judge Erlick's court clerk that it had moved for identical relief before this Court.  (Id.).  What is troubling about this lack of disclosure is that Plaintiff sought the oral argument four days <u>after</u> it filed the instant motion for permanent injunction before this Court.  Also troubling is Plaintiff's lack of candor with this Court, as Plaintiff purposely failed to inform this Court that it was awaiting a ruling from the Washington state court on its request for relief that is identical to the request for relief it seeks in its motion for permanent injunction.

Based on the foregoing, this Court should abstain from ruling on Plaintiff's motion for permanent injunction.

**C.    This Court Has Neither In Personam Jurisdiction Over Defendant, Nor In Rem Jurisdiction Over The Domain Names Targeted In Plaintiff's Motion**

By urging this Court to exercise its "general power to enjoin," (Mot. p. 6),  Plaintiff has overlooked a constitutional prerequisite to the exercise of this power—jurisdiction.  <u>Lewis v. Lewis</u>, 695 F. Supp. 1089, 1090 (D. Nev. 1988) ("[I]f a court lacks jurisdiction over a party, then it lacks all jurisdiction to adjudicate the party's rights, whether or not the subject matter is properly before it."); <u>Vaile v. District Court</u>, 44 P.3d 506, 516 (Nev. 2002) (holding that lower court order entered without jurisdiction was void).  Here, this Court possess neither <u>in personam</u> jurisdiction over any named Defendants, nor <u>in rem</u> jurisdiction over any of the domain names targeted in this motion.

**1.    Personal Jurisdiction Is Lacking Because Defendants Were Not Properly Served And Defendants Have No Contacts With The State Of Nevada**

For a court to exercise <u>in personam</u> jurisdiction over a defendant, two things must occur.  First, the defendant must be served with process sufficient to give notice that a court is seeking to assert personal

LACA_876051.3

jurisdiction over it, <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314–16 (1950), and, second, the plaintiff must show that the defendant has sufficiently meaningful contacts with the forum state that a court's assertion of jurisdiction over the defendant does not offend fundamental notions of fairness or due process. <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (due process clause protects corporation from "being subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'") Plaintiff's purported assertion of jurisdiction over Defendant here fails on both counts.

### a. Defendant Was Never Served With Process In This Action Sufficient To Confer Personal Jurisdiction

As argued in Defendants' Motion to Set Aside the Default Judgment, 1st Technology failed to serve process properly in the underlying patent infringement claim. Plaintiff's failure to serve process adequately negates this Court's jurisdictional ability to grant the orders requested in Plaintiff's Emergency Motion for Permanent Injunction. An "elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950). Courts have repeatedly recognized that a judgment lacking lawful service is void. <u>Nature's First, Inc. v. Nature's First Law, Inc.</u>, 436 F. Supp. 2d 368, 372 (D. Conn. 2006) ("[P]laintiff must effectuate valid service of process before the district court can assert personal jurisdiction over a defendant."); <u>Flory v. U.S.</u>, 79 F.3d 24 (5th Cir. 1996); <u>Jones v. Watts</u>, 142 F.2d 575, 575 (5th Cir. 1944).

This court is without jurisdiction to issue the Plaintiff's requested injunction because of Plaintiff's failure to adequately serve Defendants with summons. Without proper service of process, there is no basis for the Court to exercise jurisdiction over Defendants, and the proposed orders would be invalid.

### b. This Court Lacks General In Personam Jurisdiction over Defendant

Assuming the Court wishes to engage in a minimum contacts analysis, the result is the same. 1st Technology bears the burden of both adequately alleging and proving personal jurisdiction over Defendants. <u>Trump v. District Court</u>, 857 P.2d 740, 748 (Nev. 1993) (holding that plaintiff bears burden of producing some evidence in support of all facts necessary to establish personal jurisdiction). 1st Technology cannot

LACA_876051.3

seriously contend that the Court has general jurisdiction over Defendants.  A court cannot exercise general jurisdiction over a non-resident defendant unless the defendant's forum activities are so "substantial or continuous and systematic" that it may be deemed present in the forum."  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984); <u>Freeman v. District Court,</u> 1 P.3d 963, 965 (Nev. 2000) (citing <u>Budget Rent-A-Car v. District Court</u>, 835 P.2d 17, 19 (Nev. 1992)).

Plaintiff has not shown that Defendants have extensive in-state contacts with Nevada or that they conduct <u>any</u> activities within the state – let alone substantial and continuous activities.  <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1108 (9th Cir. 2002) ("Where a defendant brings a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."); <u>Amba Mktg. Sys. Inc. v. Jobar Int'l Inc.</u>, 551 F.2d 784, 787 (9th Cir. 1977) (stating that plaintiff cannot "simply rest on the bare allegations of its complaint . . . .").  Plaintiff has not met its burden and this Court has no general <u>in personam</u> jurisdiction over Defendant.

> **c.** **This Court Lacks Specific In Personam Jurisdiction Over Defendant And Defendants Have Not Purposefully Availed Themselves Of The Benefits And Protections Of Nevada Law**

Under Nevada law, specific jurisdiction is appropriate only where "the cause of action arises from the defendant's contacts with the forum."  <u>Zuffa, LLC v. Showtime Networks, Inc.</u>, 2007 U.S. Dist. LEXIS 60711 (D. Nev. 2007); <u>Price and Sons v. District Court</u>, 831 P.2d 600, 602 (Nev. 1992).  Exercise of specific jurisdiction is only appropriate if the Due Process Clause is satisfied and the defendant's activities fall within those activities enumerated in Nevada's long-arm statute.[9]  <u>See</u> <u>Trump</u>, 857 P.2d at 748.  Here, the exercise of specific jurisdiction is improper because Plaintiff has not alleged, nor can it prove, that Defendants have purposefully availed itself of the benefits and protections of Nevada law.

This Court should not grant 1st Technology's requested injunction because Defendants have no meaningful contacts with the State of Nevada.  The Due Process Clause protects a corporation from "being

---

[9]  Nevada's long-arm statute provides six bases for the exercise of jurisdiction, none of which are applicable here: <u>See</u> NRS § 14.065.  This statute is meant to be coextensive with the limits of federal due process inasmuch as it authorizes Nevada courts to exercise jurisdiction "over a party to a civil action on any basis not inconsistent with . . . the Constitution of the United States." <u>Id.</u>

subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" Burger King Corp., 471 U.S. at 472 (citing International Shoe Co. v. Washington, 362 U.S. 310, 319 (1945)). The Constitution requires meaningful contacts to ensure that a corporation can predictably determine when its conduct in a state rises to the level that it "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). These requirements are not met unless the defendant has "purposefully availed" itself of "the benefits and protections of [the forum state's] laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). This occurs when a foreign corporation "creat[es] continuing relationships and obligations with citizens of another state." Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950).

This Court has no specific jurisdiction over Defendants because they have not purposefully availed themselves of the benefits and protections of Nevada laws. Plaintiff has not alleged any contacts, let alone any meaningful contacts. Having not cultivated any contacts with the State of Nevada, the Due Process Clause protects Defendants from being haled into Nevada's courts because Defendants could not have reasonably anticipated being subject to the State's jurisdiction.

As an initial matter, as explained previously, Bodog.com and Bodog.net are not entities. They are merely domain names, over which this Court has no personal jurisdiction. Nor could this Court have *in rem* jurisdiction over them because those domain names are not registered in the State of Nevada (but instead in the State of Washington).

As for the only named entity, Bodog Entertainment Group, S.A., the only conceivable basis upon which Plaintiff could argue that it has meaningful contacts with Nevada is through its registration of domain names and mere maintenance of websites that are accessible in Nevada. However, these contacts are insufficient for two reasons: First, courts that have been called on to consider the jurisdictional implications of domain-name registration have held that, at most, the registration of domain names within a state permits a court therein to exercise in rem jurisdiction over the domain names, not in personam jurisdiction over the out-of-state company. See America Online, Inc. v. Aol.org, 259 F. Supp. 2d 449, 451 (E.D. Va. 2003) (holding in rem jurisdiction is proper over domain name registered in jurisdiction but personal jurisdiction is improper where registrant has no other contacts with forum); Globalsantafe Corp. v. Globalsantafe.com, 250

F. Supp. 2d 610, 615 (E.D. Va. 2003) (same).  However, these cases are inapplicable to the present case because Bodog Entertainment Group, S.A. has not registered its domain names with Nevada registrars.

Second, Plaintiff may argue that there is specific personal jurisdiction because internet sites using the BODOG trademark (and variations thereof) might be accessible by Nevada residents.  Courts sometimes apply a sliding-scale to determine whether activity over the Internet permits an assertion of specific jurisdiction within a particular forum: "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (outlining sliding-scale of Internet activity that ranges from "passive" to "interactive").  This argument fails in the instant case for several reasons.

First, the so-called "Zippo test" is inapplicable unless the Internet transactions being examined are themselves the basis of the cause of action.  See Zuffa, 2007 U.S. Dist. LEXIS 60711 ("[S]pecific jurisdiction over a defendant may be established only where the cause of action arises from the defendant's contacts with the forum.").  1st Technology makes no allegation and offers no evidence regarding where the alleged infringement occurred or what transactions caused the alleged infringement.  Its underlying complaint offers only the vague and conclusory assertions that  Bodog Entertainment Group, S.A. "has previously and is presently making, using, selling, offering for sale, and/or importing into the United States, software products that infringe one or more claims" of its patent.  See Complaint at ¶ 7, Ex. 1.  It makes the exact same allegations as to all Defendants and all are insufficient.

Second, 1st Technology makes no showing that  Bodog Entertainment Group, S.A.,, the only legal entity before this Court, ran any internet entertainment or other websites at any of the disputed domain names that can be accessed in Nevada or otherwise directed advertising to Nevada residents.  Digital Control, Inc. v. Boretronics, Inc., 161 F. Supp. 2d 1183, 1185 (W.D. Wash. 2001) (stating that unless website operator has chosen to "dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposefully directed its activities at residents in the forum state.").  (Indeed, Bodog Entertainment Group S.A. is not even the registered owner of the NewBodog Domain Names or the BodogLife Domain Names;

17

1  thus, there is clearly no jurisdiction for this Court to enter an order prohibiting that entity from redirecting

2  traffic from NewBodog.com to BodogLife.com or other websites – because that entity has no interest in

3  those domain names.)

4       In sum, the Due Process Clause forbids this court from exercising specific jurisdiction over any

5  Defendant because Defendants have not purposefully availed themselves of the benefits and protections of

6  Nevada law.[10]  Having not cultivated any meaningful contacts in the State of Nevada, Defendants had no

7  obligation to reasonably anticipate being haled into Nevada's courts.  The scarcity of Bodog Entertainment

8  Group, S.A.'s  contacts with Nevada is illustrated by the fact that its domain names (the Original Domain

9  Names) were not even registered here and its internet activities are unrelated to 1st Technology's underlying

10  cause of action.

11       **2.    This Court Has No In Rem Jurisdiction Over The Domain Names Targeted**

12       **In Plaintiff's Motion**

13       In requesting a permanent injunction, Plaintiff has made three specific requests that relate to the

14  disputed domain names.  Mot. p. 9.  The requests should be denied because this court does not possess in

15  rem jurisdiction over the domain names.  None of the domain names in question (the Original Domain

16  Names, the NewBodog Domain Names, and particularly the BodogLife Domain Names) have any

17  connection whatsoever to the State of Nevada.[11]  Even if these domain names had a connection to the State

18  of Nevada, 1st Technology would still need to establish that Defendants have cultivated the minimum

19  contacts required under the Due Process Clause.  See Shaffer v. Heitner, 433 U.S. 186, 206 (1977)

20

21       [10] The "effects test" for exercising specific jurisdiction is likewise inapplicable.  Under this test, a
22  nonresident defendant is found to have purposefully availed itself of a forum state's laws if it commits
an intentional tort that is aimed at the forum state.  Calder v. Jones, 465 U.S. 783, 789–90 (1984).  The
23  effects test has since been applied to a website operator who engaged in "cybersquatting."  Panavision
Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998).  Here, Plaintiff has not alleged, nor can it allege,
that Defendant has committed any intentional torts, much less any aimed at the state of Nevada.

24

25       [11] Though it is not controlling, the Anticybersquatting Consumer Protection Act, 15 U.S.C. §
1125(d)(2)(C)(i)-(ii), provides persuasive guidance regarding the jurisdiction in which a domain name
26  will subject its owner to in rem jurisdiction: "In an in rem action . . . a domain name shall be deemed to
have its situs in the judicial district in which (i) the domain name registrar, registry, or other domain
27  name authority or registered or assigned the domain name is located; or (ii) documents sufficient to
establish control and authority regarding the disposition of the registration and use of the domain name
are deposited with the court."

28

18

LACA_876051.3

1    (extending minimum contacts requirement to exercises of <u>in</u> <u>rem</u> jurisdiction because "jurisdiction over a

2    thing" is merely "an elliptical way of referring to jurisdiction over the interests of persons in a thing.").

3    **D.    The Motion Should Be Denied As Futile Because No Defendant Can Provide The**

4    **Relief Requested**

5    Even assuming, <u>arguendo</u>, that this Court had jurisdiction over Defendants, this Court should deny

6    Plaintiff's motion because Defendants cannot provide the relief requested by Plaintiff.  This is so because

7    Bodog Entertainment Group, S.A. does not itself provide online entertainment services.  It merely provided

8    technical services, including domain name management, for various entities, including but not limited to

9    entities that use the BODOG mark and variations thereof to provide various online entertainment services.

10   Further, Bodog Entertainment does not operate any websites; it merely administered the Original Domain

11   Names for other businesses.  Accordingly, an order requiring Bodog Entertainment  Group, S.A. to do

12   anything related to websites, online entertainment services, or deal with "customers" would be futile.

13   Plaintiff's suggestion that Defendants have "sought to evade the judgment through legal and illegal

14   means[,]" by "fraudulently transferr[ing] their web traffic from their United States domain name to a foreign

15   domain name," (Mot. at 1), is false and based on a fundamental misunderstanding of the nature of domain

16   names.[12]  The simple fact is that domain names have little or no inherent value to Plaintiff.  Their value is

17   entirely dependent on the businesses using them, significant advertising/promotion of them or their

18   associated brands, and the goodwill associated with the business.

19   Here, Plaintiff has no trademark rights associated with the various BODOG brands, offers no content

20   associated with the various BODOG marks and has no goodwill associated therewith, so any of the domain

21   names in Plaintiff's possession will inevitably have little, if any, value to Plaintiff.  <u>Dorer</u>, 60 F. Supp. 2d at

22   560 n.9.  As the BODOG businesses own rights in the BODOG and related trademarks, Plaintiff could not

23   itself use any of the disputed domain names without infringing these undeniable trademark rights.

24   Based on the foregoing, ordering Defendants to do anything related to websites, online entertainment

25

26   ───────────────
     [12]  These arguments are also based on a declaration from Plaintiff's counsel which inaccurately

27   attempt to summarize his September 11, 2007 conversation with Defendants' counsel.  Not only are the
     statements inaccurately reported, they are disclosed in breach of the settlement privilege – under which

28   that conversation was held.  (<i>See</i> Nguyen Decl., ¶ 3-5.)

LACA_876051.3

1  services, or dealing with Internet users would be futile.  Accordingly, this Court should reject Plaintiff's

2  request to enter a futile Order.

### E.    The Proposed Order Would Violate the First Amendment to the United States Constitution and Article I, § 5 of the Washington Constitution.

5     Even assuming that the Court could properly assert personal jurisdiction over Bodog, this Court's

6  proposed censorship of Bodog's speech in communicating with internet users and potential users regarding

7  online business addresses for <u>other</u> entities (not sued here) would violate the First Amendment to the United

8  States Constitution.   The proposed order, which would enjoin Bodog "from directing traffic to

9  'BodogLife.com' or any other websites besides 'NewBodog.com'" is not limited to barring mechanical or

10  electronic redirection, but also could be read to censor speech that would redirect traffic or otherwise inform

11  users of new website domain names.  Such an order, which bars speech before it even occurs, is a "prior

12  restraint," which is highly disfavored.  <u>See</u> William Blackstone, <u>Commentaries on the Laws of England</u>, bk.

13  IV, ch. XI, 151-52, (London, 1765-69) (18th ed., New York, 1836, vol. 2, 112-13).  The Supreme Court has

14  repeatedly emphasized that prior restraints are <u>presumptively</u> unconstitutional.  <u>See, e.g., Pittsburgh Press v.

15  Pittsburgh Comm'n on Human Relations,</u> 413 U.S. 376 (1973); <u>Organization for a Better Austin v. Keefe,</u>

16  402 U.S. 415, 419 (1971).  A plaintiff, correspondingly, bears "a heavy burden of showing justification for

17  the imposition of such a restraint[,]" <u>Organization for a Better Austin</u>, 402 U.S. at 419, and Plaintiff has not

18  met that burden here.

19     The speech this order purports to bar is commercial speech.  Commercial speech is entitled to First

20  Amendment protection in both prior-restraint and subsequent-punishment cases alike provided it is truthful

21  and not misleading.  <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.,</u> 447 U.S. 557, 563-66 (1980);

22  <u>44 Liquormart, Inc. v. Rhode Island,</u> 517 U.S. 484 (1996)[13].

23     To determine whether the commercial speech in question gets First Amendment protection, the Court

---

25     [13] <u>See also</u> <u>American Future Sys., Inc. v. Pennsylvania State Univ.,</u> 688 F.2d 907 (3d Cir.), <u>on

26  remand,</u> 553 F. Supp. 1268 (M.D. Pa. 1982) (invalidating, as an unconstitutional prior restraint, an order restricting Tupperware parties on college campuses); <u>Lloyd v. Alaska Worldwide, Inc.,</u> 550 S.W. 2d 343

27  (Tex. Civ. App. 1977) (prohibiting television  station from broadcasting stories that interfered with a firm's business was an unconstitutional prior restraint violating the First Amendment).

LACA_876051.3

must closely examine the actual speech that is to be targeted by the government action. <u>Central Hudson</u>, 447 U.S. at 565-66. Here, the proposed order would censor all speech that would "direct traffic to 'BodogLife.com' or any other website besides 'NewBodog.com[.]'" (Mot. at 1). Notably, the speech targeted by the proposed order is not <u>advertising</u> of any online entertainment services,[14] and the order does not purport to be directed at <u>advertisements</u> for any illegal activity. Rather, the order would prohibit Bodog from merely redirecting traffic or, presumably, informing internet users about any redirection. There is nothing false or illegal about this speech, and it receives First Amendment protection. Also, just as Bodog has a First Amendment right to engage in commercial speech, internet users have a right to receive the information contained therein, which right would also be violated by the proposed order. <u>Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.,</u> 425 U.S. 748, 756-57 (1976).

Moreover, there is nothing wrong with the various Bodog businesses starting new websites at new URL addresses (which is itself a speech act). Likewise, there is nothing wrong with redirecting traffic to those new URLs. When government action targets truthful and non-misleading commercial speech regarding lawful activity, it will be found unconstitutional unless (1) it seeks to advance a substantial government interest; (2) it directly advances that interest; and (3) it does not burden any more speech than is necessary to accomplish its goal. <u>See</u> <u>Central Hudson</u>, 447 U.S. at 563-66. Here, Plaintiff, as the party seeking to censor speech, bears the burden of proving each of these elements. <u>Id.</u> If any element is not met, the restraint is invalid. In this case, none are met.

**1.    This Court Does not Have a Substantial Interest in Regulating the Online *Location* of Legal Internet Activities of Non-Washington Residents.**

The proposed order does not meet the first prong of the <u>Central Hudson</u> test, which requires a

---

[14] Plaintiff will no doubt assert that Bodog runs online gaming services, that these services are illegal, and that speech related to them, therefore, does not deserve First Amendment protection. This argument fails. First, despite its repeated assertions, the plaintiff has offered no evidence showing that Bodog Entertainment Group S.A., the Defendant in this matter, provided any online entertainment services (gaming or otherwise) or otherwise did anything to infringe the patent at issue in the Nevada action. Second, and more crucial for current purposes, the Court's proposed order does not even purport to restrict advertising of any aspect of online services, it only would censor speech that "redirect[s]" web traffic from site to another.

LACA_876051.3

"substantial interest to be achieved by restrictions on commercial speech . . . ."  Central Hudson, 447 U.S. at 564.  While the Court certainly has a legitimate interest in enforcing its default judgment, this Court does not have a general interest in regulating speech by foreign businesses telling internet users where online entertainment services and information can be found.  Further, while the Court arguably has an interest in preserving assets <u>within</u> its jurisdiction – such an interest is not implicated where, as here, the Court has no <u>in rem</u> jurisdiction over the domain names at issue.  Without a substantial interest to justify the ban on speech related to Bodog's online web addresses, Plaintiff cannot satisfy the <u>Central Hudson</u> test, and the proposed order will not survive constitutional scrutiny.

> **2.    The Proposed Redirection Ban Does not Advance the Narrow**
>
> **Interests That this Court Has.**

The Court's proposed censorship of Bodog's speech regarding redirecting web traffic does not directly advance any legitimate interest.  A restriction on truthful commercial speech "must directly advance the state interest involved; the [speech restriction] may not be sustained if it provides only ineffective or remote support for the government's purpose." <u>Central Hudson,</u> 447 U.S. at 564.  A prior restraint on even commercial speech "may extend only as far as the interest it serves.  The State cannot regulate speech that poses no danger to the asserted state interest . . . ."  <u>Id</u>.

The interest that this Court has in preserving assets in its jurisdiction to satisfy a default judgment is a very narrow one, which is not advanced at all by the proposed ban on any speech redirecting traffic to other domains.  First, this Court only has no <u>in rem</u> jurisdiction over the domain names at issue in this matter.  Further, even if the Court had <u>in rem</u> jurisdiction over the domain names, such jurisdiction would be limited to the domain names themselves, not the underlying business, the revenue streams, the goodwill, *etc*. <u>See Network Solutions, Inc. v. Umbro Int'l, Inc.</u>, 529 S.E.2d 80 (Va. 2000) (recognizing that the interest that a domain name registrant holds is merely "the contractual right to use a unique domain name for a specified period of time.").  Whether Bodog redirects its online businesses to other web addresses has no bearing on this Court's jurisdiction over the default judgment issued against Defendants or Defendants assets in Nevada, of which there are none.

Although Plaintiff is sure to argue that redirecting traffic to new domain names will harm the value of

LACA_876051.3

the domain names, this argument is futile as this Court has no in rem jurisdiction over the domain names at issue.  Further, the domain names will *inevitably* lose value should the Bodog businesses become unable to use the names or redirect traffic from them.  The longer the domain names remain inoperative, the less value they have.  Because the domain names in question are largely based on valid trademarks that Bodog businesses own, any use by Plaintiff is likely to be infringing under the Lanham Act.  See 15 U.S.C. § 1051, et seq.  Furthermore, if Plaintiff cannot use the domain name, the only "value" would be in preventing Bodog from using it, which is illegal under the Anti-Cybersquatting Consumer Protection Act.  See 15 U.S.C. § 1125.

Consequently, even if the Court had some interest in preserving the value of assets subject to its in rem jurisdiction, of which there is none in Nevada, the proposed censorship order would not advance that interest.  Since this element of the Central Hudson test is not met by the order, such an order would violate the First Amendment.

### 3.    The Proposed Order Burdens Far More Speech Than is Necessary to Accomplish its Narrow Goal.

The proposed order is not narrowly tailored to serve the narrow interest that this Court has.  Government action that censors speech cannot "completely suppress information when narrower restrictions . . . would serve its interest as well."  Central Hudson, 447 U.S. at 564.  Here, another, less-restrictive non-speech means would suffice to serve the Court's interests, namely, the registrar lock, and it is already in place based on the Washington state court's order.  The order proposed by the Court would prevent Bodog from communicating truthful information to its customers and potential customers alike that certain online addresses have changed, and would censor speech impacting entertainment businesses such as the BODOG MUSIC record label, the BODOG BATTLE OF THE BANDS competition and reality TV show, BODOG FIGHT mixed martial arts events, and many other entertainment services regarding which there is no contention of either illegality or infringement.  Thus, the proposed order is plainly overbroad, and will not protect any legitimate interests.

### F.    Plaintiff Fails To Make The Required Showing Warranting Entry Of A Permanent Injunction

LACA_876051.3

### 1.    Plaintiff Fails To Inform The Court Of The Relevant Law Concerning Injunctions In Patent Cases

Contrary to Plaintiff's insinuations at Mot. pp. 7-8, procedure in suits seeking injunctive relief is governed by federal, and not state, law.  13 Moore's Federal Practice and Procedure § 65.07[1] at 65-27 (2007).  Further, Plaintiff almost completely ignores the fact that the sole cause of action in this case is for patent infringement.  The patent statute, 35 U.S.C. § 283 provides that a Court may "grant injunctions in accordance with the principles of equity <u>to prevent the violation of any right secured by patent</u>"  (emphasis added).  In <u>eBay v. MercExchange</u>, 126 S. Ct. 1837, 1839, 1842 (2006) the Supreme  court clarified that to obtain a permanent injunction in a patent case, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

Plaintiff's motion for a permanent injunction is baseless for several reasons.  First, Plaintiff does not seek to enjoin any right secured by patent – instead he wants the online entertainment services accused of infringement to continue, but at a place of his choosing rather than someone else's choosing.  Second, the relief Plaintiff may request is really in the nature of a writ of execution rather than a permanent injunction prohibiting patent infringement, but there are no assets in Nevada which Plaintiff can seize.  Third, Plaintiff neither identified the standard for a permanent injunction nor provided any evidence to meet its burden of satisfying the standard for a permanent injunction.

### 2.    Plaintiff's Requested Injunction Bears No Relation To Any Right Secured By Patent And Should Be Denied

As noted above, 35 U.S.C. § 283 provides that an injunction in a patent case may issue "<u>to prevent the violation of any right secured by patent</u>."  Plaintiff does <u>not</u> seek to stop patent infringement, however.  Instead, Plaintiff <u>wants the activities that it alleges constitute patent infringement to continue</u>, but just at NewBodog.com instead of BodogLife.com.    Plaintiff's desire to have the alleged patent infringement continue at a place of its choosing bears no relation to the default judgment it obtained or to preventing

LACA_876051.3

patent infringement and Plaintiff's motion for a permanent injunction should be denied as improper.

### 3.    Plaintiff's Attempt To Enforce Its Judgment Through An Injunction Rather Than A Writ Of Execution Is Improper

Fed. R. Civ. P. 69(a) provides that "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."  See Hilao v. Marcos, 95 F.3d 848, 854-55 (9th Cir. 1996) (enforcement of judgment shall be by writ of execution despite the size of the judgment).  Plaintiff, in its motion, relegated its mention of Rule 69 to a footnote and did not cite other applicable federal law because it knows that the relief it seeks, money and a mandatory injunction that it thinks would help it increase the price of a domain name at an auction, are really an attempt to enforce its money judgment.  An injunction, however, is not the proper vehicle for enforcing a judgment.  To enforce its judgment, Plaintiff needs to seek a writ of execution.  Plaintiff is obviously familiar with writs of execution, as it sought one in Washington state court.  Plaintiff refused to do so here, however, because it knows that Defendants have no assets that would be subject to a writ of execution in Nevada.

### 4.    Plaintiff Failed To Make Any Competent Showing Concerning The Relevant Factors To Be Analyzed In Connection With An Injunction

As noted above, under eBay, Plaintiff has the burden to establish: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  Plaintiff has not made a showing under any of these factors.

#### a.    Plaintiff's Repeated Licensing Of Its Patent Establishes That It Is Not Suffering Any Irreparable Injury Warranting A Permanent Injunction And Money Damages Are Adequate

After eBay, permanent injunctions are not routinely granted in patent cases.  z4 Techs., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437 (E.D. Tex. 2006) (denying an injunction).  Indeed, a judgment of infringement does not warrant a finding of irreparable harm.  Id. 440.  Where a patentee fails to show that monetary damages were inadequate compensation for infringement, courts have found that there is no

LACA_876051.3

showing of irreparable injury.  Id. at 441.  Unlike a situation in which the parties are direct competitors and the patentee would lose market share if patent infringement continued, here 1st Technology appears to be merely a licensing entity that does not provide any online entertainment services. See Paice LLC v. Toyota Motor Corp., 2006 WL 2385139 at * 5 (E.D. Tex.) (denying an injunction sought by a licensing company who did not manufacture the accused products) (Ex. 26); Voda v. Cordis Corp., 2006 WL 2570614 (W.D. Okla.) at * 5 (denying an injunction when the patentee failed to prove irreparable injury or that money damages would be inadequate) (Ex. 27).

Just as in Paice, z4, and Voda, the Plaintiff here just wants money.  Plaintiff has made no showing that it will lose market share, brand name recognition, or lost profits if no permanent injunction is entered.  Based on Plaintiff's complete lack of proof of irreparable injury and inadequacy of monetary damages, the Court should deny the request for a permanent injunction.

**b.  Remedies At Law Are Sufficient To Compensate For Any Alleged Injury And Money Damages Are All Plaintiff Sought In Its Default Judgment**

Unlike this case involving a dubious patent whose merits have not been litigated, even after a case is tried on the merits and a patent is found to be infringed, a patentee's right to exclude does not automatically mean that money damages are inadequate.  z4, 434 F. Supp. 2d at 441. Again, because there is no direct competition between the parties, and there would be no loss of goodwill or market share for Plaintiff if an injunction were not entered, Plaintiff's remedies at law are adequate.  Indeed, money damages are all that Plaintiff has ever sought before trying to use its motion for permanent injunction as a bargaining tool. Because Plaintiff completely failed to provide any proof on this prong its motion for permanent injunction should be denied.

**c.  Plaintiff Is Not Suffering Any Hardship, But Defendants Would Suffer A Hardship In That It  Could Not Comply With The Proposed Injunction**

The balance of hardships also warrants denying a permanent injunction.  See z4, 434 F. Supp. 2d at 443. First, Plaintiff presents no evidence of any hardship it is suffering.  Second, as explained above, the

26

named Defendants simply do not provide the services Plaintiff claims they provide and they cannot comply with a permanent injunction. If the Court were to order a permanent injunction with which Defendants cannot comply, Plaintiff would surely assert that the named Defendants are in contempt and institute further proceedings and seek to extract even more money from Defendants. Therefore, the balance of hardships tips strongly in Defendants' favor and the Court should deny the permanent injunction on this basis.

### d.    The Public Interest Would Not Be Served By An Injunction

Just as with all of the other prongs, Plaintiff provides no evidence that the public interest would be served by an injunction. See z4, 434 F. Supp. 2d at 444. Plaintiff is not trying to stop any online entertainment activities. Plaintiff merely wants the activities to take place at a Internet address of its choosing so as to boost the value of a particular domain name that it hopes to seize and auction later. Plaintiff's desire in no way serves the public interest. Plaintiff's proposed injunction serves only Plaintiff's interest in attempting to extract settlement money from Defendants.

### G.    Plaintiff Provides No Pertinent Authority For Its Demand For Posting Of Security

Normally, the party requesting a preliminary injunction must post security that can be used to compensate a party wrongfully enjoined. See Nintendo of Am. Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036-38 (9th Cir. 1994). Here, Plaintiff seeks to turn the security requirement on its head and have defendants post $9.3 million in security. Plaintiff, of course, provides no authority justifying its bizarre request (let alone the amount of the requested security). Plaintiff is, in effect, seeking to impose exorbitant contempt sanctions on Defendants, without showing that Defendants violated any order. Plaintiff has failed to employ the proper procedure to obtain contempt sanctions. See Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983) (judgment creditor could not point to any exceptional circumstances to justify payment of judgment by securing fine, and contempt order could not be sustained to extent it was intended to enforce payment). Plaintiff has not established that defendants violated any order of this Court (because Defendants have not). Thus, Plaintiff's motion is faulty and should be denied.

///

///

///

27

1

IV.    **CONCLUSION**

2

    For all the foregoing reasons, the "emergency" motion for permanent injunction should be denied.

3

4

5

Dated:  September 27, 2007          By:          _____/s/ Charles McCrea_____

6

                                           Charles McCrea
                                    **LIONEL SAWYER & COLLINS**

7

                                    Attorneys for Specially Appearing Defendants
                                    **BODOG ENTERTAINMENT GROUP S.A.,**

8

                                    and erroneously named Specially Appearing
                                    Defendants **BODOG.NET** and **BODOG.COM**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LACA_876051.3