EXHIBIT 21

The Honorable John Erlick

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| 1ST TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BODOG ENTERTAINMENT GROUP S.A., BODOG.NET, AND BODOG.COM,<br><br>　　　　Defendants. | Case No. 07-2-25305-0 SEA<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM RE: CROSS-MOTIONS CONCERNING PLAINTIFF'S WRIT OF EXECUTION** |

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

# TABLE OF CONTENTS

I. INTRODUCTION .................................................... 1

II. ARGUMENT ....................................................... 2

    A. This Court Has No In Personam Jurisdiction over Bodog ................. 2

        1. Bodog was Never Served With Process in this Action Sufficient to Confer Personal Jurisdiction. ............................................ 2

        2. This Court Lacks General Jurisdiction over Bodog .................. 3

        3. This Court Lacks Specific Jurisdiction Over Bodog ................. 4

            a. Bodog has not Purposefully Availed itself of the Benefits and Protections of Washington Law and There is No Showing that Any Contacts It May have Relate to the Claims Asserted. ........... 4

            b. Bodog Has Not Submitted to This Court's Jurisdiction by Seeking Relief from the Writ of Execution ......................... 6

    B. The Proposed Order Would Violate the First Amendment to the United States Constitution and Article I, § 5 of the Washington Constitution. ............... 7

        1. This Court Does not Have a Substantial Interest in Regulating the Online *Location* of Legal Internet Activities of Non-Washington Residents. ..... 9

        2. The Proposed Redirection Ban Does not Advance the Narrow Interests That this Court Has. ............................................ 9

        3. The Proposed Order Burdens Far More Speech Than is Necessary to Accomplish its Narrow Goal. ................................... 11

III. CONCLUSION ................................................... 12

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- i

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## I. INTRODUCTION

The Court's proposed order[1], which would prevent Bodog Entertainment Group, S.A. (Costa Rica) ("Bodog") from redirecting traffic to new or other domain names pending resolution of its motion to set aside default in the Nevada action, is unconstitutional for two reasons. First, the Court has no in personam jurisdiction over Bodog to make such an order, and such an order would, accordingly, violate the due process clause of the United States Constitution. Second, this order would violate the First Amendment and amount to an unconstitutional prior restraint on lawful and truthful speech. Thus, the Court should decline 1st Technology's invitation to enter such an order.

In this brief, Bodog will show the following. First, this Court lacks personal jurisdiction over Bodog, because 1st Technology never filed a complaint or served Bodog with a summons in this action. The Court, thus, has no power in this collection proceeding to make such an order. Nor can 1st Technology show that any contacts between Bodog and Washington are sufficient for the exercise of general or specific personal jurisdiction. In addition, even assuming the Court could properly assert personal jurisdiction over Bodog, the proposed order creates an unconstitutional burden on Bodog's commercial speech. The Court does not have a substantial interest in regulating speech by a Costa Rican business or other foreign "Bodog" business (for which the Bodog entity named here provided technical services) telling internet users where online entertainment services can be found and the proposed order would not advance any narrow interest that the Court may have. Finally, the proposed order burdens far more speech than is necessary to accomplish its goal. Overall, there is nothing wrong with the Bodog businesses starting new websites at new domain names, and nothing in the Court's current orders or the law preclude that. Doing so is, itself, a form of speech. There should likewise be nothing

---

[1] The Court's proposed order reads as follows: "Bodog shall not (and shall not cause any third party to) redirect traffic from web sites propagated via the domain names referenced in this order to new or other domain names pending resolution of the Nevada Motion."

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 1

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

that precludes redirecting traffic to new names.[2]

## II. ARGUMENT

**A.    This Court Has No In Personam Jurisdiction over Bodog**

For a court to exercise <u>in personam</u> jurisdiction over a defendant, two things must occur. First, the defendant must be served with process sufficient to give it notice that a court is seeking to assert personal jurisdiction over it, rather than merely over its property (<u>Lee v. Western Processing Co.</u>, 667 P.2d 638,640 (Wash.App.1983)) and, second, the plaintiff must show that the defendant has sufficiently meaningful contacts with the forum state that a court's assertion of jurisdiction over that defendant does not offend fundamental notions of fairness or due process. *See* <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (due process clause protects corporation from "being subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations'.") Plaintiff's purported assertion of jurisdiction over Bodog here fails on both counts.

**1.    Bodog was Never Served With Process in this Action Sufficient to Confer Personal Jurisdiction.**

RCW § 4.28.020, headed "Jurisdiction Acquired, When," states that a Washington court only acquires jurisdiction "from the time of the commencement of action by service of summons, or by the filing of a complaint, or as otherwise provided...". Similarly, RCW § 4.28.185 requires service of process, through personal service, for an assertion of personal jurisdiction. In this case, 1st Technology has never filed a complaint, and has never served a summons on Bodog. Plaintiff's motion for writ of attachment was never properly served, and even if it had been, that would not be sufficient process for an assertion of personal jurisdiction. The motion for writ of attachment, after all, merely addressed itself to this Court's exercise of <u>in rem</u> jurisdiction over domain names registered with a registrar within the state of Washington.   This Court has no <u>in personam</u> jurisdiction to enter an order that would bind Bodog, as distinct from orders it has

---

[2] On September 18, 2007, users of certain Bodog-related websites were redirected to new domain names, which contain various permutations of the term "bodoglife."

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

already made affecting domain names merely registered with a registrar found within the state. The Court can stop reading right here. Without proper service of process, there is no basis for the Court to exercise jurisdiction over Bodog, and the proposed order would be invalid.

### 2. This Court Lacks General Jurisdiction over Bodog

Assuming the Court wishes to engage in a minimum contacts analysis, the result is the same. 1st Technology bears the burden of both adequately alleging and proving personal jurisdiction over Bodog. *See* Rio Properties v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). It cannot seriously contend that the Court has general jurisdiction over Bodog Entertainment S.A. Under Washington law, a court cannot exercise general jurisdiction over a non-resident defendant unless "the defendant's actions in the state are so substantial and continuous that justice allows the exercise of jurisdiction even for claims not arising from the defendant's contacts within the state." Raymond v. Robinson, 15 P.3d 697, 700 (Wash. Ct. App. 2001) (citing Precision Lab. Plastics, Inc. v. Micro Test, Inc., 981 P.2d 454, 456 (Wash. Ct. App. 1999)). General jurisdiction is only proper where it can reasonably be said that the defendant is "doing business" within the state. MBM Fisheries v. Bollinger Shipyard, 804 P.2d 627, 631 (Wash. Ct. App. 1991) (citations omitted). Washington courts exercise general jurisdiction over non-resident corporations only where they have cultivated extensive in-state contacts: registering as a corporation within the state; actively owning and operating businesses within the state; holding tournaments and events in the state; employing Washington residents; and purchasing supplies or selling goods in the state. *See,* Hein v. Taco Bell, Inc., 803 P.2d 329 (Wash. Ct. App. 1991). Where the amount, kind, and continuity of a defendant's contacts with Washington are only "isolated or minimal," Washington courts lack general jurisdiction. Id.

Plaintiff has not shown that Bodog Entertainment Group S.A., a Costa Rican company that merely provided technical services to various other entities that use the BODOG and other trade names to provide various online entertainment services, has extensive in-state contacts with Washington or that it conducts any activities within the state - let alone substantial and continuous activities. Thus, this Court has no general jurisdiction over Bodog.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 3

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

### 3. This Court Lacks Specific Jurisdiction Over Bodog

Under Washington law, exercise of "specific jurisdiction is appropriate when a particular cause of action arises out of, or relates to, the foreign corporation's activities in Washington." Washington Equip. Mfg. Co. v. Concrete Placing Co., 931 P.2d 170, 172 (Wash. Ct. App. 1997). Exercise of specific jurisdiction is only appropriate if the Due Process Clause is satisfied and the defendant's activities fall within those activities enumerated in Washington's long-arm statute.[3] See Shute v. Carnival Cruise Lines, 783 P.2d 78 (Wash. 1989). Here, exercise of specific jurisdiction is improper, because Plaintiff has not alleged, nor can it prove, that Bodog has purposefully availed itself of the benefits and protections of Washington law or that any contacts it has relate to the transaction at issue here.

#### a. Bodog has not Purposefully Availed itself of the Benefits and Protections of Washington Law and There is No Showing that Any Contacts It May have Relate to the Claims Asserted.

The Due Process Clause protects a corporation from "being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" Burger King Corp., 471 U.S. at 472 (citing International Shoe Co. v. Washington, 362 U.S. 310, 319 (1945)). The Constitution requires meaningful contacts to ensure that a corporation can predictably determine when its conduct in a state rises to the level that it "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). These requirements are not met unless the defendant has "purposefully availed" itelf of "the benefits and protections of [the forum state's] laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). This occurs when a foreign corporation "creat[es] continuing relationships and obligations with citizens of another state." Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950).

---

[3] Washington's long-arm statute provides six bases for the exercise of jurisdiction, only two of which are potentially applicable here: (1) the "transaction of any business within this state," and (2) "the ownership, use, or possession of any property whether real or personal situated in this state . . . ." See RCW § 4.28.185 (West 2007). This statute is "meant to be coextensive with the limits of federal due process." Nagy v. Williams, 98 Wash. App. 1026 (1999); therefore, the Due Process limitations are applicable when analyzing Washington's long-arm statute.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 4

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  The mere act of Bodog entering into contracts (which are merely online "clickwrap agreements"
2  for registration of domain names and were not even negotiated) with eNom and Dotregistrar does
3  not amount to purposeful availment. Burger King, 471 U.S. at 478 ("[A]n individual's contract
4  with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in
5  the other party's home forum . . . ."). Washington courts have repeatedly held that entering into a
6  contract with a Washington resident does not, of itself, equate to purposeful availment unless the
7  contract creates continuing obligations that lead to an ongoing relationship. See Wash. Equip.
8  Mfg., 931 P.2d at 173-75.

9        Courts to consider this question consistently hold that, at most, the registration of domain
10  names with an in-state registration permits a court to exercise in rem jurisdiction over the domain
11  names, not in personam jurisdiction over the out-of-state company. See America Online, Inc. v.
12  aol.org, 259 F.Supp.2d 449, 451 (E.D. Va. 2003) (holding in rem jurisdiction is proper over
13  domain name registered in jurisdiction but personal jurisdiction is improper where registrant has
14  no other contacts with forum); Globalsantafe Corp. v. Globalsantafe.com, 250 F.Supp.2d 610,
15  615 (E.D. Va. 2003) (same).

16        Plaintiff may argue that there is specific personal jurisdiction because internet sites using
17  the BODOG name (an variations thereof) can be accessed by Washington residents. Courts
18  sometime apply a sliding-scale to determine whether activity over the Internet permits an
19  assertion of specific jurisdiction within a particular forum: "the likelihood that personal
20  jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of
21  commercial activity that an entity conducts over the Internet." Zippo Mfg. Co. v. Zippo Dot
22  Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (outlining sliding-scale of Internet activity
23  that ranges from "passive" to "interactive"). This argument fails in the instant case for several
24  reasons.

25        First, the so-called "Zippo test" is inapplicable unless the Internet transactions being
26  examined are themselves the basis of the cause of action. See Precision Lab. Plastics, Inc., 981
27  P.2d at 456 ("[T]he cause of action must arise from, or be connected with such act or transaction
28  . . . ."). 1st Technology makes no allegation and offers no evidence regarding where the alleged

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 5

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

infringement occurred or what transactions caused the alleged infringement. Its underlying Nevada complaint offers only the vague and conclusory assertions that Bodog Entertainment Group S.A. "has previously and is presently making, using, selling, offering for sale, and/or importing into the United States, software products that infringe one or more claims" of its patent. *See* Complaint in Case No. 2:06-CV-01110-RCHGWF, at ¶ 7. It makes the exact same allegations as to all defendants and all are insufficient.

Second, 1st Technology makes no showing that Bodog Entertainment Group, S.A., the only legal entity before this Court, ran any internet entertainment or other websites at the disputed domain names that can be accessed in Washington or otherwise directed advertising to Washington residents. Digital Control, Inc. v. Boretronics, Inc., 161 F.Supp.2d 1183, 1185 (W.D. Wash. 2001) (stating that unless website operator has chosen to "dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposefully directed its activities at residents in the forum state.").[4]

In sum, the Due Process Clause forbids this court from exercising specific jurisdiction over Bodog, because Bodog has not purposefully availed itself of the benefits and protections of Washington law, and there is no showing that the transactions at issue in this case are connected to Washington.[5]

      **b.    Bodog Has Not Submitted to This Court's Jurisdiction by Seeking Relief from the Writ of Execution**

The distinction between general and specific appearances has been abolished in Washington. Kuhlman Equip. Co. v. Tammermatic, Inc., 628 P.2d 851, 853 (Wash. Ct. App.

---

[4] *See also* Raymond, 15 P.3d at 703 (observing that it is "the plaintiff's burden to establish" that "the events giving rise to [plaintiff's] claim would not have occurred 'but for' [defendant's] business solicitation within this state.").

[5] The "effects test" for exercising specific jurisdiction is likewise inapplicable. Under this test, a nonresident defendant is found to have purposefully availed itself of a forum state's laws if it commits an intentional tort that is aimed at the forum state. Calder v. Jones, 465 U.S. 783, 789-90 (1984). The effects test has since been applied to a website operator who engaged in "cybersquatting." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). Here, Plaintiff has not alleged, nor can it allege, that Defendant has committed any intentional torts, much less any aimed at the state of Washington.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 6

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1 1981) ("A defendant 'is no longer required at the door of the . . . courthouse to intone that ancient abracadabra of the law, <u>de bene esse</u>, in order by its magic power to enable himself to remain outside even while he steps within.'") (internal citation omitted). A party can raise lack of personal jurisdiction by filing the appropriate response under Rule 12(b): "(n)o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Wash. Sup. Ct. Civ. R. 12(b) (West 2007). Here, of course, 1st Technology has never filed a complaint, so Bodog had no occasion to file a Rule 12 motion or an answer. But, it has consistently made this objection where appropriate.

Where a defendant has preserved an objection to personal jurisdiction, the only way in which the defendant may waive it is by seeking "affirmative relief." <u>In re Support of Livingston</u>, 719 P.2d 166, 167 (Wash. Ct. App. 1986). "Affirmative relief" is "'[r]elief for which defendant might maintain an action independently of plaintiff's claim and on which he might proceed to recovery, although plaintiff abandoned his cause of action or failed to establish it.'" <u>Kuhlman</u>, 685 P.2d at 853. Defendants' motion seeking relief from Plaintiff's writ of execution, based upon an invalid default judgment in another court, does not seek affirmative relief. This motion would never have been made absent 1st Technology's actions in seeking a writ. Accordingly, Defendants have not sought affirmative relief or otherwise consented to this Court's jurisdiction.

**B. The Proposed Order Would Violate the First Amendment to the United States Constitution and Article I, § 5 of the Washington Constitution.**

Even assuming that the Court could properly assert personal jurisdiction over Bodog, this Court's proposed censorship of Bodog's speech in communicating with internet users and potential users regarding online business address(es) for other entities (not sued here) would violate the First Amendment to the United States Constitution. The proposed order, which would bar Bodog from "redirect[ing] traffic" is not limited to barring mechanical or electronic redirection, but also could be read to censor speech that would redirect traffic or otherwise inform users of new website domain names. Such an order, which bars speech before it even occurs, is a "prior restraint," which is highly disfavored. *See* William Blackstone, Commentaries on the Laws of England, bk. IV, ch. XI, 151-52, (London, 1765-69) (18th ed., New York, 1836,

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 7

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   vol. 2, 112-13). The Supreme Court has repeatedly emphasized that prior restraints are
2   presumptively unconstitutional. *See*, e.g., Pittsburgh Press v. Pittsburgh Comm'n on Human
3   Relations, 413 U.S. 376 (1973); Organization for a Better Austin v. Keefe, 402 U.S. 415, 419
4   (1971). A plaintiff, correspondingly, bears "a heavy burden of showing justification for the
5   imposition of such a restraint" (Organization for a Better Austin, 402 U.S. at 419), and Plaintiff
6   has not met that burden here.

7   The speech this order purports to bar is commercial speech. Commerical speech is
8   entitled to First Amendment protection in both prior-restraint and subsequent-punishment cases
9   alike provided it is truthful and not misleading. Central Hudson Gas & Elec. Corp. v. Public
10  Serv. Comm., 447 U.S. 557, 563-66 (1980); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484
11  (1996)[6] ; accord Kitsap County v. Mattress Outlet, 104 P.3d 1280 (Wash. 2005).

12  To determine whether the commercial speech in question gets First Amendment
13  protection, the Court must closely examine the actual speech that is to be targeted by the
14  government action. Central Hudson, 447 U.S. at 565-66. Here, the proposed order would censor
15  all speech that would "redirect traffic from web sites . . . to new or other domain names." *See*
16  9/12/07 Order at 2-3, ¶ 3. Notably, the speech targeted by the proposed order is not advertising of
17  any online entertainment services,[7] and the order does not purport to be directed at
18  advertisements for any illegal activity. Rather, the order would prohibit Bodog from merely
19  redirecting traffic or, presumably, informing internet users about any redirection. There is
20  nothing false or illegal about this speech, and it receives First Amendment protection. Also, just

---

[6] *See also* American Future Sys., Inc. v. Pennsylvania State Univ., 688 F. 2d 907 (3d Cir.), on remand, 553 F. Supp. 1268 (M.D. Pa. 1982) (invalidating, as an unconstitutional prior restraint, an order restricting Tupperware parties on college campuses); Lloyd v. Alaska Worldwide, Inc., 550 S.W. 2d 343 (Tex. Civ. App. 1977) (prohibiting television station from broadcasting stories that interfered with a firm's business was an unconstitutional prior restraint violating the First Amendment).

[7] Plaintiff will no doubt assert that Bodog runs online gaming services, that these services are illegal, and that speech related to them, therefore, does not deserve First Amendment protection. This argument fails. First, despite its repeated assertions, the plaintiff has offered no evidence showing that Bodog Entertainment Group S.A., the Defendant in this matter, provided any online entertainment services (gaming or otherwise) or otherwise did anything to infringe the patent at issue in the Nevada action. Second, and more crucial for current purposes, the Court's proposed order does not even purport to restrict advertising of any aspect of online services, it only would censor speech that "redirect[s]" web traffic from site to another.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 8

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

as Bodog has a First Amendment right to engage in commercial speech, internet users have a right to receive the information contained therein, which right would also be violated by the proposed order. <u>Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.</u>, 425 U.S. 748, 756-57 (1976).

Moreover, there is nothing wrong with the various Bodog businesses starting new websites at new URL addresses (which is itself a speech act). Likewise, there is nothing wrong with redirecting traffic to those new URLs. When government action targets truthful and non-misleading commercial speech regarding lawful activity, it will be found unconstitutional unless (1) it seeks to advance a substantial government interest; (2) it directly advances that interest; and (3) it does not burden any more speech than is necessary to accomplish its goal. *See* <u>Central Hudson</u>, 447 U.S. at 563-66. Here, 1st Technology, as the party seeking to censor speech, bears the burden of proving each of these elements. <u>Id.</u> If any element is not met, the restraint is invalid. In this case, none are met.

    **1.**    **This Court Does not Have a Substantial Interest in Regulating the Online *Location* of Legal Internet Activities of Non-Washington Residents.**

The proposed order does not meet the first prong of the <u>Central Hudson</u> test, which requires a "substantial interest to be achieved by restrictions on commercial speech" <u>Central Hudson</u>, 447 U.S. at 564. While the Court certainly has a legitimate interest in enforcing its orders, Washington courts conducting <u>in rem</u> collection proceedings do not have a general interest in regulating speech by foreign businesses telling internet users where online entertainment services and information can be found. Further, while the Court might arguably have an interest in preserving the domain names that have already been seized (though Defendants disagree about the scope of domain names which should be locked) - the proposed order does not advance this interest, as more fully explained below. Without a substantial interest to justify the ban on speech related to Bodog's online web addresses, Plaintiff cannot satisfy the <u>Central Hudson</u> test, and the proposed order will not survive constitutional scrutiny.

    **2.**    **The Proposed Redirection Ban Does not Advance the Narrow Interests That this Court Has.**

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 9

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

The Court's proposed censorship of Bodog's speech regarding redirecting web traffic does not directly advance any legitimate interest. A restriction on truthful commercial speech "must directly advance the state interest involved; the [speech restriction] may not be sustained if it provides only ineffective or remote support for the government's purpose." Central Hudson, 447 U.S. at 564. A prior restraint on even commercial speech "may extend only as far as the interest it serves. The State cannot regulate speech that poses no danger to the asserted state interest . . .." Id.

The interest that this Court has in preserving in rem jurisdiction over certain domain names registered in Washington is a very narrow one, which is not advanced at all by the proposed ban on any speech redirecting traffic to other domains. First, the Court only has jurisdiction over and an interest in the domain names themselves, not the underlying business, the revenue streams, the goodwill, etc., See, e.g., Network Solutions, Inc. v. Umbro Int'l, Inc., 529 S.E.2d 80 (Va. 2000) (recognizing that the interest that a domain name registrant holds is merely "the contractual right to use a unique domain name for a specified period of time.") Whether Bodog redirects its online businesses to other web addresses has no bearing on this Court's jurisdiction over the currently-frozen domain names. Pending decision by the Nevada Court, they would remain registered with and locked down by the Washington-based registrar and would remain available for the plaintiff's use or liquidation should it ultimately prevail.[8]

Although Plaintiff is sure to argue that redirecting traffic to new domain names will harm the value of the domain names under this Court's jurisdiction, such an argument completely misunderstands the nature of the domain names that are subject to this Court's in rem jurisdiction. It relies on the mistaken assumption that these domain names will have any value to the plaintiff should they ever be reassigned.

But, the domain names will *inevitably* lose value should the Bodog businesses become unable to use the names or redirect traffic from them. The longer the domain names remain

---

[8] As previously argued in other briefs, Defendants believe that vastly more domain names were seized than was even arguably appropriate.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 10

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  inoperative, the less value they have. A domain name "is essentially an address; it derives value
2  chiefly from its manner of use, typically as a tradename or trademark." *See* Dorer v. Arel, 60 F.
3  Supp. 2d 558 (E.D. Va. 1999). And, much like trademarks, domain names (especially those
4  domain names which incorporate trademarks) are "valueless apart from the content or goodwill
5  to which [they are] attached." Id. That value can be estimated by the number of hits to the
6  domain name. Should the plaintiff ever obtain full title and ownership to the domain names in
7  question, they will essentially be valueless, because the plaintiff does not run any of the
8  Bodog-related businesses, and will not have any of the content or goodwill associated with them.
9  Traffic to and hits to those sites will, therefore, likely cease. Further, the domain names in 1st
10 Technology's hands will be essentially valueless, due to the very limited manner in which they
11 can be used. Because the domain names in question are largely based on valid trademarks that
12 Bodog businesses own,[9] any use by the plaintiff is likely to be infringing under the Lanham Act.
13 *See* 15. U.S.C. 1051, *et seq*. Furthermore, if plaintiff cannot use the domain name, the only
14 "value" would be in preventing Bodog from using it, which is illegal under the
15 Anti-Cybersquatting Consumer Protection Act. *See* 15 U.S.C. §1125.
16      Consequently, even if the Court had some interest in preserving the value of assets
17 subject to its in rem jurisdiction, the proposed censorship order would not advance that interest.
18 Since this element of the Central Hudson test is not met by the order, such an order would violate
19 the First Amendment.

### 3. The Proposed Order Burdens Far More Speech Than is Necessary to Accomplish its Narrow Goal.

22      The proposed order is not narrowly tailored to serve the narrow interest that this Court
23 has. Government action that censors speech cannot "completely suppress information when
24 narrower restrictions . . . would serve its interest as well." Central Hudson, 447 U.S. at 564.
25 Here, another, less-restrictive non-speech means would suffice to serve the Court's interests,
26 namely, the registrar lock, and it is already in place. The order proposed by the Court would

---

[9] Bodog owns, among others, a valid and incontestable registration in the service mark BODOG. See U.S. Trademark Registration No. 2930682.

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 11

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  prevent Bodog from communicating truthful information to its customers and potential
2  customers alike that certain online addresses have changed, and would censor speech impacting
3  entertainment businesses such as the BODOG MUSIC record label, the BODOG BATTLE OF
4  THE BANDS competition and reality TV show, BODOG FIGHT mixed martial arts events, and
5  many other entertainment services regarding which there is no contention of either illegality or
6  infringement. Thus the proposed order is plainly overbroad, and will not protect any legitimate
7  interests.

## III. CONCLUSION

For all of the foregoing reasons, this Court should decline 1st Technology's request to enter an unconstitutional order that would prevent a party over which it had no jurisdiction from engaging in protected commercial speech.

DATED this 19th day of September, 2007.

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

BY: _____
Derek A. Newman,  WSBA No. 26967
Randall Moeller, WSBA No. 21094

Attorneys for Defendants

DEFS.' SUPPLEMENTAL MEM. RE:
CROSS-MOTIONS CONCERNING PL.'S WRIT
OF EXECUTION- 12

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of September, 2007, I caused the foregoing **DEFENDANTS' SUPPLEMENTAL MEMORANDUM RE: CROSS-MOTIONS CONCERNING PLAINTIFF'S WRIT OF EXECUTION, AND CERTIFICATE OF SERVICE** to be served via the methods listed below on the following party:

**Via Email to:**

Venkat Balasubramani, Esq.
Balasubramani Law
8426 - 40th Avenue SW
Seattle, WA 98136

Email: venkat@balasubramani.com

I declare under penalty of perjury under the laws of the United States and the State of Washington that the forgoing is true and correct and that this declaration was executed on September 19th, 2007, at Seattle, Washington.

_____
Diana Au

CERTIFICATE OF SERVICE

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800