# EXHIBIT 24

Dockets.Justia.com

# United States Court of Appeals for the Federal Circuit

2006-1503

BMC RESOURCES, INC.,

Plaintiff-Appellant,

v.

PAYMENTECH, L.P.,

Defendant-Appellee.

Christopher R. Benson, Fulbright & Jaworski L.L.P., of Austin, Texas, argued for plaintiff-appellant. With him on the brief were Jeffrey D. Mills; J. Jeffery Richardson, of Dallas, Texas. Of counsel was Michael R. Krawzsenek, of Austin, Texas.

John M. Cone, Hitchcock Evert, LLP, of Dallas, Texas, argued for defendant-appellee.

Daralyn J. Durie, Keker & Van Nest LLP, of San Francisco, California, for amicus curiae, Comcast Cable Communications LLC. With him on the brief were Mark A. Lemley and Matthias A. Kamber.

John Kenneth Felter, Goodwin Procter LLP, of Boston, Massachusetts, for amicus curiae, Freedom Wireless, Inc. With him on the brief was Kevin P. Martin.

Appealed from: United States District Court for the Northern District of Texas

Judge Barbara M.G. Lynn

# United States Court of Appeals for the Federal Circuit

2006-1503

BMC RESOURCES, INC.,

Plaintiff-Appellant,

v.

PAYMENTECH, L.P.,

Defendant-Appellee.

_____

DECIDED:  September 20, 2007

_____

Before RADER, GAJARSA, and PROST, Circuit Judges.

RADER, Circuit Judge.

BMC Resources, Inc. (BMC) appeals the district court's decision on summary judgment that Paymentech, L.P. (Paymentech) does not infringe asserted claims from two patents owned by BMC.  The court determined that Paymentech had not infringed the claims because it performed some but not all of the steps of the asserted method claims.  Because the record contains no basis to hold Paymentech vicariously responsible for the actions of the unrelated parties who carried out the other steps, this court affirms the finding of non-infringement.

I

BMC is the assignee of two patents, U.S. Patent Nos. 5,718,298 (the '298 patent) and 5,870,456 (the '456 patent).  These patents claim a method for processing debit transactions without a personal identification number (PIN).  The patented invention

provides an interface between a standard touch-tone telephone and a debit card network. On this interface, a customer may perform real-time bill payment transactions with only a telephone keypad. The invention includes an interactive voice response unit (IVR) that prompts the caller to enter an access code, account number, debit card number, and payment amount. This information, in turn, passes to a debit network and on to a banking or financial institution. Each of these entities participates in approving and carrying out the transaction. Using the invention, the caller may also obtain information regarding authorization for the transaction, and inquire about previously processed transactions. Thus, BMC's patents disclose a method for PIN-less debit bill payment (PDBP) featuring the combined action of several participants, including the payee's agent (for example, BMC), a remote payment network (for example, an ATM network), and the card-issuing financial institutions.

Paymentech processes financial transactions for clients as a third party. In 2002, Paymentech began marketing PDBP services. Paymentech processes a PDBP transaction according to the following sequence:

1.    the customer calls the merchant to pay a bill using an IVR;

2.    the merchant collects payment information from the customer and sends it to Paymentech;

3.    Paymentech routes the information to a participating debit network;

4.    the debit network forwards the information to an affiliated financial institution;

5.    the financial institution authorizes or declines the transaction, and if

authorized, charges the customer's account according to the payment

information collected by the merchant; and

6.    information regarding the status of the transaction moves from the

financial institution to the debit network and then, through Paymentech, to

the merchant who informs the customer of the status of the transaction.

This action began when BMC learned of Paymentech's offer to provide PDBP services to its clients. BMC then demanded that Paymentech obtain a license to use the patented technology. Paymentech refused and, as a preemptive measure, filed suit in federal district court seeking a declaration of non-infringement with respect to the BMC patents. BMC counterclaimed for infringement of the '456 patent. After the parties were realigned, BMC, as plaintiff, amended its complaint to allege infringement, both direct and by inducement, of the '456 and the '298 patents. Paymentech, as defendant, filed a counterclaim seeking a declaration of non-infringement and invalidity of the '298 patent. Paymentech also sought a declaration of non-infringement and invalidity with respect to a third patent, U.S. Patent No. 5,652,786 (the '786 patent). The trial court dismissed that claim for lack of subject matter jurisdiction because Paymentech could not prove it had objectively reasonable apprehension of being sued for infringement of the '786 patent. BMC Resources, Inc. v. Paymentech, L.P., No. 3-03-CV-1927-M (N.D. Tex. May 5, 2004).

The parties subsequently filed summary judgment motions relating to infringement. BMC alleged that Paymentech directly infringed claim 7 of the '456 patent

and claim 2 of the '298 patent.  Claim 7 depends from claim 6 of the '456 patent.

Claims 6 and 7 claim:

> 6.    A method of paying bills using a telecommunications network line connectable to at least one remote payment card network via a payee's agent's system wherein a caller begins session using a telecommunications network line to initiate a spontaneous payment transaction to payee, the method comprising the steps of:
>
> prompting the caller to enter a payment number from one or more choices of credit or debit forms of payment;
>
> prompting the caller to enter a payment amount for the payment transaction;
>
> accessing a remote payment network associated with the entered payment number,
>
> the accessed remote payment network determining, during the session, whether sufficient available credit or funds exist in an account associated with the payment number to complete the payment transaction,
>
> and upon a determination that sufficient available credit or funds exist in the associated account,
>
> charging the entered payment amount against the account with the entered payment number,
>
> adding the entered payment amount to an account associated with the entered account number, and
>
> storing the account number, payment number and payment amount in a transaction file of the system.

> 7.    The method of claim 6 wherein said payment is a PINless credit or debit card number.

Claim 2 of the '298 patent is also a dependent claim, incorporating the PINless

debit payment method described in claim 1.

Claims 1 and 2 of the '298 patent claim:

1.    A method of paying bills using a telephone connectable to at least one remote payment card network via a payee's agent's system, wherein a caller places a call using said telephone to initiate a spontaneous payment transaction that does not require pre-registration, to a payee, the method comprising the steps of:

prompting the caller to enter an account number using the telephone, the account number identifying an account of a payor with the payee in connection with the payment transaction;

responsive to entry of an account number, determining whether the entered account number is valid;

prompting the caller to enter a payment number using the telephone, the payment number being selected at the discretion of the caller from any one of a number of credit or debit forms of payment;

responsive to entry of the payment, determining whether the entered payment number is valid;

prompting the caller to enter a payment amount for the payment transaction using the telephone;

responsive to a determination that a payment amount has been entered and further responsive to a determination that the entered account number and payment number are valid, and during the call;

accessing a remote payment network associated with the entered payment number, the accessed remote payment network determining, during the call, the account associated with the entered payment number to complete the payment transaction;

accessing a remote payment network associated with the entered payment number, the accessed remote payment network determining, during the call, whether sufficient available credit or funds exist in an account associated with the entered payment number to complete the payment transaction;

responsive to a determination that sufficient available credit or funds exist in the associated account, charging the entered payment amount against the account associated with the entered payment number, adding the entered payment amount to an account associated with the entered account number, informing the caller that the payment transaction has been authorized, and

storing the account number, payment number and payment amount in a transaction log file of the system during the call; and

responsive to determination that sufficient available credit or funds do not exist in the associated account, informing the caller during the call that the current payment transaction has been declined and terminating the current payment transaction.

2.    The method of claim 1 wherein said payment number is a debit card number.

Paymentech denied infringement, arguing that it did not perform all of the steps of the patented method by itself or in coordination with its customers and financial institutions. The magistrate judge determined that Paymentech did not infringe the '298 patent or the '456 patent either by itself or in connection with other entities. Accordingly, the magistrate judge recommended that the district court grant Paymentech's motion for summary judgment of non-infringement.

BMC objected to that recommendation. Relying on this court's decision in On Demand Machine Corp. v. Ingram Industries, Inc., 442 F.3d 1331 (Fed. Cir. 2006), BMC argued that Paymentech had infringed. BMC argued that On Demand changed the law governing joint infringement by multiple parties. The district court determined that the language BMC had relied upon in On Demand was dicta that had not altered the traditional standards governing infringement by multiple parties, and thus affirmed the findings of the magistrate judge. BMC Resources, Inc. v. Paymentech, L.P., No. 3-03-CV-1927-M (N.D. Tex. May 24, 2006) (Order). Finding no law on point from this court governing direct infringement by multiple parties performing different parts of the single claimed method, the district court reviewed opinions from other district courts. Based on that review, the trial court determined that Paymentech would only infringe if the record showed that it directed or controlled the behavior of the financial institutions that

performed those claimed method steps that Paymentech did not perform. The district court determined that the record did not contain any such evidence of direction or control.

In a surfeit of care, the district court went further to determine that even under the looser standard for joint infringement of a single claim advocated by BMC, the record would still need to contain "some connection" between Paymentech and the firms taking the additional claimed steps. Even under this relaxed rule, the trial court found no support for a finding of infringement by Paymentech. Thus, the district court granted Paymentech's motion for summary judgment. Lacking any evidence of direct infringement, the district court further dismissed BMC's claims for contributory infringement and inducement. At the request of the parties, the district court subsequently dismissed without prejudice Paymentech's invalidity counterclaims.

II

This court reviews a summary judgment of no infringement without deference to ascertain whether genuine issues of material fact exist. Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1326 (Fed. Cir. 2006); Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1331 (Fed. Cir. 2006). The summary judgment evidence is assessed to determine whether "a reasonable jury could return a verdict for the non-movant." Applied Med., 448 F.3d at 1331. In assessing the evidence, all reasonable inferences are drawn in favor of the non-movant. Id.

The case presents the issue of the proper standard for joint infringement by multiple parties of a single claim. As the parties agree, Paymentech does not perform every step of the method at issue in this case. With other parties performing some

2006-1503                                      7

claimed method steps, this court must determine if Paymentech may nonetheless be liable for direct infringement under 35 U.S.C. § 271(a) (2000).  Section 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Direct infringement requires a party to perform or use each and every step or element of a claimed method or product.  Warner-Jenkinson Corp. v. Hilton Davis Corp., 520 U.S. 17 (1997) (holding that the doctrine of equivalents, like literal infringement, must be tested element by element); Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc., 216 F.3d 1367, 1370 (Fed. Cir. 2000); Gen. Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d 1272, 1274 (Fed. Cir. 1992).  For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process. Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed. Cir. 1993).

When a defendant participates in or encourages infringement but does not directly infringe a patent, the normal recourse under the law is for the court to apply the standards for liability under indirect infringement.  Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.  Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1272 (Fed. Cir. 2004).

These rules for vicarious liability might seem to provide a loophole for a party to escape infringement by having a third party carry out one or more of the claimed steps on its behalf.  Cross Med. Prods. v. Medtronic Sofamor Danek, 424 F.3d 1293, 1311 (Fed. Cir. 2005).   To the contrary, the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of

the acting party.  Engle v. Dinehart, 213 F.3d 639 (5th Cir. 2000) (unpublished decision) (citing Restatement (Second) of Agency § 220 cmt. d).  In the context of patent infringement, a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf.  In Cross Medical Products, this court refused to attribute the acts of surgeons in making the claimed apparatus to the medical device manufacturer because the medical device manufacturer representative, who appeared in the operating room and identified instruments for the surgeons, did not direct the surgeons' actions.  The Court remanded the case for a determination of whether the surgeons directly infringed by making the claimed apparatus and whether the medical device manufacturer could be held vicariously liable for such infringing acts.  424 F.3d at 1312.

On appeal, BMC argues that the district court erred in dismissing its argument that this court's recent opinion in On Demand sanctioned a finding of infringement by a party who performs some steps of a claim in cases where a patent claims a new and useful invention that cannot be performed by one person.  BMC argues that the district court's decision is contrary to On Demand and urges this court to vacate and remand this decision.

On Demand dealt with a patent covering systems and methods for manufacturing a single copy of a book.  442 F.3d at 1333.  In On Demand, the plaintiff argued that a district court verdict could still stand, even under a corrected claim construction.  The district court instructed the jury as follows:

> It is not necessary for the acts that constitute infringement to be performed by one person or entity.  When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement.  Infringement of a

patented process or method cannot be avoided by having another perform one step of the process or method.  Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

Id. at 1344-45.

This court stated that it "discern[ed] no flaw in this instruction as a statement of law," id., but it did so without any analysis of the issues presented relating to divided infringement.  Instead, On Demand primarily addressed the claim construction issue that governed the outcome of that case.  BMC argues that On Demand adopted a "participation and combined action" standard as the type of "connection" a plaintiff must show to prove joint infringement.

The district court considered On Demand and determined that it did not change the traditional standard requiring a single party to perform all steps of a claimed method. It further noted that the On Demand decision did not in any way rely on the relationship between the parties.  As such, the district court concluded that "[b]ecause the district court's definition of 'connection' was not relied on in the panel's conclusion, the Court refuses to read the panel's dictum that it found 'no flaw' as a wholesale adoption of the district court's jury instruction." Order, slip op. at 7.

The district court properly analyzed the law and this court's cases.  As Paymentech succinctly noted in its brief, "[i]t is unlikely the Court intended to make a major change in its jurisprudence in the On Demand [statement] that was not even directly necessary to its decision in the case." (Appellee's Br. 32.)  In other words, BMC's interpretation of On Demand goes beyond settled law.  On Demand did not change this court's precedent with regard to joint infringement.

Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention. Warner-Jenkinson, 520 U.S. at 40 (element-by-element analysis for doctrine of equivalents). This holding derives from the statute itself, which states "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (2000). Thus, liability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention.

Where a defendant participates in infringement but does not directly infringe the patent, the law provides remedies under principles of indirect infringement. However, this court has held that inducement of infringement requires a predicate finding of direct infringement. Dynacore, 363 F.3d at 1272.

Two such cases that have found that a party cannot be liable for direct infringement because the party did not perform all the steps are Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1568 (Fed. Cir. 1985) (finding no direct infringement by manufacturer who performed the first step of a process claim even where its customer performed the other step of the claim) and Cross Medical Products, 424 F.3d at 1311 (rejecting patentees' efforts to combine the acts of surgeons with those of a medical device manufacturer to find direct infringement of an apparatus claim).

Courts faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct each step of the patented process. See BMC Resources, Inc. v. Paymentech, L.P., (N.D. Tex. Feb. 9, 2006) ("No court has ever found direct infringement based on the type of arms-length business transaction

2006-1503                                11

presented here."); <u>Faroudja Labs v. Dwin Elecs., Inc.</u>, 1999 U.S. Dist. LEXIS 22987 (N.D. Cal. Feb. 24, 1999); <u>Mobil Oil Corp. v Filtrol Corp.</u>, 501 F.2d 282, 291-92 (9th Cir. 1974) (expressing doubt over the possibility of divided infringement liability).

A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such situations to escape liability. District courts in those cases have held a party liable for infringement. <u>See</u> <u>Shields v. Halliburton Co.</u>, 493 F. Supp. 1376, 1389 (W.D. La. 1980).

This court acknowledges that the standard requiring control or direction for a finding of joint infringement may in some circumstances allow parties to enter into arms-length agreements to avoid infringement. Nonetheless, this concern does not outweigh concerns over expanding the rules governing direct infringement. For example, expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement. Direct infringement is a strict-liability offense, but it is limited to those who practice each and every element of the claimed invention. By contrast, indirect liability requires evidence of "specific intent" to induce infringement. Another form of indirect infringement, contributory infringement under § 271(c), also requires a mens rea (knowledge) and is limited to sales of components or materials without substantial noninfringing uses. Under BMC's proposed approach, a patentee would rarely, if ever, need to bring a claim for indirect infringement.

The concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting. A patentee can usually structure a claim to

capture infringement by a single party.  See Mark A. Lemley et al., Divided Infringement

Claims, 33 AIPLA Q.J. 255, 272-75 (2005).  In this case, for example, BMC could have

drafted its claims to focus on one entity.  The steps of the claim might have featured

references to a single party's supplying or receiving each element of the claimed

process.  However, BMC chose instead to have four different parties perform different

acts within one claim.  BMC correctly notes the difficulty of proving infringement of this

claim format.  Nonetheless, this court will not unilaterally restructure the claim or the

standards for joint infringement to remedy these ill-conceived claims.  See Sage Prods.

Inc. v. Devon Indus. Inc., 126 F.3d 1420, 1425 (Fed. Cir. 1997) ("[A]s between the

patentee who had a clear opportunity to negotiate broader claims but did not do so, and

the public at large, it is the patentee who must bear the cost of its failure to seek

protection for this foreseeable alteration of its claimed structure.")

III

Applying these standards to BMC's charges against Paymentech properly results

in a finding of no infringement.  Although BMC proffered evidence to establish some

relationship between Paymentech and the debit networks, the magistrate and the

district court both concluded that this evidence was insufficient to create a genuine

issue of material fact as to whether Paymentech controls or directs the activity of the

debit networks.  Specifically, the magistrate and district court found BMC's evidence

that Paymentech provides data (debit card number, name, amount of purchase, etc.) to

the debit networks, absent any evidence that Paymentech also provides instructions or

directions regarding the use of those data, to be inadequate.    BMC argues that

instructions or directions can be inferred from the provision of these data, or that the

data themselves provide instructions or directions.  But, having presented no evidence below to support either theory, BMC is not entitled to such an inference with respect to the debit networks that would allow it to survive summary judgment.  The evidence before the magistrate and the district court to support direction or control of financial institutions by Paymentech was even scarcer.  As the district court observed, the record contained no evidence even of a contractual relationship between Paymentech and the financial institutions.

Without this direction or control of both the debit networks and the financial institutions, Paymentech did not perform or cause to be performed each and every element of the claims.  In this situation, neither the financial institutions, the debit networks, nor the payment services provider, Paymentech, bears responsibility for the actions of the other.

<u>AFFIRMED</u>