# EXHIBIT 27

Westlaw

Not Reported in F.Supp.2d                                                                                                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

Voda v. Cordis Corp.
W.D.Okla.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Oklahoma.
Jan K. VODA, M.D., Plaintiff and Counterclaim Defendant,
v.
CORDIS CORPORATION, Defendant and Counterclaim Plaintiff.
**No. CIV-03-1512-L.**

Sept. 5, 2006.

Jonathan Keith Waldrop, Mitchell G. Stockwell, Kilpatrick Stockton LLP, Atlanta, GA, John A. Kenney, Spencer F. Smith, McAfee & Taft, Oklahoma City, OK, for Plaintiff and Counterclaim Defendant.
Adam R. Steinert, Diane C. Ragosa, John M. Dimatteo, Kelsey I. Nix, Willkie Farr & Gallagher LLP, New York, NY, Amanda Leigh Maxfield, Clyde A. Muchmore, Crowe & Dunlevy, Mahaffey & Gore PC, John A. Kenney, Spencer F. Smith, McAfee & Taft, Oklahoma City, OK, Mitchell G. Stockwell, Jonathan Keith Waldrop, Kilpatrick Stockton LLP, Atlanta, GA, for Defendant and Counterclaim Plaintiff.

TIM LEONARD, District Judge.
***1** This action concerns three patents that were issued by the United States Patent and Trademark Office to plaintiff, Dr. Jan K. Voda. All of the patents concern an angioplasty guide catheter. Patent No. 5,445,625 (" the 625 patent" ) reflects the catheter " in a relaxed state prior to insertion in the cardiovascular system." The two remaining patents (the 213 and the 195 patents) cover plaintiff's inventive technique for using the catheter to perform angioplasty. In addition to method claims, the 195 patent also includes claims that focus on the catheter as it appears in the aorta. Plaintiff filed this action on October 30, 2003, seeking damages for alleged infringement of the three patents by defendant, Cordis Corporation. Beginning May 15, 2006, the case was tried to a jury, which returned a verdict in favor of plaintiff on May 25, 2006. The jury specifically held defendant infringed each of the patents in suit and that claims 1, 2, and 3 of the 213 patent were not invalid due to anticipation or obviousness.[FN1] Verdict Form at 1-7. The jury determined that plaintiff was entitled to a reasonable royalty of 7.5% of defendant's gross sales of the infringing catheters. *Id.* at 8. In addition, the jury found defendant's infringement was willful. *Id.* at 3.

> FN1. At the conclusion of the trial, defendant conceded it was no longer seeking a declaration as to the validity of the '625 patent, the '195 patent, or claims 4 and 5 of the '213 patent (" the apparatus claims" ). The court thus granted judgment as a matter of law in favor of plaintiff on that portion of defendant's counterclaim.

Although the parties were able to stipulate to the amount of compensatory damages based on the jury's verdict,[FN2] they were unable to agree on whether plaintiff should be awarded prejudgment interest and, if so, the rate of interest. Likewise, the parties dispute whether plaintiff is entitled to enhanced damages based on the jury's willfulness finding. In addition, the court must decide whether plaintiff is entitled to injunctive relief and attorney's fees.

> FN2. Joint Stipulation Regarding Compensatory Damages (Doc. No. 341).

*Prejudgment Interest*

As a general rule, prejudgment interest should ordinarily be awarded in patent infringement actions. *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655 (1983).
In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment.

*Id.* at 655-56 (footnote omitted). Although defendant recognizes this general rule, it argues prejudgment interest should be denied " [d]ue to Dr. Voda's eight-year delay in bringing suit, and the resultant

Case 2:06-cv-01110-RLH-GWF    Document 57-28    Filed 09/27/2007    Page 3 of 7

Not Reported in F.Supp.2d                                                                                        Page 2
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Not Reported in F.Supp.2d)

prejudice" . Cord is' Opposition to Dr. Voda' Motions for (1) a Permanent Injunction, (2) Enhanced Damages and (3) Prejudgment Interest at 19 (Doc. No. 362). In support of this contention, defendant identifies the same economic and evidentiary prejudice the court found to be insufficient to support its laches defense.[FN3] The court likewise finds the prejudice identified by defendant insufficient to warrant deviating from the general rule regarding prejudgment interest. Plaintiff's request for prejudgment interest is therefore granted.

> FN3. Cord is' Post-Trial Brief Regarding Injunctive Relief, Enhanced Damages and Prejudgment Interest at 23. *See also* Order at 4-5 (Doc. No. 339).

**\*2** The rate of interest and whether to compound it are matters for the court's discretion. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed.Ci.1986), *cert. denied,*482 U.S. 915 (1987). Plaintiff contends the appropriate rate is the prime rate plus two percent, compounded annually. In contrast, defendant proposes using the three-month or one-year United States Treasury Bill rate. *See* Declaration of Kathleen M. Kedrowski at ¶ 5, Exhibit 30 to Declaration of Kelsey I. Nix in Support of Cord is' Opposition to Dr. Voda's Motions (Doc. No. 359). Defendant argues this rate " is the proper rate ... because the damage award is not subject to any investment risk during the waiting period." *Id.* Defendant's argument is based on a misapprehension of the economic policy for prejudgment interest. It is not, as defendant argues, to compensate plaintiff for the risk of default by defendant; rather, the purpose of prejudgment interest is to make plaintiff whole by compensating him for the loss of use of the money owed him. *Bio-Rad Laboratories, Inc.,* 807 F.2d at 969. The court finds that neither rate suggested by the parties fulfills this purpose; plaintiff's suggested rate is too high and defendant's too low. The court concludes the appropriate rate is the prime rate, compounded annually. This results in a total prejudgment interest award of $489,375.[FN4]

> FN4. This represents the total prejudgment interest for the '213 patent for the period July 4, 2000 through May 15, 2006. The court's calculation of the yearly totals for the '213 patent are: 2000-0; 2001-$19,388.29; 2002-$35,865.66; 2003-$55,085.63; 2004-$89,068.63; 2005-$176,334.73; 2006-$113,631.94. The total prejudgment interest for the '625 patent is $185,323.91 (2002-0; 2003-$11,988.58; 2004-$32,459.54; 2005-$82,440.35; 2006-$58,435.44). The total prejudgment interest for the '195 patent is $80,477.98 (2003-0; 2004-$3,302.96; 2005-$39,844.47; 2006-$37,330.55).

*Enhanced Damages*

The Patent Act permits the court to award enhanced damages of " up to three times the amount found or assessed." 35 U.S.C. § 284. Whether to award such damages is two-step process. " First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996). The jury's determination that defendant's infringement was willful satisfies the first requirement. A finding that infringement was willful does not, however, mandate an award of enhanced damages. *Id.* at 1573.Whether to increase damages, and to what extent, is left to the sound discretion of the court. In exercising that discretion, the court is guided by the factors enunciated by the Federal Circuit in *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992).

Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased. They include: " (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;" (4) " defendant's size and financial condition;" (5) " closeness of the case;" (6) " duration of defendant's misconduct;" (7) " remedial action by the defendant;" (8) " defendant's motivation for harm;" and (9) " whether defendant attempted to conceal its misconduct."

**\*3** *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed.Cir.2006) (quoting *Read Corp.,* 970 F.2d at 826-27).

Based on the totality of the circumstances, the court concludes plaintiff's damages should be increased, but not trebled. In reaching this conclusion, the court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)

**(Cite as: Not Reported in F.Supp.2d)**

finds factors 1, 2, 4, and 7 weigh in favor of increasing damages. First, plaintiff presented evidence that defendant consciously copied his design and ideas. Although defendant vigorously disputed this notion, a finding of conscious copying is inherent in the jury's finding of willfulness. At trial the jury was specifically instructed:

Other factors you may consider in determining wilfulness are whether, in designing the product accused of infringement, Cordis copies the disclosures of Dr. Voda's patents, or whether Cordis instead tried to "design around" the patents by designing a product that Cordis believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Cordis attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that the infringement was not willful.

Court's Instructions to the Jury at 47 (Doc. No. 335). Also implicit in this finding is a rejection of defendant's argument that it attempted to design around plaintiff's claims. Thus, the court finds defendant did not take any remedial actions; moreover, defendant has indicated it will continue to produce and market the infringing devices without change even after the jury verdict.[FN5] Likewise, in making its willfulness finding, the jury rejected defendant's advice of counsel defense. At trial, defendant presented evidence that it sought and obtained opinion letters from both in-house and outside counsel with respect to the patents-in-suit. Plaintiff countered this evidence by questioning the timing of the requests, the thoroughness of the information defendant provided to counsel, and the independence of counsel. The jury was then instructed:

> FN5. *See* Exhibit PX400 to Consolidated Appendix in Support of Dr. Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest.

In evaluating Cordis' reliance on the advice of a lawyer, you should consider when Cordis obtained the advice, the quality of the information Cordis provided to the lawyer, the competence of the lawyer's opinion, and whether Cordis relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity, enforceability and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

*Id.* Defendant's lengthy post-trial argument that it did in fact rely on competent legal advice is misplaced, as it asks the court to reweigh an issue decided by the jury. The court, however, does not have discretion to do so at this time; it may not disregard the jury's willfulness finding and the findings implicit therein. *See Jurgens,* 80 F.3d at 1572. Finally, the fact that defendant is "a large company with extensive financial means"[FN6] is another factor that justifies increasing the damages award.

> FN6.*Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354, 1371 (Fed.Cir.2004).

**\*4** On the other hand, the other *Read* factors are either neutral or do not support an award of enhanced damages. For example, factor 6, the duration of defendant's misconduct, cuts both ways. Although defendant has been manufacturing infringing devices for years, plaintiff also waited years to challenge defendant's infringement. While the court found plaintiff's delay was not sufficient to establish laches or to prevent plaintiff from receiving prejudgment interest, it is a factor the court considers in determining the amount any enhancement. Factor 5 also is neutral. Although the jury's relatively quick deliberation might indicate the issues that remained for decision were not close, other issues-including literal infringement-were decided adversely to plaintiff prior to trial. Contrary to plaintiff's assertions, factors 3, 8, and 9 do not support enhancement. The court finds there is no evidence of litigation misconduct by defendant, nor has plaintiff demonstrated any intent by defendant to harm him. Hyperbole in marketing documents does not indicate intent to harm; moreover, any harm would have been directed at plaintiff's licensee, Scimed, not plaintiff. Also, there is no evidence defendant sought to conceal its activities. These factors, however, do not outweigh defendant's conscious copying, lack of good-faith belief that it was not infringing, and failure to take remedial action.

Based on the totality of the circumstances, the court finds trebling plaintiff's damages is not warranted. The court, however, exercises its discretion to double the infringement damages. Plaintiff is thus awarded compensatory damages of $3,803,094 through May

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-01110-RLH-GWF     Document 57-28     Filed 09/27/2007     Page 5 of 7

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Not Reported in F.Supp.2d)

15, 2006,[FN7] together with prejudgment interest in the amount of $489,375, and enhanced damages of $3,803,094, for a total award of $8,095,563.

> FN7. *See* Joint Stipulation Regarding Compensatory Damages at 1.

*Attorney's Fees*

Section 285 provides the court " in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As with enhanced damages, the decision to award attorney's fees involves two steps. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998). First, the court must determine whether the action constitutes an exceptional case. " As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." *Jurgens,* 80 F.3d at 1573 n. 4. Based on the analysis enunciated above, the court finds this is an exceptional case warranting an award of attorney's fees. Specifically, the jury's implicit findings that defendant consciously copied plaintiff's design and did not have a good faith belief as to infringement and validity provide the requisite degree of bad faith necessary to support finding this case exceptional.[FN8]

> FN8. " A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement...." *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005).

Having concluded the case is exceptional, the court also determines that an award of fees is appropriate. Defendant does not dispute the hours expended by plaintiff's attorneys or the reasonableness of the rates charged by plaintiff's attorneys. Defendant does, however, ask the court to impose two limits on any fee award. First, it argues plaintiff's contingent fee contract with his attorneys " sets the maximum amount the court can award." Cordis' Opposition to Voda's Motion for Attorneys' Fees at 15 (Doc. No. 380). Second, it contends local attorney billing rates should be used to calculate the lodestar figure.*Id.* at 17-18.

**\*5** Defendant's first argument is not only without merit, given the court's award of enhanced damages, it is moot.[FN9]The cases cited by defendant in support of this contention are inapposite as they concern fees sought pursuant to Florida's fee-shifting statute. The court also rejects defendant's second argument. Although local hourly rates should be used to calculate fees in the normal case, patent litigation is a specialized practice with a national bar. Defendant does not contest that " the rates usually charged by Voda's national counsel may be reasonable for the Atlanta market" . Cord is' Opposition to Voda's Motion for Attorneys' Fees at 17. The court's independent examination of those rates confirms they are objectively reasonable for the national patent bar. Therefore, the court calculates the lodestar figure by multiplying the rates normally charged by plaintiff's Atlanta and Oklahoma City attorneys by the hours expended. This results in an attorney's fee award of $2,133,086.25.[FN10] The court finds no reason to increase this award based on any of the factors enunciated in *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983). As defendant does not contest plaintiff's request for litigation expenses, the court awards plaintiff litigation expenses of $68,053.21, making the total fee award $2,201,139.46.

> FN9. In response to Cordis' Motion to Compel Dr. Voda to Produce his Contingency Fee Agreement (Doc. No. 367), plaintiff provided a copy of the contingency fee contract for the court to review *in camera.*The court denied defendant's motion to compel, finding the contract was not relevant since defendant did not challenge the reasonableness of either the rates charged by plaintiff's attorneys or the hours expended. Order at 2 (Doc. No. 377). Nonetheless, in the interest of full disclosure, the court notes plaintiff's contingent fee contract provided plaintiff would pay 45 percent of the recovery received after trial or after the filing of a notice of appeal. Forty-five percent of the damages awarded by the court, including prejudgment interest, equals $3,643,003.35, a sum that is significantly larger than the amount sought by plaintiff in his Motion for Attorneys' Fees.

> FN10. Plaintiff's motion sought an award of $2,133,086.20. The supporting documentation, however, reflects a fee request of $2,133,086.25 ($1,708,842.25 $424,244.00). Exhibits PX 427 and PX 428 to Supplemental Appendix to Dr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 5
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest (4) Plaintiff's Motion for Attorneys' Fees (Doc. No. 366).

*Injunctive Relief*

Plaintiff requests a permanent injunction barring defendant, " its officers, agents servants, directors, employees and all those in active concert or participation with them ... from infringing, inducing the infringement of, and contributorily infringing any one or more claims" of the patents-in-suit. Attachment to Brief in Support of Plaintiff's Request for Permanent Injunction at 1 (Doc. No. 350). The Patent Act permits the court to " grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The United States Supreme Court recently confirmed that permanent injunctions in patent cases should not automatically follow a finding of infringement; rather, requests for permanent injunctions in such cases are governed by the same four-factor test that applies to injunctive relief in general. eBay Inc. v. MercExchange, L.L.C., 126 S.Ct. 1837, 1839-40 (2006).

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839.

As plaintiff has failed to demonstrate either irreparable injury or that monetary damages are inadequate, the court denies his request for a permanent injunction.[FN11] Plaintiff argues irreparable harm is presumed whenever validity and continuing infringement have been established. Brief in Support of Plaintiff's Request for Permanent Injunction at 5 (Doc. No. 350). This argument, however, runs afoul of the court's reasoning in *eBay* where the Court clearly held the right to exclude does not, standing alone, justify a general rule in favor of injunctive relief. eBay Inc., 126 S.Ct. at 1840. Moreover, other than the presumption of irreparable harm, plaintiff identifies no harm to himself; rather, he relies on alleged harm to a non-party, Scimed.[FN12] *See* Brief in Support of Plaintiff's Request for Permanent Injunction at 6-12. The court concurs with defendant that such harm is irrelevant because Scimed elected not to sue to enforce the patent rights. As patents have " the attributes of personal property" [FN13], the person seeking a permanent injunction must demonstrate harm from infringement of those rights that is personal as well.

> FN11. The court therefore need not address defendant's assertions that plaintiff did not timely seek injunctive relief or that the relief requested is not sufficiently limited or specific to comply with Fed.R.Civ.P. 65(d).

> FN12. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Brief (Doc. No. 363) is denied. In accordance with defendant's request, the court reserved the issue of injunctive relief until after the jury returned its verdict. Order at 3 (Doc. No. 311). Plaintiff's post-trial submission of the Lundeen Declaration is in accord with that ruling.

> FN13. *eBay Inc.,* 126 S.Ct. at 1840.

**\*6** The court also finds plaintiff has not established that monetary damages are inadequate to compensate him. Plaintiff argues he granted Scimed an exclusive license to his patented inventions and defendant's continuing infringement will damage his relationship with Scimed. This argument, however, is simply the other side of the right-to-exclude coin and is not sufficient to justify granting injunctive relief. Plaintiff's request for a permanent injunction is therefore denied.

*Post-Verdict Infringement*

As the court has declined to issue a permanent injunction and defendant has indicated it will continue to infringe the patents-in-suit, the court must fashion a remedy for the continuing harm to plaintiff. Plaintiff suggests severing his action for monetary damages for post-verdict infringement. In addition,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)

**(Cite as: Not Reported in F.Supp.2d)**

plaintiff asks the court to order defendant to file quarterly reports of sales and to establish an interest-bearing escrow account into which defendant would pay the royalty rate assessed by the jury. The court sees no reason for severance of a cause of action for the post-verdict damages as there would be no issues for decision except simple mathematical calculations based on defendant's sales. The court therefore denies plaintiff's motion for severance. The court, however, concludes that quarterly reporting by defendant is reasonable. The reports shall be filed beginning September 15, 2006 and every three months thereafter until final resolution of this action. Defendant may file the reports under seal without seeking leave of court to do so. Given defendant's size and financial stability, the court will not order defendant to pay the royalty funds into an interest-bearing escrow account. Defendant is cautioned, however, that absent establishment of an escrow account, prejudgment interest will accrue on any post-verdict infringement damages.

*Conclusion*

In sum, plaintiff's requests for prejudgment interest and enhanced damages are GRANTED to the extent noted above. Plaintiff's request for a permanent injunction is DENIED. Plaintiff's Motion for Entry of Judgment, Severance of Continuing Causes of Action for Post-Verdict Infringement, and Establishment of Reporting and Escrow Requirement (Doc. No. 353) is GRANTED in part and DENIED in part. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Briefs (Doc. No. 363) is DENIED. Plaintiff's Motion for Attorneys' Fees (Doc. No. 365) is GRANTED. Judgment in accordance with this Order, the parties' stipulation, and the jury's verdict will issue according.

It is so ordered this 5th day of September, 2006.

W.D.Okla.,2006.
Voda v. Cordis Corp.
Not Reported in F.Supp.2d, 2006 WL 2570614 (W.D.Okla.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.