Charles McCrea (NV State Bar No. 104)
**LIONEL SAWYER & COLLINS**
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Tel 702.383.8981
Fax 702.383.8845
cmccrea@lionelsawyer.com

James D. Nguyen (CA State Bar No. 179370)
Victor de Gyarfas (CA State Bar No. 171950)
Uleses C. Henderson, Jr. (CA State Bar No. 225246)
*Pro Hac Vice Applications To Be Submitted*
**FOLEY & LARDNER LLP**
2029 Century Park East, 35th Floor
Los Angeles, California 90067-3021
Tel:  310-277-2223; Fax: 310-557-8475
jnguyen@foley.com
vdegyarfas@foley.com
uhenderson@foley.com

Attorneys for Specially Appearing Defendants
**BODOG ENTERTAINMENT GROUP S.A.,** and erroneously
named Specially Appearing Defendants **BODOG.NET** and
**BODOG.COM**

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| **1ST TECHNOLOGY LLC**, <br><br><br> Plaintiff, <br><br><br> vs. <br><br> **RATIONAL ENTERPRISES LTDA., RATIONAL POKER SCHOOL LIMITED, BODOG ENTERTAINMENT GROUP S.A., BODOG.NET, BODOG.COM, AND FUTUREBET SYSTEMS LTD.,** <br><br><br> Defendants. | Case No:  2:06-cv-1110-RLH-GWF <br><br> **SPECIALLY APPEARING DEFENDANTS BODOG ENTERTAINMENT GROUP S.A. AND ERRONEOUSLY NAMED SPECIALLY APPEARING DEFENDANTS BODOG.NET AND BODOG.COM'S REPLY TO PLAINTIFF'S  OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date:  October 11, 2007** <br>**Time/Dept.:     9:00a.m., Rm. 6C** |

I.    I.    **INTRODUCTION**

Specially appearing Defendants Bodog Entertainment Group S.A.,[1] Bodog.net, and Bodog.com, (collectively "Defendants")[2] challenge jurisdiction and Reply to Plaintiff's Opposition to the Motion to Set Aside the Default Judgment.

Plaintiff's Opposition papers establish that both parties agree that a default and default judgment may be set aside for good cause when: (1) there is an adequate explanation for why the default was entered improperly; (2) the opposing party will not be unfairly prejudiced; (3) when meritorious defenses exist; or (4) the amount of money involved so warrants.  (Opp. 7:23-8:8). Defendants satisfy all of these factors.

First, there are a number of explanations as to why the default was entered improperly. Plaintiff did not properly serve the complaint.  Plaintiff acknowledges that proper service in Costa Rica requires the server to obtain the signature of the individual served or provide an explanation of why the signature was not obtained.  Plaintiff failed to provide the required signature or explanation.  Neither did Plaintiff adequately inform counsel of the suit.  Further, even if the summons and complaint could be deemed served, this Court does not have jurisdiction over Defendants.

Second, Plaintiff cannot establish that it would be unfairly prejudiced if the case were to proceed on the merits.

Third, Defendants have meritorious defenses.  The only claim identified by Plaintiff in the complaint as being infringed is poorly drafted and appears impossible for Defendants to infringe.

---

[1] Referred to herein as Bodog Entertainment or Bodog Entertainment Group, S.A.

[2] Improperly named Bodog.com and Bodog.net are not entities.  They are merely domain names and the Court has no in rem jurisdiction over them because they are not registered in Nevada.

1

Fourth, the default judgment in this case involves an enormous amount of money – over $40 Million. Under the circumstances, it would be unfair to allow Plaintiff to attempt to proceed on a default judgment of over $40 Million and the default judgment should be set aside.

In light of these and other reasons previously set forth in Defendants' motion, Defendants respectfully asks that this Court set aside the default judgment entered in this action.

## II.    THE DEFAULT JUDGMENT SHOULD BE SET ASIDE

### A.    There Are Numerous Explanations As To Why The Default Was Entered Improperly

#### 1.    Plaintiff's Evidence Confirms that Defendants Were Not Properly Served

##### a.    *Costa Rican law requires that the served party sign the affidavit of service*

By its own evidence, Plaintiff confirms that its attempted service of process on the Defendants was defective. The translated excerpt of Article 7 of the Service Laws of Costa Rica supplied by Plaintiff in its opposition papers proves that Plaintiff's attempted service on the Defendants did not comply with the Service Laws of Costa Rica. (See Opp., Ex. 11 at Ex. B). While Plaintiff would like the Court to believe that service on a corporation in Costa Rica is effective by merely serving "any person that appears to be older than fifteen years old who is present where service should be effected," the laws of Costa Rica require more. (See Opp., Ex. 11, ¶ 4) Namely, Article 7 further requires:

The delivery will be recorded together with the name of the person who received the copies of the summons, who will sign next to the Process Server that performed the service. If the person who received the service does not know how, does not want or cannot sign, then Server is responsible to record this situation.

(Opp., Ex. 11 at Ex. B).

In the present case, the affidavits of Allan Vargas (the "Vargas Declaration"), the process server who allegedly served Ana Victoria Mora Flores ("Ms. Mora") with the Complaint in this action, do not contain the signature of Ms. Mora or any other person. (See Opp., Ex. 5). To that

2

end, Plaintiff does not allege that Ms. Mora could not or would not accept service on behalf of the Defendants. To the contrary, Plaintiff alleges that Ms. Mora "represented to the process server that she was in charge;" however, Mr. Vargas did not seek more clarity as to Ms. Mora's title or authority to accept service on behalf of the Defendants, and more importantly, did not require Ms. Mora to sign the affidavsits. (See Opp., Ex. 5). It is clear from the evidence that Defendants were not properly served in this action. Even if Plaintiff were to argue, which Plaintiff does not, that Ms. Mora failed to cooperate with the process server, Mr. Vargas would have been required to "record the situation." (See Opp., Ex. 11 at Ex. B). However, Plaintiff has no explanation for Mr. Vargas' failure to obtain the signature of the person who allegedly accepted service on behalf of the Defendants. Plaintiff has no explanation because Ms. Mora was not served.

As such, the evidence presented by Plaintiff affirms that Plaintiff's attempted service on the Defendants did not comply with the Service Laws of Costa Rica, as required under Rule 4.

> **b.**    *The evidence makes clear that Ms. Mora was never served*

The evidence presented by both parties establish that: (1) Ms. Mora stated (under oath) that she was never served with the Complaint in this action; (2) the affidavits of service of process presented by Plaintiff (i.e., the Vargas Declarations) are defective under the service laws of Costa Rica because they do not contain (a) the signature of the person allegedly served with the process, or (b) an explanation why such signature was not obtained by the process server; (3) the description of the person allegedly served with the Complaint (according to the Vargas Declarations) does not match the description of Ms. Mora; and (4) had Ms. Mora accepted service of the Complaint in this action, she would have been required to obtain management approval before accepting service. Based on this evidence, it is clear that Ms. Mora was never served in this action.[3] Plaintiff merely relies on the self-serving declaration Mr. Vargas to

---

[3] In its opposition, Plaintiff submits a document that states that Ms. Mora was a "fiscal" of Bodog Entertainment; this document does not prove that Ms. Mora was not an administrative assistant and it certainly does not prove that she had any authority to accept service on behalf of

3

1   establish that Ms. Mora was served.  However, Plaintiff has not provided an explanation for its

2   failure to obtain the signature of the person who allegedly accepted service on behalf of the

3   Defendants in this action.

4        Turning now to the Vargas Declaration,  Plaintiff even admits that the Vargas Declaration

5   was vague and describes the person allegedly served as being 38 years of age and weighing

6   "80";[4] the affidavit conveniently fails to specify the person's weight in pounds or kilograms.

7   (See Opp., p. 10, n. 3; Ex. 5 and 6).  The evidence clearly establishes that Ms. Mora was 27 years

8   of age and weighed approximately 150 pounds (or approximately 68 kilograms) at the time of

9   the attempted service.  (See Mora Decl. ¶ 4).  Indeed, Ms. Mora's Costa Rican identification card

10  proves that Ms. Mora is currently 28 years of age  (i.e., she was born in 1979) and does not look

11  like a nearly 40 year old woman.  (See Mora Decl. ¶ 4, Ex. A).  In the same way, there is a

12  noticeable difference in the physical appearance of a person weighing 150 pounds, from a person

13  weighing 175 pounds; this is a 25 pounds difference.  Thus, the most plausible explanation for

14  the obvious discrepancy in the description of Ms. Mora is that she was never served by Mr.

15  Vargas and he either (1) tried to effect service on a receptionist who may have identified Ms.

16  Mora as being "in charge" of office support, or (2) simply listed the characteristics in which he

17  believed the average Costa Rican office supervisor possessed.

18       Lastly, in its opposition, Plaintiff cites several cases to support its claim that service on

19  the administrative staff of a corporation is adequate.  However, these cases are not applicable

20  here because: (1) the parties did not dispute that a staff member was served; (2) there was

21  evidence that the staff member told the process server that it could accept service on behalf of

22

23  Bodog Entertainment.  To the contrary, Plaintiff has not presented any evidence that proves that
    Ms. Mora had proper authority to accept service on behalf of Bodog Entertainment, and even if

24  Plaintiff had such evidence, this fact would not cure Plaintiff's defective service on the

25  Defendants.

26       [4] Plaintiff argues that Costa Rica follows the metric system so the weight of "80" was

27  intended to mean 80 kilograms.  However, the process server does not describe the height of the
    person allegedly served in meters, but in the English system (i.e., inches).

28                                      4

1  the corporation; and (3) after serving the staff member, the plaintiff mailed a copy of the

2  summons and complaint to an officer of the corporation.[5]  To the contrary, in the present action:

3  (1) Defendants refute that Ms. Mora was served with the Complaint; (2) Ms. Mora did not have

4  proper authority to accept service for Bodog Entertainment, so she would not have told Mr.

5  Vargas that she could accept service on behalf of Bodog Entertainment; and (3) after its

6  attempted service, Plaintiff provides no evidence that it attempted to mail a copy of the

7  complaint to the Defendants' corporate offices.[6]  Thus, the authority cited by Plaintiff is not

8  persuasive.

9          2.       This Court Lacks General or Specific Jurisdiction Over the Defendants

10         For a court to exercise in personam jurisdiction over a defendant, two things must occur.

11  First, the defendant must be served with process sufficient to give notice that a court is seeking to

12  assert personal jurisdiction over it, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306,

13  314–16 (1950), and, second, the plaintiff must show that the defendant has sufficiently

14  meaningful contacts with the forum state that a court's assertion of jurisdiction over the

15  defendant does not offend fundamental notions of fairness or due process.  See Burger King

16  Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (due process clause protects corporation from

17  "being subject to the binding judgments of a forum with which it has established no meaningful

18  'contacts, ties, or relations.'").  Plaintiff's purported assertion of jurisdiction over Defendants

19  here fails on both counts.  As established above, Defendants were not properly served in this

20

21

22          [5] In fact, and consistent with Plaintiff's practice of misstating the law, in one of the cases
23  cited by Plaintiff, Battie v. Freeman Decorating, 2001 WL 1345927 (E.D. La 2001), the court
    actually found that plaintiff's attempted service of a summons on the front desk of a company
24  was ineffective.

           [6] Plaintiff's counsel claims that he spoke to, and left his contact information with, an
25  anonymous "Bodog supervisor" prior to Plaintiff's attempted service of the Complaint.  (See
    Opp., Ex. 8).  It would have been prudent for Plaintiff's counsel  to (1) have gotten the
26  supervisor's name and contact information, and (2) follow-up with that supervisor, or mail the
27  Complaint to the supervisor after the Complaint was served to ensure that service was effective.

28                                                    5

1    action.  In addition to Plaintiff's failed service, this Court lacks general and specific jurisdiction

2    over the Defendants.

3               *a.*      *This court lacks general in personam jurisdiction over defendants*

4          Plaintiff bears the burden of both adequately alleging and proving personal jurisdiction

5    over Defendants.  <u>Trump v. District Court</u>, 857 P.2d 740, 748 (Nev. 1993) (holding that plaintiff

6    bears burden of producing some evidence in support of all facts necessary to establish personal

7    jurisdiction).  Plaintiff cannot seriously contend that the Court has general jurisdiction over

8    Defendants.  A court cannot exercise general jurisdiction over a non-resident defendant unless

9    the defendant's forum activities are so "substantial or continuous and systematic" that it may be

10   deemed present in the forum."  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S.

11   408, 416 (1984); <u>Freeman v. District Court,</u> 1 P.3d 963, 965 (Nev. 2000) (<u>citing</u> <u>Budget Rent-A-</u>

12   <u>Car v. District Court</u>, 835 P.2d 17, 19 (Nev. 1992)).

13         Plaintiff has not shown that Defendants have extensive in-state contacts with Nevada or

14   that they conduct <u>any</u> activities within the state – let alone substantial and continuous activities.[7]

15   <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1108 (9th Cir. 2002) ("Where a defendant brings a

16   motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

17   demonstrating that jurisdiction is appropriate."); <u>Amba Mktg. Sys. Inc. v. Jobar Int'l Inc.</u>, 551

18   F.2d 784, 787 (9th Cir. 1977) (stating that plaintiff cannot "simply rest on the bare allegations of

19   its complaint . . . .").  Plaintiff has not met its burden and this Court has no general <u>in</u> <u>personam</u>

20   jurisdiction over Defendant.

21              *b.*      *This court lacks specific in personam jurisdiction over defendants*

22

23

24        [7] This is so because Bodog Entertainment Group, S.A. does not itself provide online

25   entertainment services.  It merely provided technical services, including domain name
     management, for various entities, including but not limited to entities that use the BODOG mark

26   and variations thereof to provide various online entertainment services.  Further, Bodog
     Entertainment does not operate any websites; it merely administered domain names, including

27   erroneously named defendants bodog.com and bodog.net, for other businesses.

28

1      Under Nevada law, specific jurisdiction is appropriate only where "the cause of action

2   arises from the defendant's contacts with the forum." <u>Zuffa, LLC v. Showtime Networks, Inc.</u>,

3   2007 U.S. Dist. LEXIS 60711, at *21 (D. Nev. 2007); <u>Price and Sons v. District Court</u>, 831 P.2d

4   600, 602 (Nev. 1992).  Exercise of specific jurisdiction is only appropriate if the Due Process

5   Clause is satisfied and the defendant's activities fall within those activities enumerated in

6   Nevada's long-arm statute.[8]   <u>See</u> <u>Trump</u>, 857 P.2d at 748.  Here, the exercise of specific

7   jurisdiction is improper because Plaintiff has not alleged, nor can it prove, that Defendants have

8   purposefully availed themselves of the benefits and protections of Nevada law.

9      This Court should not grant Plaintiff's requested injunction because Defendants have no

10  meaningful contacts with the State of Nevada.  The Due Process Clause protects a corporation

11  from "being subject to the binding judgments of a forum with which [it] has established no

12  meaningful 'contacts, ties, or relations.'"   <u>Burger King Corp.</u>, 471 U.S. at 472 (citing

13  <u>International Shoe Co. v. Washington</u>, 362 U.S. 310, 319 (1945)).  The Constitution requires

14  meaningful contacts to ensure that a corporation can predictably determine when its conduct in a

15  state rises to the level that it "should reasonably anticipate being haled into court there." <u>World-</u>

16  <u>Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  These requirements are not

17  met unless the defendant has "purposefully availed" itself of "the benefits and protections of [the

18  forum state's] laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  This occurs when a foreign

19  corporation "creat[es] continuing relationships and obligations with citizens of another state."

20  <u>Travelers Health Assn. v. Virginia</u>, 339 U.S. 643, 647 (1950).

21     This Court has no specific jurisdiction over Defendants because they have not

22  purposefully availed themselves of the benefits and protections of Nevada laws.  Plaintiff has not

---

[8]  Nevada's long-arm statute provides six bases for the exercise of jurisdiction, none of which are applicable here: <u>See</u> NRS § 14.065.  This statute is meant to be coextensive with the limits of federal due process inasmuch as it authorizes Nevada courts to exercise jurisdiction "over a party to a civil action on any basis not inconsistent with . . . the Constitution of the United States." <u>Id.</u>

1    alleged any contacts, let alone any meaningful contacts.  Having not cultivated any contacts with

2    the State of Nevada, the Due Process Clause protects Defendants from being haled into Nevada's

3    courts because Defendants could not have reasonably anticipated being subject to the State's

4    jurisdiction.

5        As an initial matter, Bodog.com and Bodog.net are not entities.  They are merely domain

6    names, over which this Court has no personal jurisdiction.  Nor could this Court have <u>in rem</u>

7    jurisdiction over them because those domain names are not registered in the State of Nevada (but

8    instead in the State of Washington).

9        As for the only named entity, Bodog Entertainment Group, S.A., the only conceivable

10   basis upon which Plaintiff could argue that it has meaningful contacts with Nevada is through its

11   registration of domain names and mere maintenance of websites that are accessible in Nevada.

12   However, these contacts are insufficient for two reasons: First, courts that have been called on to

13   consider the jurisdictional implications of domain-name registration have held that, at most, the

14   registration of domain names within a state permits a court therein to exercise <u>in rem</u> jurisdiction

15   over the domain names, not <u>in personam</u> jurisdiction over the out-of-state company.  <u>See</u>

16   <u>America Online, Inc. v. Aol.org</u>, 259 F. Supp. 2d 449, 451 (E.D. Va. 2003) (holding <u>in rem</u>

17   jurisdiction is proper over domain name registered in jurisdiction but personal jurisdiction is

18   improper where registrant has no other contacts with forum); <u>Globalsantafe Corp. v.</u>

19   <u>Globalsantafe.com</u>, 250 F. Supp. 2d 610, 615 (E.D. Va. 2003) (same).  However, these cases are

20   inapplicable to the present case because Bodog Entertainment Group, S.A. did not register its

21   domain names with Nevada registrars.

22       Second, there is no specific personal jurisdiction because internet sites using the BODOG

23   trademark (and variations thereof) might be accessible by Nevada residents.  Courts sometimes

24   apply a sliding-scale to determine whether activity over the Internet permits an assertion of

25   specific jurisdiction within a particular forum: "the likelihood that personal jurisdiction can be

26   constitutionally exercised is directly proportionate to the nature and quality of commercial

27   activity that an entity conducts over the Internet."  <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952

8

28

LACA_876632.1

F. Supp. 1119, 1124 (W.D. Pa. 1997) (outlining sliding-scale of Internet activity that ranges from "passive" to "interactive").  This argument fails in the instant case for several reasons.

First, the so-called "Zippo test" is inapplicable unless the Internet transactions being examined are themselves the basis of the cause of action.  See Zuffa, 2007 U.S. Dist. LEXIS 60711, at *20 ("[S]pecific jurisdiction over a defendant may be established only where the cause of action arises from the defendant's contacts with the forum.").  Plaintiff makes no allegation and offers no evidence regarding where the alleged infringement occurred or what transactions caused the alleged infringement.  Its underlying complaint offers only the vague and conclusory assertions that  Bodog Entertainment Group, S.A. "has previously and is presently making, using, selling, offering for sale, and/or importing into the United States, software products that infringe one or more claims" of its patent.  (See Complaint at ¶ 7, Ex. 1).  It makes the exact same allegations as to all Defendants and all are insufficient.

Second, Plaintiff makes no showing that  Bodog Entertainment Group, S.A., the only legal entity before this Court, ran any internet entertainment or other websites at any of the disputed domain names that can be accessed in Nevada or otherwise directed advertising to Nevada residents.  See Zuffa,  2007 U.S. Dist. LEXIS 60711; see also Digital Control, Inc. v. Boretronics, Inc., 161 F. Supp. 2d 1183, 1185 (W.D. Wash. 2001) (stating that unless website operator has chosen to "dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposefully directed its activities at residents in the forum state.").     For example, in *Zuffa*, the Nevada court found that "the mere existence of an interactive website is insufficient to establish general jurisdiction in the absence of proof of continuous and systematic contact between the forum state and the website."  Zuffa,  2007 U.S. Dist. LEXIS 60711, at *14.  In the instant action,  Plaintiff's vague and conclusory allegations of patent infringement is not enough to establish the Court's jurisdiction in this action.  (See Complaint at ¶ 7, Ex. 1).  Plaintiff must provide "evidence of the extent of [Defendants'] contacts through its website with the [Nevada]." *Id.*

9

1    In sum, the Due Process Clause forbids this Court from exercising specific jurisdiction

2  over any Defendant because Defendants have not purposefully availed themselves of the benefits

3  and protections of Nevada law.  Having not cultivated any meaningful contacts in the State of

4  Nevada, Defendants had no obligation to reasonably anticipate being haled into Nevada's courts.

5  The scarcity of Bodog Entertainment Group, S.A.'s  contacts with Nevada is illustrated by the

6  fact that its domain names (the Original Domain Names) were not even registered here and its

7  internet activities are unrelated to Plaintiff's underlying cause of action.

8    c.    This Court lacks in rem jurisdiction over the erroneously named

9    Defendants

10    In addition to its lack of jurisdiction over Bodog Entertainment, the only entity in this

11  action, the Court lacks jurisdiction over the erroneously named defendants Bodog.com and

12  Bodog.net, which are domain names.  In certain instances, a court may have in rem jurisdiction

13  over a domain names.  Though it is not controlling, the Anticybersquatting Consumer Protection

14  Act, 15 U.S.C. § 1125(d)(2)(C)(i)-(ii), provides persuasive guidance regarding the jurisdiction in

15  which a domain name will subject its owner to in rem jurisdiction: "In an in rem action . . . a

16  domain name shall be deemed to have its situs in the judicial district in which (i) the domain

17  name registrar, registry, or other domain name authority or registered or assigned the domain

18  name is located; or (ii) documents sufficient to establish control and authority regarding the

19  disposition of the registration and use of the domain name are deposited with the court."  The

20  ACPA thus strongly suggests an intent on the part of the United States Congress to treat domain

21  names as property existing in both the location of the registry, and the location of the registrar.

22  See Mattel v. Barbieclub.com, 310 F.3d 293, 302 (2nd Cir. 2002) ("it is the presence of the

23  domain name itself-the 'property that is the subject of the jurisdiction'-in the judicial district in

24  which the registry or registrar is located that anchors the in rem action and satisfies due process

25  and international comity."); Office Depot, Inc. v. Zuccarini,  2007 WL 2688460, at *3 (N.D. Cal.

26  2007)  (an in rem civil action against a domain name in the judicial district in which the domain

27

28

10

name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located.)

Erroneously named defendants Bodog.com and Bodog.net have no connection whatsoever to the State of Nevada. Even if these domain names had a connection to the State of Nevada, Plaintiff would still need to establish that Defendants have cultivated the minimum contacts required under the Due Process Clause. See Shaffer v. Heitner, 433 U.S. 186, 206 (1977) (extending minimum contacts requirement to exercises of in rem jurisdiction because "jurisdiction over a thing" is merely "an elliptical way of referring to jurisdiction over the interests of persons in a thing.").

3.    Plaintiff's Lawyers Misrepresent the Record And Did Not Adequately Inform Counsel Before Entering Default

To bolster Plaintiff's case, counsel for the Plaintiff misstates the record on several occasions concerning their communications with the Defendants' counsel. In particular, such inaccuracies are reflected in, among others, (1) Plaintiff's opposition brief, (2) the declaration of Plaintiff's former counsel, Matthew McAndrews, and (3) the affidavit of Plaintiff's counsel, Troy Mr. Wallin.

a.    *Plaintiff's Opposition Brief*

In its opposition brief, Plaintiff argues that its counsel had determined that Defendants' counsel, Mr. Nguyen, "had previously represented Bodog in another patent litigation." (Opp. 5:23-25). This is not correct. In 2006, Mr. Nguyen did previously represent certain defendants (including individuals) affiliated with various Bodog television entertainment businesses in a case filed in the Superior Court of California for the County of Los Angeles, but it was not a patent infringement lawsuit. (Nguyen Decl. ¶ 3). It instead related to an "idea submission" dispute over a reality television program. (Id.). Indeed, that prior case was in California state court, and could not as a matter of law involved patent claims, which are subject to exclusive federal court jurisdiction. (Id.).

b.    *Mr. McAndrews's Declaration*

11

1    Mr. McAndrews's affidavit states that in January 2007, he attempted to contact Mr.

2    Nguyen to discuss this action, but Mr. Nguyen told him that "he was not representing any of

3    the Bodog Entities in connection with the pending litigation, that he could not help me any

4    further at that time, and that he would contact me in the future if he were retained to represent

5    any of the Bodog Entities in connection with the pending litigation." (Opp., Ex. 7, ¶¶ 3-5).

6    Mr. Nguyen does recall getting a call from someone early in 2007 purporting to represent a

7    plaintiff in a patent lawsuit filed against a Bodog entity. (Nguyen Decl. ¶ 4). However, Mr.

8    Nguyen does not recall specifically if that person was Mr. McAndrews. (Id.). When Mr.

9    Nguyen spoke with that plaintiff's lawyer, Mr. Nguyen informed him that he was not

10   representing any Bodog entities in the patent lawsuit he referenced. (Id.). That was in fact

11   true at the time, because Mr. Nguyen and Foley & Lardner LLP had never previously done

12   any patent-related work for any Bodog business and had never previously defended any patent

13   litigation for any Bodog business. (Id.). Thus, at that time when Mr. Nguyen received a

14   telephone call about a patent lawsuit against certain Bodog entities, Mr. Nguyen did not

15   represent nor was he authorized or engaged to represent, any Bodog businesses in connection

16   with patent litigation. (Id.). Foley & Lardner and Mr. Nguyen have only begun to represent

17   Bodog Entertainment Group, S.A. in connection with this patent infringement litigation after

18   the Defendants recently learned about Plaintiff's efforts to execute on the default judgment

19   obtained in this case. (Id.).

20              c.    *Mr. Wallin's Affidavit*

21   Mr. Wallin's affidavit, in particular, contains various inaccuracies. As an initial matter,

22   Defendants' counsel called Mr. Wallin on September 11, 2007 to discuss possible resolution of

23   this case. (Nguyen Decl. ¶ 5). Defendants' counsel specifically began the conversation by

24   telling Mr. Wallin that he wanted to discuss possible resolution, and asked him whether the

25   conversation would be treated as confidential pursuant to applicable settlement privileges. (Id.).

26   Mr. Wallin agreed. (Id.). Thus, all the of statements made to Mr. Wallin during the September

27   11 conversation were done in furtherance of settlement discussion. (Id.). The affidavits

28

12

submitted by Mr. Wallin to this Court purporting to summarize statements made during that conversation are in breach of the settlement privilege and the expectation of confidentiality Defendants' counsel had in his settlement conversation with Mr. Wallin.

Contrary to the statements made in paragraph 2 of Mr. Wallin's affidavit (See Opp., Ex. 12, ¶ 2), Mr. Nguyen did **not** tell Mr. Wallin that "Bodog Entities intended to use their sovereign immunity [of the Mohawk Indians in Canada] as a shield to prevent Plaintiff from pursuing their claims in the instance litigation." (Nguyen Decl. ¶ 6). Mr. Nguyen merely told Mr. Wallin that the Bodog gaming business had recently announced (via a press release) that its North American gaming business was being licensed to the Morris Mohawk Gaming Group in Canada. (Id.). Such a license arrangement had been in the works for a long time and even members of the gaming media previously knew about it -- **before** the Bodog businesses learned of Plaintiff's default judgment and the seizure of numerous domain names. (Id.). Mr. Nguyen explained to Mr. Wallin that the Bodog gaming business would now be operated by the Morris Mohawk Gaming Group, that Plaintiff would ultimately have to litigate its patent claims with the Morris Mohawk Gaming Group (not with any Bodog entity), and that the Morris Mohawk Gaming Group was sovereign. (Id.). Mr. Wallin was never told that it was any of the Bodog Entities who intended to use the sovereign immunity of the Morris Mohawk Gaming Group to prevent Plaintiff from pursuing its claims. (Id.).

Similarly, the statements made in paragraph 4 of Mr. Wallin's declaration are also false. (See Opp., Ex. 12, ¶ 4). Mr. Nguyen did not tell Mr. Wallin that "Bodog believed it had already left U.S. jurisdiction by strategically aligning itself and/or joint venturing with the Mohawk Indians in Canada, thereby avoiding any possibility of collection." (Nguyen Decl. ¶ 7, Ex. 5). Defendants' counsel did not, and in fact would not, have made such a statement because – as is clear from Defendants' briefs in this case and in the Washington state court action initiated by Plaintiff to execute on its default judgment – Defendants are arguing that they are **not** and have not been subject to U.S. jurisdiction. (Id.). So it would not have made any sense for Defendants' counsel to say that Bodog "had already left U.S. jurisdiction" –

13

LACA_876632.1

such as by entering into a deal with the Morris Mohawk Gaming Group -- and Nr. Nguyen never made that statement.  (Id.).  Nor did Defendants' counsel ever state, as Mr. Wallin implies, that any Bodog business entered into the license arrangement with the Morris Mohawk Gaming Group for the purposes of "avoiding any possibility of collection."  (Id.). As explained above, Defendants' counsel told Mr. Wallin that the license arrangement with the Morris Mohawk Gaming Group had already been in the works for some time before the Bodog businesses became aware of Plaintiff's default judgment.  (Id.).

**B.    Plaintiff Would Suffer No Unfair Prejudice If The Case Proceeded On The Merits**

As explained in McMillen v. J.C. Penney Co., Inc., 205 F.R.D. 557, 558 (D. Nev. 2002), a default judgment should be set aside when a Plaintiff will not be unfairly prejudiced.  Here, Plaintiff will not be unfairly prejudiced if the case is litigated on its merits and Plaintiff has not even tried to demonstrate evidentiary or financial prejudice.  Plaintiff has not spent months of time and hundreds of thousands of dollars preparing for trial.  Plaintiff has not made any showing that memories have faded or witnesses have died since the time the default was entered. Especially given the exorbitant amount of the $40+ Million default judgment Plaintiff sought, the Plaintiff would receive an unwarranted windfall and Defendants would be unfairly prejudiced if the default and default judgment were not set aside.  Accordingly, the Court should grant the motion to set aside the default and default judgment.

**C.    Defendants Have Meritorious Defenses Against The Patent Infringement Claim Warranting Setting Aside The Default Judgment**

Both parties acknowledge that the existence of a meritorious defense may warrant setting aside a default judgment.  (Mot. 10:6-10 citing Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986) and Opp. 7:23-8:8 citing Brand Scaffold Builders, Inc. v. Puerto Rican Electric Power, 364 F. Supp. 2d 50, 54 (D. Puerto Rico 2005)).

The only cause of action in this case is one for infringement of the '001 patent.  A party may only be liable for patent infringement if it violates 35 U.S.C. § 271. To be liable under § 271

a party must make, use, offer to sell, sell, or import a patented invention, or induce infringement or contributorily infringe. As a threshold matter, the named Defendants do not provide any of the online entertainment services Plaintiff contends infringe the '001 patent. Therefore, there is no way that the named defendants could be liable for patent infringement.

Even if the named defendants did provide the online entertainment services complained of by Plaintiff, they would still not infringe Plaintiff's strange patent. To establish patent infringement, the patent owner must show that the accused infringer practices every element of the asserted claim. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001). The only claim from its patent which Plaintiff specifically alleges in the complaint as being infringed is claim 26. (See Complaint ¶ 17, Ex. 1). Claim 26, like most of the claims in the '001 patent, requires two devices. The first is an "interactive multimedia mastering system." (See '001 Patent, Ex. 2). Claim 26 also requires another device, referred to as an "interactive media device." (Id.).

Although Plaintiff has never explained in this litigation how anyone could possibly infringe this claim, presumably Plaintiff must believe that an entity provides both devices claimed. "[L]iability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." See BMC Resources v. Paymentech, L.P., Case No. 2006-1503 (Fed. Cir. Sep. 20, 2007) Slip Op. at 11, (finding no possible infringement when the claims required the actions of multiple parties) (emphasis added) (Ex. 3). See also Muniauction, Inc. v. Thomson Corporation, Case No. 2007-1485 at Slip Op. 2-3 (Fed. Cir. Sep. 28, 2007) (explaining the legal standard for joint infringement) (Ex. 5). Plaintiff has never explained how any named Defendant could possibly provide the "interactive media device," which Plaintiff would presumably contend is a consumer's computer or some other unidentified hardware.[9] Indeed, there has never been any allegation (let alone proof) that any

---

[9] Neither has Plaintiff explained how any named Defendant provides the "interactive multimedia mastering system."

15

named Defendant provides any computers or other hardware to consumers and it appears that Plaintiff would have no chance of proving infringement of claim 26 if the case were litigated on the merits.

**D.    The Enormous $40+ Million Judgment Warrants Setting Aside The Default Judgment**

As Plaintiff acknowledges, the amount of money involved may warrant setting aside a default judgment. (Opp. 7:23-28). Here, the amount of money involved is enormous and more than $40 Million. $40 Million is an huge award for a patent case or any type of case. See <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 403 (5th Cir. 1981) (setting aside a default judgment for $250,000 because, among other things, the amount of the judgment was very great); <u>ICE Co. Production W.L.L. v. C & R Refrigeration, Inc.</u>,  2005 WL 1799517 at * (E.D. Tex. 2005) (setting aside a judgment for $1.2 Million and that a sum that large weighed in favor of setting aside the judgment).  The amount of money at issue on this default judgment is much greater than in other cases in which default judgments were set aside and the gigantic default judgment in this case should not be allowed to stand when a defendant was not properly served, the Court does not have jurisdiction, the Plaintiff would not be unfairly prejudiced if the case proceeded on the merits, the defendant has meritorious defenses, or even if the defendant raises serious questions on these issues. Here, Defendants have, at a minimum raised very serious concerns on all of these issues and the default judgment should be set aside.

**E.    Plaintiff's Unclean Hands Argument Has No Merit**

Plaintiff's unclean hands argument has no merit.  In fact, Plaintiff's hands are not unblemished and, for several reasons, Plaintiff has shown bad faith and unclean hands in this action.

First, knowing that it did not properly serve the Defendants in this action, Plaintiff sought and improperly obtained a default judgment against Defendants.  Indeed, Plaintiff did not notify Defendants of the default before it was entered against the Defendants in this action.

REPLY RE MOTION TO SET ASIDE DEFAULT JUDGMENT
2:06-cv-11105-RLH-GWF

LACA_876632.1

Second, as described above, Plaintiff's counsel has, on several occasions, misstated the record in an attempt to justify Plaintiff's failure to inform Defendants of the default judgment prior to its entry.

Third, Plaintiff's counsel has, on several occasions, misled this Court by citing improper authority against Defendants. For example, in its improperly granted <u>ex parte</u> request for debtor examination of Calvin Ayre in Nevada, Plaintiff misled the Court by asserting that NRS § 21.270 entitles a judgment creditor to seek a court order requiring a judgment debtor to appear for examination "at any time and place specified in the order." (<u>See</u> Ex. 4). However, Defendants properly explained in its emergency motion to vacate the order that NRS § 21.270 requires that "[n]o judgment debtor may be required to appear outside the county in which he resides."[10] (<u>See</u> Docket #43). Second, as discussed above, in its opposition, Plaintiff attempts to mislead the court by asserting that the service laws of Costa Rica <u>only</u> require service of a person over 15 years of age who is present where service should be effected. However, as Defendants have properly explained, proper service in Costa Rica requires the server to obtain the signature of the individual served or provide an explanation of why the signature was not obtained. Plaintiff's deceptive practice of misstating the record and improperly citing authorities in this case should not go un-noticed, and should be considered in the Court's decision to lift the default judgment in this action.[11]

### F.    Retroactively Approving Service Would Be Inappropriate

Plaintiff's request that the Court retroactively approve service via alternative means makes no sense for several reasons. First, this Court has no personal jurisdiction over Defendants in this action. Second, this Court has already entered a final judgment in this action.

---

[10]   This Court ultimately stayed Plaintiff's debtor request pending the outcome of Defendants' motion to set aside default judgment. (<u>See</u> Docket #48).

[11]   Plaintiff's contentions that Defendants are engaged in illegal gambling activities is irrelevant to this motion, and in any event, Defendants do not operate the web sites at issue.

17

The cases cited by Plaintiff, <u>Rio Properties</u> and <u>SCRA Corp</u>,[12] on this issue are factually <u>inapposite</u> to this action.  In these cases, service by alternative means under Rule 4(f)(3) was ordered by the court <u>prior</u> to any final judgment.  Plaintiff cites no authority authorizing a court to retroactively approve service by alternative means to uphold a final judgment.

### G.    A Bond is Not Needed

Plaintiff's requested bond in this action is improper.  Plaintiff seeks an enormous bond, which would cover the entire judgment.  As discussed in Defendants' objections to the declaration of Dr. Lewis, the calculations Plaintiff used to determine the amount of damages are improper and not based on any accepted methodology in violation of <u>Daubert v. Merrel Dow Pharms., Inc.</u>, 509 U.S. 579, 590 (1993).  Specifically, Plaintiff failed to employ the accepted methodology of analyzing the reasonable royalty factors set forth in <u>Georgia-Pacific Corp. v. United States Plywood Corp.</u>, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Had Plaintiff bothered to do so, Plaintiff surely could not have justified its requested judgment for $40+ Million.

Plaintiff's request for a huge bond is also improper given that very little activity had taken place in the case prior to the recent filings to set aside the default and default judgment.  Plaintiff could not have incurred significant attorneys' fees and no significant bond is warranted.

Further, Defendants are not a flight risk; they are not domiciled in the United States and/or the State of Nevada.  As the Court is well aware, Defendant Bodog Entertainment Group S.A. is a Costa Rican company; Bodog Entertainment Group S.A. only held domain names with the domain name registrar, Enom, Inc., located in the State of Washington.  Erroneously named Defendants Bodog.com and Bodog.net are not entities, rather, they are domain names.  As discussed above, this Court does not have jurisdiction over the domain names because the domain names were not registered in Nevada.

---

[12] <u>SCRA Corp. v. Trajes Internacionales de Costa Rica S.A.</u>, 1999 U.S. Dist. LEXIS 13708 (D. Pa. 1999).

18

LACA_876632.1

Further, Plaintiff's bond request is flawed for at least two additional reasons. First, Bodog Entertainment Group S.A. does not operate "Bodog's" online entertainment business and simply could not provide the bond demanded by Plaintiff because Defendants simply do not have sufficient assets to post such a bond. Second, the instant action is not a criminal case where a Court may order a defendant to post a bond to prevent that person or entity from fleeing the Court's jurisdiction from a Court in which it has already established jurisdiction. This is a <u>patent action</u>, not a criminal prosecution and there is no justification for Plaintiff's outlandishly large bond request.

III.     **<u>CONCLUSION</u>**

For all the foregoing reasons, the default judgment should be set aside.

Dated: October 1, 2007              Respectfully submitted,


By:     _____/s/ Charles McCrea_____
         Charles McCrea
         **LIONEL SAWYER & COLLINS**

         Attorneys for Specially Appearing Defendants
         **BODOG ENTERTAINMENT GROUP S.A.,** and
         erroneously named Specially Appearing Defendants
         **BODOG.NET** and **BODOG.COM**

19

LACA_876632.1

# TABLE OF CONTENTS

**Page**

I.    I. INTRODUCTION .................................................................................................. 1

II.    THE DEFAULT JUDGMENT SHOULD BE SET ASIDE ...................................... 2

    A.    There Are Numerous Explanations As To Why The Default Was Entered
    Improperly .......................................................................................................... 2

        1.    Plaintiff's Evidence Confirms that Defendants Were Not Properly
        Served ..................................................................................................... 2

            a.    Costa Rican law requires that the served party sign the
            affidavit of service ....................................................................... 2

            b.    The evidence makes clear that Ms. Mora was never served .......... 3

        2.    This Court Lacks General or Specific Jurisdiction Over the
        Defendants .............................................................................................. 5

            a.    This court lacks general in personam jurisdiction over
            defendants ..................................................................................... 6

            b.    This court lacks specific in personam jurisdiction over
            defendants ..................................................................................... 6

            c.    This Court lacks in rem jurisdiction over the erroneously
            named Defendants ....................................................................... 10

        3.    Plaintiff's Lawyers Misrepresent the Record And Did Not
        Adequately Inform Counsel Before Entering Default ............................. 11

            a.    Plaintiff's Opposition Brief ......................................................... 11

            b.    Mr. McAndrews's Declaration ..................................................... 11

            c.    Mr. Wallin's Affidavit ................................................................ 12

    B.    Plaintiff Would Suffer No Unfair Prejudice If The Case Proceeded On The
    Merits ............................................................................................................... 14

    C.    Defendants Have Meritorious Defenses Against The Patent Infringement
    Claim Warranting Setting Aside The Default Judgment ...................................... 14

    D.    The Enormous $40+ Million Judgment Warrants Setting Aside The
    Default Judgment ............................................................................................. 16

    E.    Plaintiff's Unclean Hands Argument Has No Merit ............................................ 16

    F.    Retroactively Approving Service Would Be Inappropriate .................................. 17

    G.    A Bond is Not Needed ...................................................................................... 18

## TABLE OF CONTENTS (CONT.)

**Page**

**III.**    CONCLUSION...........................................................................................................19

LACA_876632.1