EXHIBIT 5

Dockets.Justia.com

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1485

MUNIAUCTION, INC.
(doing business as Grant Street Group),

Plaintiff-Appellee,

v.

THOMPSON CORPORATION (trading and doing business as
Thompson Financial LLC and Thompson Financial Municipals Group) and I-DEAL, LLC,

Defendants-Appellants.

ON MOTION

Before RADER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

O R D E R

Thompson Corporation et al. (Thompson) moves for a stay, pending appeal, of the July 31, 2007 permanent injunction of the United States District Court for the Western District of Pennsylvania. Muniauction, Inc. opposes. Thompson replies.

Muniauction brought suit against Thompson alleging willful infringement of Muniauction's apparatus and process patent for conducting municipal bond auctions over electronic networks. After trial, the jury determined that Muniacution's patent was valid and was willfully infringed by Thompson's Parity electronic bid system based on a

theory of joint infringement.

After the jury's verdict, Thompson filed a Judgment as a Matter of Law (JMOL) motion, challenging the jury instructions and the jury's finding on obviousness, and the jury instructions regarding the theory of joint infringement. The district court denied Thompson's JMOL motion, finding that there was sufficient evidence to support the jury's verdict, that there was no reason to grant a new trial on the issue of obviousness, and that the jury instructions regarding joint infringement were in accordance with our precedent.

On July 31, 2007, the district court permanently enjoined Thompson from using, selling, or offering to sell its Parity electronic bid system or any other electronic bid submission system that would infringe Thompson's patent. Thompson appeals and seeks a stay, pending appeal, of the permanent injunction.

In deciding whether to grant a stay or injunction, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987); see also Standard Havens Prods. V. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990). To prevail, a movant must establish a strong likelihood of success on the merits or, failing that, must demonstrate that it has a substantial case on the merits and that the "harms" factors militate in its favor. Hilton v. Braunskill, 481 U.S. 770, 778 (1987).

After the district court's judgment, we issued our opinion in BMC Resources, Inc. v. Paymentech, L.P., ___ F.3d ___, No. 2006-1503, slip opinion (Fed. Cir. September 20,

2007), which set forth the standard for joint infringement by multiple parties of a single claim. We held in BMC Resources that, when the defendant has not performed all of the steps of an asserted method claim, the plaintiff must provide sufficient evidence that the defendant controlled or directed the actions of an unrelated party carrying out other steps of the claim to hold the defendant responsible for performing each and every element of the claim. Slip opinion at 14. Without prejudicing the ultimate disposition of this case by a merits panel, we conclude that there is a strong likelihood of success on the merits of Thompson's appeal and that a stay is warranted.

Accordingly,

IT IS ORDERED THAT:

Thompson's motion for a stay, pending appeal, is granted.

FOR THE COURT

SEP 2 8 2007

_____
Date

William C. Bryson
Circuit Judge

cc:    Richard L. Rainey, Esq.
       Raymond P. Niro, Esq.
s19

**FILED**
**U.S. COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

SEP 2 8 2007

**JAN HORBALY**
**CLERK**

2007-1485                    3

# POST-*PAYMENTECH* e-BUSINESS "JOINT" INFRINGEMENT[*]

## Harold C. Wegner[**]

## I. OVERVIEW

A unanimous panel in *Paymentech*[1] has followed traditional case law to deny infringement liability of a multi-step combination claim where no single actor is a direct infringer. The panel provides clarity to the law that had been unsettled since policy-based *dictum* in *On Demand* had stretched the vision of patent infringement to accommodate modern technology particularly in the e-business arena.[2] By strictly following the statute, the unanimous pane rejected an approach of so recently condemned by the Court as "dynamic judicial interpretation."[3]

Multi-step combination claims where no single party performs all steps of the combination are problematic: Until recently, it had been well settled at the Federal Circuit under the *Fromson* case that where multiple parties perform different steps of a combination claim, there is no single direct infringer.[4] Thus, under *Fromson* there is no "partial" or "joint" infringement theory to find liability where one party performs only *some* steps of a claim

---

[*] This paper updates *e-Business "Joint Patent Infringement"* [Nov. 26, 2006], principally by introduction of a new § V, *Paymentech* Repudiates the *On Demand* Dictum, and relettering of subsequent sections. Recent Supreme Court precedent is considered in § VII, *Whither the "All Elements" Rule.* . This paper represents the personal views of the writer and does not necessarily reflect the views of any colleague, organization or client thereof.

[**] Former Director of the Intellectual Property Law Program and Professor of Law, George Washington University Law School; partner, Foley & Lardner LLP. [**hwegner@foley.com**].

[1] *BMC Resources, Inc. v. Paymentech, L.P.,* _ F.3d _ (Fed. Cir. 2007)(Rader, J.), *opinion below,* 2006 WL 1450480 (N.D. Tex. 2006)(Lynn, J.).

[2] *On Demand Machine Corp. v. Ingram Industries, Inc.,* 442 F.3d 1331, 1334 (Fed. Cir. 2006)

[3] *Microsoft Corp. v. AT & T Corp.,* 127 S.Ct. 1746, 1759 (2007)(Ginsburg, J.)(rejecting the panel opinion below that had judicially expanded an infringement statute because otherwise this would have "permit[ed] a technical avoidance of the statute by ignoring the advances in a field of technology-and its associated industry practices-that developed after the enactment of [the law]." 414 F.3d, at 1366, 1371 (Lourie, J.))

[4] *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565 (Fed. Cir. 1983).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

and a second party performs the other steps, although there may well be infringement if a second party performing the other steps of the invention does so as an agent of the principal party.

While patent law principles remain largely unchanged over the years, whenever a new technology emerges, patent applications are often drafted by technical experts in a field that are new to patent law and possibly unaware of the intricacies of its many, varied and complex doctrines. In the field of e-commerce, claims to electronically conduct business often involve a description of the interaction of various players, customers, banks, merchants and others. Yet, as with more traditional technologies, a claim must be drafted where there is a single actor as the direct infringer, or there can be no infringement at all. *See* § II, *Claims without any Possible Infringer.*

Complementary to the problem of drafting a single actor claim to permit a finding of patent infringement, the patent agent or procurement patent attorney must be careful *not* to draft a claim that is a "picture" of the drawing: If the drawing has ten elements, the temptation is to faithfully recite all ten elements in the claim as well. Yet, quite often, one or more of the elements is only described in a prototype used to draft the patent application and may not even be necessary. Or, more likely, a third party will see that an element is not essential and make an exact copy of the patented device, minus this nonessential element. This provides a claim of no commercial value. *See* § III, *The Unforgiving "All Elements" Rule.* In the first full year of the existence of the Federal Circuit, the "all elements" rule was applied in the case to deny infringement where a principal party performed all but one of the steps of a patented combination, while an independent third party performed the remaining step. *Fromson* is really nothing more than a reaffirmation of the historic "all elements" test, which thereafter has been confirmed *en banc* by the Federal Circuit and subsequently has been acknowledged again by the Supreme Court. *See* § III-A, *The Leading Fromson Case.* Quite recently, as part of a *holding* of noninfringement, a panel unnecessarily approved without significant discussion a jury instruction that could be interpreted as running contrary to *Fromson. See* § III-B, *On Demand* Dictum in Conflict with *Warner-Jenkinson.* Even more recently, a trial court has distinguished the aberrant dictum from the Federal Circuit in *Paymentech,* where a trial court considers various seemingly contradictory precedent. *See* § IV, *"Connection" in Paymentech.*

In its decision in *Paymentech,* the court squarely repudiates the *dictum* of *On Demand,* confirming that patent infringement liability requires that there be a single actor-infringer who performs all steps of a patented combination – or controls the steps of others performing elements of the claim the single actor does not himself perform   *See* § V,  *Paymentech* Repudiates the *On Demand* Dictum.

No matter how the dispute in *Paymentech* is resolved, it is clear that there has been a trend of decisional law to hold a patentee's feet to the fire, to resolve ambiguities against patent owners in favor of the public:  Mistakes in claim drafting that result in meaningless protection are being held against the patent owner.  A second chance or "mulligan" is not in the cards.  *See* § VI, *Patent Drafting Mulligans are Disfavored.*

As *Paymentech* is played out in the coming months, this will be only a small part of the overall policy debates that now focus upon the interplay between the Federal Circuit and the Supreme Court.  Whether the "all elements" rule is continued to be given a strict interpretation to block infringement based upon unnecessarily narrowly crafted patents will in major part be determined by this interplay.  *See* § VII, *Whither the "All Elements" Rule.*

## II.  CLAIMS WITHOUT *ANY* POSSIBLE INFRINGER

There continues to be controversy whether "partial" or "joint" infringement where no single direct infringer performs all steps of a patented invention, which has long been considered "partial" or "joint" infringement[5] and which Professor Lemley dubs "divided" infringement.[6]

The problem arises where a claim recites several elements yet no single party conducts all the elements.  Thus, what happens if there are steps (a), (b) and (c) in a claim and one party practices only steps (a) and (b) without step

---

[5] Harold C. Wegner, *E-Business Patent Infringement:  Quest for a Direct Infringement Claim Model,* presented to the SOFTIC 2001 Symposium, http://www.softic.or.jp/symposium/open_materials/10th/en/wegner-en.pdf (herein: "SOFTIC 2001").

[6] Mark A. Lemley, David O'Brien, Ryan M. Kent, Ashok Ramani & Robert Van Nest, *Divided Infringement Claims,* 33 AIPLA Q. J. 189 (2005).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

(c)?  And, a *different* party practices step (c) as an independent matter (as opposed to being an agent or otherwise acting on behalf of the first party)?

Assuming the two parties are operating independently of each other, then *neither* party has practiced the complete *claimed* invention.  There is therefore no act of direct infringement of the complete invention by anyone.

## III.  THE UNFORGIVING "ALL ELEMENTS" RULE

It is an easy matter to cobble together a definition of an invention that mirrors a working example in a patent application, providing a list of every nut and bolt and interconnecting element, no matter how trivial.  The more difficult task is to identify "the" element in the embodiment that distinguishes the inventor's contribution from the prior art and to generalize that embodiment in a generic claim so that anyone duplicating any improvement or other embodiment will be an infringer *provided he utilizes "the" element.*  As part of this exercise, it is axiomatic that the drafter provide a claim that will meet the "all elements" rule as embodied in *Fromson* to make sure that *a single party* will perform all elements of the claim, absent which the claim has a fatal loophole where there can be no infringer.

### A.  The Leading *Fromson* Case

The *Fromson* result of noninfringement is a natural consequence of the "all elements" rule endorsed most recently by the Court in *Warner-Jenkinson.*[7] Thus, if there is a claim with two or more steps or elements, there can be an act of direct infringement only if *all* the elements of the claim are practiced by the direct infringer.  If one party practices less than *all* of the steps or elements of a claim, then there is only a partial completion of the act of direct infringement: This is *not* an act of direct infringement.

---

[7]"It is of course axiomatic that '[e]ach element contained in a patent claim is deemed material to determining the scope of the patented invention.'" *Odetics, Inc. v. Storage Technology Corp.,* 185 F.3d 1259, 1268 (Fed. Cir. 1999)(Clevenger, J.)(quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 29 (1997)(Thomas, J.). See also *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106-07 (Fed. Cir. 2000)(Michel, J.)(quoting *Warner-Jenkinson,* 520 U.S. at 29).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

At first blush, it is attractive to consider the possibility that there is an act of *indirect* (or *contributory*) infringement. But, without an act of direct infringement by anyone, there also can be no act of *indirect* infringement by anyone. This is explained in *Deepsouth* in the context of the extraterritorial completion of a patented combination where supplying the components of that combination to induce offshore assembly could not be considered an act of indirect infringement because there was no direct infringer (because the act of creating the combination occurred outside the United States).[8] Thus, under traditional thinking, there can be no infringement at all unless there is a single party that performs *all* steps of a claimed method.

The classic application of the *Fromson* case is explained in the *Engate* case, where the court rejected the partial infringement or "joint infringement" theory:[9]

"[T]o the extent 'joint infringement' can be synonymous with 'direct infringement',… the Federal Circuit has rejected the theory in situations analogous to the one presented here. In *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565 (Fed. Cir. 1983), for example, the holder of a patent involving a process for making photographic printing plates sued a company that performed several steps in the process and then sold the resulting product to customers, who then performed the remaining steps. The Federal Circuit held that the defendant could not be liable for direct infringement:

"'It is undisputed that Advance manufactured and sold 'wipe-on' plates comprising an anodized aluminum sheet that had been treated with an aqueous solution of sodium silicate, and that its customers applied a diazo coating to those plates. Because the claims include the application of a diazo coating or other light sensitive layer and because Advance's customers, not Advance, applied the diazo coating, Advance cannot be liable for direct infringement with respect to those plates but could be liable for contributory infringement.'"[10]

---

[8]*Deepsouth Packing Co.* v. *Laitram Corp.*, 406 U.S. 518 (1972), statutorily reversed in part, 35 USC § 271(f). Cf. *Microsoft Corp. v AT & T Corp.,* Supreme Court No. 05-1056 (*certiorari* granted), *proceedings below, AT&T Corp. v. Microsoft Corp.*, 414 F.3d 1366 (Fed. Cir. 2005)(Lourie, J.).

[9] *Engate, Inc. v. Esquire Deposition Services, LLC,* 2003 WL 22117805 (N.D.Ill. 2003).
[10] *Engate,* quoting *Fromson,* 720 F.3d at 1567-58.

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

### B.  *On Demand* Dictum in Conflict with *Warner-Jenkinson*

Uncertainty was introduced into the case law through *dictum* in *On Demand* that created a policy-based expansion of joint infringement to permit liability against plural participants in claimed invention where no party performed all steps of the claimed invention nor directed others to perform the steps that it did not itself perform.[11]  A flurry of trial court cases has resulted that seek to fall under the *On Demand* umbrella of liability.[12]

### 1.  Unsupported *Dicta* without Citation of Precedent

*On Demand* represents an isolated case where a trial court had found infringement under a joint infringement theory in conflict with *Fromson* and *Warner-Jenkinson,* but the *holding* of the Federal Circuit on appeal was a *reversal* and a finding of noninfringement.[13]  The court in *On Demand* quotes from a jury instruction that in part appears to comport with the concept that an *agent* of a principal party may perform a step of a process and the principal party would still be liable for infringement:

"It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. *Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method.* Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement."[14]

---

[11] *On Demand, supra* note 2.

[12] Among the cases which have considered *On Demand*-based liability are *AdvanceMe, Inc. v. RapidPay, LLC,* __ Westlaw __ (E.D. Tex. 2007)(Davis, J.), trails *Realsource, Inc. v. Best Buy Co., Inc.,* 2007 WL 1484544 (W.D.Tex. 2007); and *Muniauction, Inc. v. Thomson Corp.,* __ F.Supp.2d __, 2007 WL 2225847 (W.D.Pa. 2007).

[13] *On Demand,* 442 F.3d at 1334 ("[T]he jury verdict of infringement was based on a partly incorrect claim construction, and that on the correct construction a reasonable jury could not find the patent to be infringed. Accordingly, the judgment of infringement is reversed.").

[14] *On Demand,* 442 F.3d at 1344-45 (emphasis added).

To the extent that the jury instruction was intended to reflect liability where an *agent* performs a step of a process otherwise completely carried out by a principal party, then the instruction is not inconsistent with the *Fromson* line of case law. But, standing alone, the naked final sentence citing the "combined action(s) of one or more persons [having liability as] joint infringers", this must be regarded as *dictum.*

It is also noteworthy that there was absolutely no discussion at all about *Fromson* or indeed *any* case in simple *dictum* approving this jury instruction.[15]

### 2. *Dicta* to Expand Doctrines at the Federal Circuit

The Federal Circuit on several occasions has chosen to provide *dicta* concerning infringement doctrines that are both unnecessary to the holding of a case and which generate considerable uncertainty in the law. *On Demand* is thus not an isolated case. To demonstrate the manner in which the patent community may misread a *dictum* as a *holding* one need only refer to the *Kinik* case,[16] where the court *held* that the patentee had no remedy as it *reversed* the ITC finding in its favor but provided *dicta* that suggests that there is an ITC remedy for the importation of products that cannot be patent infringement because of limitations of the patent statute.[17]

---

[15]*On Demand,* 442 F.3d at 1345("We discern no flaw in this instruction as a statement of law. However, the fundamental precept of the Ross invention is that the customer uses an on-site computer to view promotional information, and then initiates rapid single copy printing. A customer's placing an order with Amazon, who in turn obtains the book, even if it is printed in single copy, is not the Ross invention. Each of these components of the claimed invention is in the prior art; their combination is the patentable invention, and it is the practice of the combination that is essential to infringement. Taken separately, Amazon's method of taking orders for books is prior art; Amazon does not print books, and the immediate on-site printing of the Ross invention is absent.").

[16]*Kinik Co. v. International Trade Com'n*, 362 F.3d 1359 (Fed. Cir. 2004)(Newman, J.).

[17] For a critical understanding of the *Kinik* case and this *dicta, see* John M. Eden, *Unnecessary Indeterminacy: Process Patent Protection after Kinik V. ITC,* 2006 Duke L. & Tech. Rev. 9 (2006).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

Yet, there has been an explosive and entirely uncritical commentary from most writers who have also chosen to label the *Kinik* discussion as a "holding". .[18]

Where – as in *On Demand* or *Kinik* – the court provides *dicta* suggesting a possible remedy for future litigants despite a *holding* of noninfringement or invalidity it opens a Pandora's box of new and unnecessary litigation challenges.

---

[18]*See* Brian D. Coggio & Todd L. Krause, *Recent Federal Circuit Decisions Of Significance To Biotech/Pharmaceutical Practitioners,* Biotechnology & Pharmaceutical Law 2004: Patents & Business Strategies, 805 PLI/Pat 283, 303 (October 2004)("[T]he ITC held that the defenses available under 35 U.S.C. § 271(g) do not apply to actions instituted under 19 U.S.C. § 1337(a)(1)(B)(ii) before the ITC to prevent importation of a product made abroad by practicing a process patented in the U.S. *The Federal Circuit affirmed.*")(emphasis added); Mark A. Lemley, David O'Brien, Ryan M. Kent, Ashok Ramani & Robert Van Nest, *Divided Infringement Claims,* 33 AIPLA Q. J. 189, 284 (2005) ("The Federal Circuit has held [in *Kinik*] that the limits on § 271(g) simply don't apply in an ITC proceeding under § 337."); Stanley Young & Nishita Doshi, *Global Aspects of United States Patent Protection*, 25th Annual Institute on Computer & Internet Law, 823 PLI/Pat 363, 401 n.141 (March 2005)([*Kinik*] hold[s] that the statutory exceptions listed in [35 USC] § 271(g) did not apply in the context of infringement actions under 39 U.S.C. § 1337(a)(1)(B)(ii))."); Steven C. Cherny, David A. Nelson, Kenneth G. Schuler, Peter N. Witty, Sasha Mayergoyz & Amanda J. Hollis, *2004 Patent Law Decisions Of The Federal Circuit,* 54 Am. U. L. Rev. 941, 972-73 (2005) ("The Federal Circuit supported its holding [in *Kinik*] by referring to *Amgen, Inc. v. United States International Trade Commission*, [ 902 F.2d 1532 (Fed. Cir. 1990).]"); Steven J. Lee, Ph.D., Patrick J. Birde & Michael K. Levy, *Writing Claim Drafting, Amendments, and Patent Prosecution for Chemical Inventions,* 16th Annual Advanced Patent Prosecution Workshop: Claim Drafting & Amendment Writing, 884 PLI/Pat  317, 383 (2006), Nov. 13-14, 2006 (citing *Kinik*)("The Federal Circuit has ... *held* that [35 USC §] 271(g) defenses as set forth in [§§] 271(g)(1) and (2) do not apply as defenses to 19 U.S.C. [§] 1337(a) actions.")(emphasis added); Jay P. Lessler, Kathryn A. Piffat & Samuel S. Woodley, *Drafting Claims for Chemical, Pharmaceutical, and Biotechnology Patent Applications,* 16th Annual Advanced Patent Prosecution Workshop: Claim Drafting & Amendment Writing, 884 PLI/Pat  276 n.12 (2006), Nov. 13-14, 2006 (PLI No. 9100)(citing *Kinik*)(" The 'materially changed' argument may ... be avoided by asserting the patent claiming the intermediate process steps in an International Trade Commission investigation"); Steven J. Lee, Ph.D. & Patrick J. Birde, *Writing Claim Drafting, Amendments, and Patent Prosecution for Chemical Inventions,* Advanced Claim Drafting and Amendment Writing for Chemical Inventions, 868 PLI/Pat 287, 353 (2006) (citing *Kinik*)("The Federal Circuit has ... *held* that [35 USC §] 271(g) defenses as set forth in [§§] 271(g)(1) and (2) do not apply as defenses to 19 U.S.C. [§] 1337(a) actions.")(emphasis added); John C. Low, *Finding The Right Tool For The Job: Adequate Protection For Research Tool Patents In A Global Market?,* 27 Hous. J. Int'l L. 345, 377 (2005)("On appeal [in *Kinik*], the CAFC affirmed the commission's interpretation [of 19 U.S.C. [§] 1337(a)].". A few writers have correctly cited *Kinik* for its patent-based holding without mentioning the ITC *dicta.* E.g., *see also* Amy Nelson, *Is There an International Solution to Intellectual Property Protection for Plants?,*  37 Geo. Wash. Int'l L. Rev. 997, 1020 n.196 (2005).

IV. **NO "CONNECTION"** *IN PAYMENTECH*

In *Paymentech*, the patented invention is a telephone bill paying system where a personal identification number – a "PIN number" – is not required.[19] A properly drafted claim would define all steps as carried out by *one actor*. For example, claim could be drafted that involves only the actions of the merchant.[20] But, the actual claim in *Paymentech* requires steps beyond the merchant and includes an *independent* banking institution – a "remote payment network" – that as part of the claim "determine[es]… whether sufficient available credit … exist[s] in an account associated with the payment number to complete the payment transaction[ ] and … charg[es] the entered payment amount against the account associated with the entered payment number…."[21] The banking institution which is the "remote

[19]*On Demand* ("[T]he patented [Telepay] invention… provides an interface between a standard touch-tone telephone and a debit card network such that real-time bill payment transactions may be effected by using a telephone keypad. The invention includes an interactive voice response unit that prompts the caller to enter an access code, account number, debit card number, and payment amount. Using the invention, the caller may initiate a bill payment transaction, obtain information regarding authorization of the transaction, and inquire about previously processed transactions.").

[20]E.g., "A method comprising *prompting the caller* to enter a payment number selected from one or more choices of credit or debit forms of payment; *prompting the caller* to enter a payment amount for the payment transaction to permit accessing a remote payment network associated with the entered payment number for the purpose of determining whether sufficient available credit or funds exist in an account associated with the payment number to complete the payment transaction, and *informing the caller* about the completion of the transaction.

[21]More completely, generic claim 6 reads as follows: "A method of paying bills using a telecommunications network line connectable to at least one remote payment card network via a payee's agent's system, wherein a caller begins session using a telecommunications network line to initiate a spontaneous payment transaction to a payee, the method comprising the steps of:

prompting the caller to enter a payment number selected from one or more choices of credit or debit forms of payment; prompting the caller to enter a payment amount for the payment transaction; accessing a remote payment network associated with the entered payment number, the accessed remote payment network determining, during the session, whether sufficient available credit or funds exist in an account associated with the payment number to complete the payment transaction, and upon a determination that sufficient available credit or funds exist in the associated account, charging the entered payment amount against the account associated with the entered payment number, adding the entered payment amount to an account associated with the entered account number, and storing the account number, payment number and payment amount in a transaction file of the system."

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

payment network" obviously operates as a completely separate and independent business and is not an agent or otherwise working in a capacity that would create infringement liability under *Fromson*.[22]

The trial court followed the traditional case law in finding noninfringement: The court first restated the "all elements" rule that "[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized."[23] Thus, "infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim[,]"[24] and "[i]nfringement of a patented process or method cannot be avoided by having another perform one step of the process or method."[25].

While the Federal Circuit *On Demand* opinion could be dismissed as mere *dictum*, the trial court in *Paymentech* went out of its way to point out that its decision following *Fromson* was also not necessarily inconsistent with the *dictum* in *On Demand*: "Because the district court's definition [in *On Demand*] of "connection" was not relied on in the panel's conclusion, the Court refuses to read the panel's dictum that it found "no flaw" [in the joint infringement jury instruction] as a wholesale adoption of the district court's jury instruction. The [*On Demand*] court cited with approval cases taking the view that for there to be a 'joint infringement' liability there must be *a close connection or relationship* amongst the actors such that one party directs or controls the actions of the other."[26]

---

[22]*Id.* ("BMC has provided little evidence of any relationship between Paymentech and any financial institutions.")

[23]*Id.,* quoting *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1318 (Fed.Cir.2005), citing *Roberts Dairy Co. v. United States,* 208 Ct.Cl. 830, 530 F.2d 1342, 1354 (Ct.Cl.1976)).

[24] *Id.* quoting *Faroudja Labs., Inc. v. Dwin Elecs., Inc.,* No. 97-20010-SW, 1999 U.S. Dist. LEXIS 22987, at *10 (N.D.Cal. Feb. 24, 1999) (citing *Gen. Foods v. Studiengesellschaft Kohle mbH,* 972 F.2d 1272, 1274-75 (Fed.Cir.1992)).

[25]*Id.,* quoting *Shields v. Halliburton Co.,* 493 F.Supp. 1376, 1389 (W.D.La.1980), citing *Metal Film Co. v. Metlon Corp.,* 316 F.Supp. 96 (S.D.N.Y.1970); *see also E.I. DuPont de Nemours & Co. v. Monsanto Co.,* 903 F.Supp. 680, 745 (D.Del.1995).

[26]*Id.* (emphasis added), citing *Marley Mouldings Ltd. v. Mikron Indus., Inc.,* 66 U.S.P.Q.2d 1701(N.D.Ill. Apr.29, 2003), *rev'd on other grounds by* 417 F.3d 1356 (Fed. Cir. 2005); *Cordis Corp. v. Medtronic AVE Inc.,* 194 F.Supp.2d 323, 349-50 (D.Del.2002), *rev'd on other grounds by* 339 F.3d 1352 (Fed.Cir.2003); *Mobil Oil Corp. v. Filtrol Corp.,* 501 F.2d 282, 291-92 (9th

## V. *PAYMENTECH* REPUDIATES THE *ON DEMAND* DICTUM

In *Paymentech* a unanimous panel squarely repudiates *dictum* in *On Demand* to restore certainty to the law of patent infringement that there must be a single actor as a *direct* infringement to find liability.

The court reaffirmed the "all elements" rule of *Warner-Jenkinson* that "[d]irect infringement requires a party to perform or use each and every step or element of a claimed method or product."[27]
The court denied the possibility of indirect liability where there is no single actor. Citing *Dynacore,* the court points out that "[w]hen a defendant participates in or encourages infringement but does not directly infringe a, the normal recourse under the law is for the court to apply the standards for liability under indirect infringement. *Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.*"[28]

In reaching a conclusion of noninfringement, the court was not unmindful that there *do* exist situations where there is an agency relationship involving a third party who performs one of the steps of the process for the single actor: Citing *Cross Medical Products,* "the[ ] rules for vicarious liability might seem to provide a loophole for a party to escape infringement by having a third party carry out one or more of the claimed steps on its behalf."[29] But, "[t]o the contrary, the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party. *Engle v. Dinehart*, 213 F.3d 639

---

Cir.1974)).

[27] *Paymentech,* __ F.3d at __ ("citing *Warner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17 (1997)(as "holding that the doctrine of equivalents, like literal infringement, must be tested element by element"); *Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000); *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH,* 972 F.2d 1272, 1274 (Fed. Cir. 1992).") Citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993), the court noted that "[f]or process **patent** or method **patent** claims, infringement occurs when a party performs all of the steps of the process."

[28] *Paymentech,* __ F.3d at __ (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004))(emphasis added).

[29] *Paymentech,* __ F.3d at __ (citing *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005))

(5th Cir. 2000) (unpublished decision) (citing Restatement (Second) of Agency § 220 cmt. d). In the context of patent infringement, a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf. In *Cross Medical Products*, this court refused to attribute the acts of surgeons in making the claimed apparatus to the medical device manufacturer because the medical device manufacturer representative, who appeared in the operating room and identified instruments for the surgeons, did not direct the surgeons' actions. The Court remanded the case for a determination of whether the surgeons directly infringed by making the claimed apparatus and whether the medical device manufacturer could be held vicariously liable for such infringing acts."[30]

## VI.  PATENT DRAFTING MULLIGANS ARE DISFAVORED

One of the major changes in practice at the Federal Circuit in the past generation has been the removal of a seeming right to a mulligan to overcome a mistake in drafting or prosecution of a patent application.[31] Even as trivial a mistake as in the *Chef America* case[32] nominating a step of heating dough *to* an incineration temperature is not forgiven when in fact the dough is flash heated *at* such a temperature. Or, claims have been drafted that simply don't mirror what the applicant what the applicant has described in his drawings – or *do so* but include features in the drawings that are in prototypes unnecessary and in fact eliminated from the patentee's own commercial embodiment as in the *Pennwalt* case.[33]

---

[30] *Paymentech,* __ F.3d at __ (citing *Cross Med. Prods.,* 424 F.3d at 1312).

[31] *Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.,* 222 F.3d 951, 957 (Fed. Cir. 2000)(Gajarsa, J.)("[The patentee's] argument …reduces to a request for a mulligan that would erase from the prosecution history the inventor's disavowal of a particular aspect of a claim term's meaning. Such an argument is inimical to the public notice function provided by the prosecution history.") *See also Springs Window Fashions LP v. Novo Industries, L.P.,* 323 F.3d 989, 996 (Fed. Cir. 2003)(Bryson, J.)("Here, as in *Hockerson-Halberstadt,* there is no indication that the detailed distinction [over the prior art] was simply an inadvertent misstatement by the prosecuting attorney for which the applicant should be given a mulligan.").

[32] *Chef America, Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371 (Fed. Cir. 2004)(Schall, J.).

[33] *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931 (Fed. Cir. 1987)(*en banc*).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

All too routinely in the past, patent agents and attorneys who have simply mirrored working examples to create picture claims including nonessential elements have been left patentees in the cold with claims easily avoided by otherwise identical copies of patented technology, only omitting an unimportant and nonessential element, perhaps most famously in the *Pennwalt* case. Yet, *Pennwalt* has been rejected by a minority of the court because of the seeming harshness of denying patent protection where a patent agent or attorney has drafted a picture claim that includes nonessential elements that are not even practiced in the patentee's own commercial embodiment.[34] *Pennwalt* is a particularly extreme factual situation, as the claim in *Pennwalt* was a classic "picture claim" that *described* the patented entire fruit sorter described in the drawings; the claim did not, however, focus *only* on the essential elements of the fruit sorter. In a claim with seven (7) elements,[35] the claim included entirely superfluous means to

---

[34] *Pennwalt*, 833 F.2d at 956 (Newman, J., "commentary" (dissenting)).

[35] Claim 10. An automatic [fruit] sorting apparatus comprising
[a] electronic weighing means for generating a signal proportional to the weight of [fruit] to be sorted,
[b] first reference signal means for providing a predetermined number of reference signals, the value of each signal being established according to a predetermined criteria,
first comparison means for comparing the signal generated by said electronic weighing means to the reference signals provided by said first reference signal means,
optical detection means for generating a signal proportional to the color of [fruit] to be sorted,
[c] second reference signal means for providing a predetermined number of reference signals, the value of each signal being established according to a predetermined criteria,
second comparison means for comparing the signal generated by said optical detection means to the reference signals provided by said second reference signal means, and generating a signal therefrom,
[d] clock means for incrementally signalling changes in the position of [fruit] to be sorted,
[e] first position indicating means responsive to a signal from said clock means and said signal from *said second comparison means for continuously indicating the position of [fruit] to be sorted while the [fruit] is in transit* between said optical detection means and said electronic weighing means,
[f] second position indicating means responsive to the signal from said clock means, the signal from said first comparison means and said first position indicating means for generating a signal continuously indicative of the position of [fruit] to be sorted after [fruit] has been weighed, and
[g] discharge means responsive to the signal from said second position indicating means for discharging [fruit] at a predetermined one of a plurality of sorting positions.
[emphasis added]

13

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

"continuously indicat[e] the position of [fruit]" prior to a weighing station.[36] Yet, because this admittedly superfluous element is included as a claim element, its elimination (and elimination of any equivalent of that superfluous element) voids any possibility of infringement.

*Pennwalt* has been c onsistently followed by most members of the court, even as in *Schulmerich Carillons* where the patentee of simple church handbells made the mistake of including narrowly defined elements so that it could not capture embodiments essentially disclosed in the patent,[37] although the harshness of this doctrine has caused dissents because of the seeming unfairness that penalizes a patent owner for patent drafting mistakes.[38] Yet, the court is not unanimous in its trend toward stricter interpretation of patents against patent owners, particularly the trend to limit the doctrine of equivalents.[39]

The *Paymentech* patentee asked the trial court for relief because he *intended* that his claims cover his invention, even *admitting* that it "contemplate[d] that the method will be performed by multiple actors" and that the business realities dictate that "it is unlikely … that any one person … would itself physically perform all the steps of the claim."[40] The

---

[36]*Id.,* element (e).

[37]*Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320 (Fed. Cir. 1991).

[38] *Schulmerich Carillons*, 952 F.2d at 1331 (Newman, J., dissenting).

[39] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 344 F.3d 1359, 1377 (Fed. Cir. 1993)(*en banc*)(Newman, J., dissenting in part)("Technology has come to dominate modern industry and culture, and patent principles have evolved as a primary economic incentive for innovation. Our strength as a nation is grounded in our technologic leadership and entrepreneurial energy, and in our competitive vigor. The proper balance among invention, innovation, and competition is a matter of national concern. The doctrine of equivalents is part of that balance."). *See also Honeywell Intern. Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1152 (Fed. Cir. 2004)(en banc)(Newman, J., dissenting)("My colleagues state that they are preventing subversion of the court's attempts to restrain access to equivalency[.]").

[40] *Paymentech* (The patentee-plaintiff "suggests that requiring evidence of direction or control [to find infringement] is particularly inappropriate when (1) the patent clearly contemplates that the method will be performed by multiple actors and the relationship between these entities is the one described in the patent, and (2) it is unlikely in terms of the realities of the business situation that any one person or company would itself physically perform all the steps of the claim.").

Wegner**,** *Post-Paymentech e-Business "Joint" Infringement*

*Paymentech* patentee thus admitted that it recognized that in the normal course of business no one actor would infringe the claim:  There was no attempt needed to evade the patent.[41]

The court in *Paymentech* was openly critical of the patentee's failure to properly draft "single actor" claims, pointing out that proper claim drafting will avoid the problems that were addressed in the *dictum* in *On Demand.*   Citing Professor Lemley's work on joint infringement, the court said that "[t]he concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting. A patentee can usually structure a claim to capture infringement by a single party."[42]  The court expressly showed how the patentee in *Paymentech* could have – but didn't – draft single actor claims.[43]

A *prospective* understanding of the pitfalls should permit avoiding this technical trap for the unwary.  But, undeniably, Professor Lemley is correct when he states that "[i]n either event, patent owners and patent practitioners must be aware of the problem [of 'joint' or 'partial' infringement] and take it into account in writing, valuing, enforcing, and defending against patents."[44]

---

[41]This is unlike the *Deepsouth* case where the losing party at trial had sold an *assembled* combination of knives and other unpatented components was found guilty of infringement and only then shifted its business model to sell unassembled knives and other unpatented components for offshore assembly, free from direct infringement under the doctrine of territoriality.  Even though the accused infringer's actions were solely to evade the patent, they were successful because they had successfully avoided the "all elements" rule for infringement.

[42] *Paymentech,* __ F.3d at __ (citing Lemley *et al.,* 33 AIPLA Q.J. at 272-75.

[43] *Paymentech,* __ F.3d at __ ("In this case, for example, BMC could have drafted its claims to focus on one entity. The steps of the claim might have featured references to a single party's supplying or receiving each element of the claimed process. However, BMC chose instead to have four different parties perform different acts within one claim.")

[44] Lemley et al., 33 AIPLA Q. J. at 284.

## VII.  WHITHER THE "ALL ELEMENTS" RULE

Whether the Federal Circuit should reconsider its current trend to strictness concerning business method patents is part of a larger debate that is now playing out in the interface of that court with the Supreme Court.

The Court has been moving toward a *stricter* standard against patentees.  Indeed, a hostile tone has already been voiced concerning business method patents both in *Metabolite*[45] and *eBay.*[46]  In the former case, three members of the Court even question the viability of the leading case establishing patent-eligibility for business method patents[47]and while in the latter case four members of the Court caution concerning their "potential vagueness and suspect validity."[48]  In the most recently concluded Term, the Court in *Microsoft* soundly rejected an approach of "dynamic judicial interpretation,"[49] a pathway chosen by the panel majority below because it found that "if [the infringement law] is to remain effective, [it] must therefore be interpreted in a manner that is appropriate to the nature of the technology at issue."[50]

---

[45] *Laboratory Corp. of America Holdings v. Metabolite Laboratories, Inc.*, 126 S.Ct. 2921 (2006).

[46] *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837 (2006).

[47] *Metabolite,* 126 S.Ct. at 2928 (2006)(Breyer, J., joined by Stevens, Souter, JJ., dissenting from dismissal for improvident grant)("[*State Street Bank*] case does say that a process is patentable if it produces a 'useful, concrete, and tangible result.' [*State Street Bank & Trust Co. v. Signature Financial Group, Inc.,* 149 F.3d 1368, 1373 (Fed. Cir. 1998)]] But this Court has never made such a statement and, if taken literally, the statement would cover instances where this Court has held the contrary.").

[48]*eBay Inc.,* 126 S.Ct. at 1842 (Kennedy, J., joined by Stevens, Souter, Breyer, JJ., concurring)("[I] njunctive relief may have different consequences for the burgeoning number of patents over business methods, which were not of much economic and legal significance in earlier times. The potential vagueness and suspect validity of some of these patents may affect the calculus under the four-factor [injunctive remedy] test.").

[49]Supra note 3.

[50] *Microsoft,* 127 S.Ct. at 1759 (quoting majority opinion below, 414 F.3d at 1371).

Wegner, *Post-Paymentech e-Business "Joint" Infringement*

*Sub silentio* heeding the counsel of *Microsoft,* the court in *Paymentech* rejects the invitation to judicial activism:  "[The patentee] correctly notes the difficulty of proving infringement of this claim format.  Nonetheless, this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims."[51]

The lesson to the patent agent and attorney patent procurement bar is clear:  Greatest scrutiny must be paid to the all elements rule and, in the case of e-commerce patents, claims should be drafted to *avoid* any necessity to bootstrap protection for multiple actor multi-step claims.  Surely, some if not most of the problems that are faced today *could have* been avoided and in an anti-mulligan judicial atmosphere it is the patentee who is paying the price for the draftsmanship shortcoming.  Yet, there may be situations where a remedy is needed, but one which should be a "minimally intrusive solution[ ]."[52]

---

[51] *Paymentech,* __ F.3d at __ (quoting *Sage Prods. Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997)("[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.").

[52] Lemley et al., 33 AIPLA Q. J. at 284 ("But if the distribution is unavoidable — if it results from the inherently global nature of computer networks — the law should seek minimally intrusive solutions designed to prevent those inventions from losing all protection.").