# EXHIBIT 16

Dockets.Justia.com

### AFFIDAVIT OF DR. SCOTT LEWIS IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

STATE OF CALIFORNIA )
) ss.
COUNTY OF SANTA CLARA )

I, SCOTT W. LEWIS, Ph.D., being first duly sworn, deposes and states as follows:

1. I am the Chief Executive Officer of 1ST Technology LLC, the Plaintiff in this instant lawsuit. I am the sole inventor of U.S. Patent 5,564,001 (hereinafter referred to as the "'001 Patent"), entitled "Method and System for Interactively Transmitting Multimedia Information Over a Network which Requires a Reduced Bandwidth," issued on October 8, 1996.

2. On September 7, 2006, 1st Technology LLC filed suit against Defendants Rational Enterprises LTDA, Rational Poker School Limited, Bodog Entertainment Group, S.A., Bodog.Net, Bodog.Com, and Futurebet Systems Ltd. As set forth in this lawsuit, each of the aforementioned Defendants infringed the '001 Patent.

3. On June 13, 2007, this Court entered a Default Judgment against Defendants Bodog Entertainment Group, S.A., Bodog.Net, and Bodog.Com (hereinafter referred to as the "Bodog Entities"). The Court determined that 1st Technology LLC was entitled to a judgment against the Bodog Entities for damages in the amount of $46,597,849.00.

4. As of this date, the Bodog Entities have not paid any of this judgment amount and, therefore, Plaintiff is requesting that the Court enjoin the activities of the Bodog Defendants as set forth in this Affidavit and Motion until the Judgment owed to Plaintiff has been paid in full. Furthermore, Plaintiff seeks to have the Court order the Bodog Entities to refrain from continuing their infringing activities in the United States, which are in violation of the Default Judgment and to the detriment of Plaintiff 1st Technology LLC.

5. I have strong and proper background to set forth the foregoing analysis of the operations, marketing, and sales of the Bodog Entities. My background includes Bachelor's and Master's Degrees in Engineering from the Massachusetts Institute of Technology, a Doctorate in Digital Signal Processing from Oxford University as a Marshall Scholar, and an MBA from Harvard

1



1  Business School. Additionally, I have founded and acted as Chief Executive Officer of multiple
2  companies in Silicon Valley and as a Merger and Acquisition and Strategy Consultant for both the
3  Boston Consulting Group and the L.E.K. Consulting Group.
4     6    I previously filed an Affidavit in Support of Plaintiff's Motion for Default Judgment
5  in the instant case which sets forth in detail the calculation of Plaintiff's damages. A true and correct
6  copy of this Affidavit is attached to the Motion as Exhibit B. As set forth in the Affidavit, with the
7  supporting documents, the Bodog Entities infringing activities are responsible for over $65 billion
8  dollars in cumulative transactions to date, with approximately two-thirds of this revenue currently
9  being derived from infringing United States activities, which are covered by the Court's decisions.
10 See article from Alexa.Com, a true copy of which is attached to the Motion as Exhibit C. According
11 to a Forbes interview with Bodog's CEO, Calvin Ayre, in 2005 alone, Bodog handled $7.3 billion
12 dollars of revenue which translates to over $4.8 billion dollars in revenue in the United States
13 (pursuant to the evidence that two-thirds of Bodog's revenue comes from the United States, as noted
14 above), with revenue growing 300% per year since 2004. See the referenced Forbes interview
15 article, a true and correct copy of which is attached to the Motion as Exhibit D.
16    7.   To obtain this United States revenue, which infringes on the '001 Patent, Bodog
17 utilizes, in addition to its own internet web servers, an elaborate network of United States based
18 servers, marketing and sales affiliates, internet service providers (ISPs), domain registrars, marketing
19 and sales programs, and sponsorships - all of which are based in the United States.
20    8.   1st Technology LLC, through myself as the Founder and Chief Engineer, has
21 developed software and applications which utilize 1st Technology's intellectual property embodied
22 in the '001 Patent. It is critical that the Court issue an injunction against the aforementioned United
23 States activities of the Bodog Entities. The injunction is necessary to enable any possible
24 commercialization of Plaintiff's intellectual property for applications that may compete with Bodog
25 and to enforce the Court's Default Judgment, ending Bodog's escalating multi-billion dollar
26 infringement of Plaintiff 1st Technology's intellectual property.
27 ///
28

9. The remainder of this Affidavit describes the environment and elements of the Bodog Entities infringing activities in the United States and provides the key background information for 1st Technology's Injunction Motion.

10. The Bodog Entities operate and obtain revenue from the United States by providing the Bodog Entities infringing software to United States customers via internet downloads (both for new customers needing initial infringing software and current customers needing infringing Bodog software updates). The Bodog Entities also operate by establishing a series of United States relationships to deliver these software downloads (in addition to downloads via their own sites, Bodog.Com and Bodog.Net), and applying a massive United States based advertising, marketing and promotion programs to keep their current customers and increase revenue by obtaining new customers.

11. An internet search for Bodog.Com elicits 3,290,000 site references, hundreds of which are sites similar to PokerSavy.com, which is United States based, or Pokerlisting.com, which hides its location using an Arizona proxy service of Go Daddy, Inc., though operates through the United States server network to offer the same services for Bodog: delivering infringing Bodog download software to United States customers, either directly, or via links to Bodog's downloads site. *See* internet search results, a true and correct copy of which is attached to the Motion as Exhibit E; PokerSavy.com homepage, a true and correct copy of which is attached to the Motion as Exhibit F; and Whois record for Pokerlisting.com, a true and correct copy of which is attached to the Motion as Exhibit G.

12. Most of these companies and sites that form the bulk of the Bodog Entities United States download delivery network obtain their revenues via marketing and affiliate agreements with the Bodog Entities. These agreements generate payments from the Bodog Entities to the United States operating entities typically as payment per download, customer sign-up, or a percentage of future infringing customer revenue. Therefore, to stop the continued downloading of the infringing software, Plaintiff requests that the Court enjoin Bodog's marketing and affiliate programs and the entities who participate in them.

13. The primary manner in which the Bodog Entities keep their customers and increase infringing revenue via both existing and new customers is through a massive advertising program. The advertising is in print and television, but predominately internet advertising based via United States operating web sites and a massive sponsorship and promotion program. The internet advertising program consists of banner ads appearing on United States web sites or United States server operations whose entities are paid primarily either directly by the Bodog Entities, indirectly via other Bodog controlled entities or agents, and United States advertising agencies. The bulk of all Bodog banners appearing on United States based computers (via their customer's browser) have automatic click links to the partner's download site or Bodog's download and customer registration sites. Bodog's advertising programs to United States customers are a driving force for the Bodog Entities' infringing downloads and must be enjoined to stop the Bodog Entities and their subsidiaries from continuing their infringing activities in the United States in violation of this Court's decision and to the detriment of 1st Technology LLC. As such, Plaintiff requests that the Bodog Entities be enjoined from any further advertising on United States web sites or servers and that all companies, entities, and individuals and/or entities who control web sites with the Bodog Entities' advertising cease and desist such advertising immediately.

14. The Bodog Entities also generate customers in the United States through a massive sponsorship and promotion program, including making payments and subsidies to United States Bodog customers to participate in and "pay-in" the fee to join prestigious gaming competitions with enormous associated publicity. One example is the current World Series of Poker. This normally requires a $10,000.00 entry fee. The Bodog Entities pay for or subsidize Bodog customers who utilize Bodog's infringing software to participate in this event, which is held in Las Vegas. *See* Exhibit G to the Motion, which shows an offer currently running on the homepage of Pokerlisting.com's website.

15. The Bodog Entities also generate infringing revenue via their brand (the Bodog trademark) program and sponsorship program, in which Bodog sponsors major United States television events and leading poker celebrities, who are paid millions of dollars by Bodog. Plaintiff

4

1 also seek to enjoin this activity until the judgment can be collected and has been collected.

2     16. The aforementioned issues are but a part of the elaborate United States network which the Bodog Entities have created and also includes financial institutions for transferring infringing United States revenue and paying for United States entities to generate infringing Bodog downloads and futher increase the Bodog Entities' infringing revenue. As noted in the Forbes article, the Bodog Entities' CEO, Calvin Ayre, has amassed a current wealth of $1 billion dollars, which was derived in large part through infringement of 1st Technology LLC's '001 Patent.

///

Further your affiant sayeth naught.

DATED this 22 day of June, 2007.

_____
SCOTT W. LEWIS, Ph.D.

Sworn to and subscribed before me this 22 day of June, 2007.

_____
Notary Public

COMUNE DI CASOLE D'ELSA - SIENA
Il sottoscritto PARRi FRANCESCO funzionario incaricato del Comune di Casole d'Elsa dichiara autentica la firma sopra apposta da LEWIS SCOTT WILLIAM noto a CALIFORNIA U.S.A. Il 11 NOVEMBRE 1956 PASS. N° 054393196
Casole d'Elsa li 22/06/07

Il funzionario Inc.
ISTRUTTORE DIRETTIVO
Dr. Francesca Parri

6

# EXHIBIT 17

## AFFIDAVIT OF KEVIN M. SUTEHALL

STATE OF NEVADA )
)ss.
COUNTY OF CLARK )

I, Kevin M. Sutehall, being first duly sworn, depose and state as follows:

1. I am an attorney duly licensed to practice law in the State of Nevada and in good standing. I am an associate with the law firm of Hutchison & Steffen, LLC. I have personal knowledge and am competent to testify to the facts set forth herein.

2. I have reviewed exhibit 1 to this reply, the letter from Dary Enyeart at dotRegistrar to Venkat Balasubramani. I hereby verify that exhibit 1 is a true and correct copy of what it purports to be.

3. I have reviewed exhibit 2 to this reply, the dotRegistrat "who is" page. I hereby verify that exhibit 2 is a true and correct copy of what it purports to be.

4. I have reviewed exhibit 3 to this reply, the printout of "calvinayrelife.com." I hereby verify that exhibit 3 is a true and correct copy of what it purports to be.

5. I have reviewed exhibit 4 to this reply, the printout of www.calvinayrelife.com/page/3. I hereby verify that exhibit 4 is a true and correct copy of what it purports to be.

6. I have reviewed exhibit 5 to this reply, the supplemental declaration of Alan Vargas. I hereby verify that exhibit 5 is a true and correct copy of what it purports to be.

7. I have reviewed exhibit 6 to this reply, the declaration of Mauricio Bonilla Robert. I hereby verify that exhibit 6 is a true and correct copy of what it purports to be.

8. I have reviewed exhibit 7 to this reply, the Bodog.com marketing conference press release dated June 1, 2005. I hereby verify that exhibit 7 is a true and correct copy of what it

1  purports to be.

2      9.    I have reviewed exhibit 8 to this reply, the July 21, 2006 press release, http://www.prwebdirect.com/releases/2006/7/prweb414427.php. I hereby verify that exhibit 8 is a true and correct copy of what it purports to be.

3      10.    I have reviewed exhibit 9 to this reply, the Nevada Secretary of State printout. I hereby verify that exhibit 9 is a true and correct copy of what it purports to be.

4      11.    I have reviewed exhibit 10 to this reply, the Pokerlisting.com Home Page, which contains Bodog's $40,000.00 World Series of Poker "freeroll" and links to Bodog.com's website. I hereby verify that exhibit 10 is a true and correct copy of what it purports to be.

5      12.    I have reviewed exhibit 11 to this reply, the "Bodog WSOP Las Vegas Sponsorships" page. I hereby verify that exhibit 11 is a true and correct copy of what it purports to be.

6      13.    I have reviewed exhibit 12 to this reply, the Bodoglife report on Bodog players at the 2007 World Series of Poker. I hereby verify that exhibit 12 is a true and correct copy of what it purports to be.

7      14.    I have reviewed exhibit 13 to this reply, the press release dated August 10, 2006. I hereby verify that exhibit 13 is a true and correct copy of what it purports to be.

8      15.    I have reviewed exhibit 14 to this reply, the December 7, 2005 article from "BodogNation" entitled "Good Morning, Kido Pham," I hereby verify that exhibit 14 is a true and correct copy of what it purports to be.

9      16.    I have reviewed exhibit 15 to this reply, the Affiliate Agreement. I hereby verify that exhibit 15 is a true and correct copy of what it purports to be.

- 2 -

17. I have reviewed exhibit 16 to this reply, the June 22, 2007 affidavit of Dr. Scott Lewis. I hereby verify that exhibit 16 is a true and correct copy of what it purports to be.

DATED this 2nd day of October, 2007.

KEVIN M. SUTEHALL

SUBSCRIBED and SWORN to before me this 2nd day of October, 2007.

NOTARY PUBLIC



JAMIE L. SCHULTZ
Notary Public State of Nevada
No. 02-77748-1
My appt. exp. Nov. 2, 2010

- 3 -